**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TROY ARDEN JULIAR, Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> SUNOPTA INC.,  STEVEN BROMLEY, JOHN H. DIETRICH  and STEPHEN R. BRONFMAN, <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

CIVIL ACTION NO.

08 CV 00933

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**



## INTRODUCTION

1.    This is a federal class action on behalf of purchasers of the common stock of SunOpta Inc. ("SunOpta" or the "Company") between **August 8, 2007, and January 25, 2008,** inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  As alleged herein, defendants published a series of materially false and misleading statements that defendants knew and/or recklessly disregarded were materially false and misleading at the time of such publication, and that omitted to reveal material information necessary to make defendants' statements, in light of such material omissions, not materially false and misleading.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(d).   SunOpta is a foreign or "alien" corporation that does significant business in this District, and may properly be sued in any District of the United States, including the Southern District of New York.

5.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.     Plaintiff **TROY ARDEN JULIAR**, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of SunOpta at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant **SUNOPTA INC.** is a corporation organized under the laws of the Canada which maintains its principal place of business at 2838 Bovaird Drive West  Brampton, Ontario, L7A 0H2, Canada .  According to the Company's profile listed on Yahoo! Finance, SunOpta primarily operates in the natural and organic food sectors of the food industry in the United States and Canada, operating in three groups: (i) SunOpta Food; (ii) Opta Minerals; and

2

(iii) SunOpta BioProcess. SunOpta Food group produces, packages, markets, and distributes a range of natural, organic, kosher, and specialty food products and ingredients with a focus on soy, corn, sunflower, fruit, oat, fiber, and other natural and organic food products. Opta Minerals group processes, sells, and distributes silica free loose abrasives, roofing granules, industrial minerals, and specialty sands, as well as recycles inorganic materials for the foundry, steel, roofing shingles, and bridge and ship cleaning industries. SunOpta BioProcess provides a range of research and development and engineering services and owns various patents on its proprietary steam explosion technology, as well as designs and subcontracts the manufacture of these systems for processing non-woody fibers for use in the paper, food, and biofuel industries.

8.    Defendant **STEVEN BROMLEY** ("Bromley") is, and during the Class Period was, Chief Executive Officer, President, Chief Operating Officer and a member of the Board of Directors of the Company. During the Class Period, defendant Bromley certified the Company's Form(s) 10-Q, and signed the Registration Statement filed in connection with the sale of over $60 million of Company stock by defendant Stephen R. Bronfman and entities owned and/or controlled by him.

9.    Defendant **JOHN H. DIETRICH** ("Dietrich") is, and during the Class Period was, Chief Financial Officer and Vice President of the Company. During the Class Period, defendant Dietrich certified the Company's Form(s) 10-Q, and signed the Registration Statement filed in connection with the sale of over $60 million of Company stock by defendant Stephen R. Bronfman and entities owned and/or controlled by him.

10.    Defendant **STEPHEN R. BRONFMAN** ("Bronfman") is, and during the Class Period was a member of the Board of Directors of the Company. During the Class Period,

defendant Bronfman signed the Registration Statement filed in connection with the sale of over $60 million of Company stock sold by him or entities he owned and/or controlled.

11.     The defendants referenced above in ¶¶ 8-10 are referred to herein as the "Individual Defendants."

12.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and *via* reports and other information provided to them in connection therewith.

13.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases, and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of SunOpta, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements

4

were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

14.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the Nasdaq National Market Exchange (the "Nasdaq"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with SunOpta, each of the Individual Defendants had access to the adverse undisclosed information about SunOpta's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about SunOpta and its business issued or adopted by the Company materially false and misleading.

16.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

17.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of SunOpta common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding SunOpta's business, operations, management and the intrinsic value of SunOpta common stock; (ii) enabled defendants to artificially inflate the price of SunOpta shares; (iii) enabled SunOpta insiders to sell tens of millions of dollars of their privately held SunOpta shares while in possession of material adverse non-public information about the Company; and (iv) caused plaintiff and other members of the Class to purchase SunOpta common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of SunOpta between **August 8, 2007 and January 24, 2008,** inclusive (the "Class") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company at all relevant times, members of their

6

immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

19.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, SunOpta common shares were actively traded on the Nasdaq.  As of November 2, 2007, the Company had over 63.981 million shares of common stock issued and outstanding. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by SunOpta or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

20.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

21.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

22.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

7

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of SunOpta; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

23.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Materially False and Misleading
### Statements Made During the Class Period

24.    **2Q:07 "Record" Results Announced.** On August 8, 2007, the inception of the Class Period, defendants published a release announcing purported record setting financial and operational results for the second quarter of 2007, the period ended June 30, 2007. This release also stated, in part, the following:

**SunOpta Announces Record Second Quarter Results; Revenues Increase 33.5% and Net Earnings Increase 55.4%**

SunOpta Inc. (SunOpta or the Company) (Nasdaq:STKL) today announced record results for the second quarter ended June 30, 2007. All amounts are expressed in U.S. dollars.

The Company achieved record revenues for the three months ended June 30, 2007, realizing its 39th consecutive quarter of increased revenue growth versus the same quarter in the previous year. Revenues in the quarter increased by 33.5% to $207,977,000 as compared to $155,745,000 in the second quarter of 2007, led

by a 37.9% increase in revenues within the Company's vertically integrated natural and organic food operations. The Company's revenue growth in the quarter reflects an internal growth rate of 16.2% on a consolidated basis and includes internal growth of 19.4% within the SunOpta Food Group.

Operating income (1) for the quarter increased to $11,402,000 as compared to $8,772,000 in 2006, driven by increases in segment operating income in all groups within the SunOpta Food Group and led by the SunOpta Grains and Foods Group and the SunOpta Distribution Group. Net earnings in the quarter were $6,750,000 or $0.11 per diluted common share as compared to $4,343,000 or $0.08 per diluted common share in the prior year.

For the six months ended June 30, 2007 the company has recognized record revenues of $391,417,000 versus $289,057,000 in the same period of the prior year, an increase of 35.4%. Net earnings for the period increased 44.1% to $10,600,000 or $0.17 per diluted common share as compared to $7,355,000 or $0.13 per diluted common share for the same period in 2006.

* * *

During the quarter the Company completed a $30 million dollar financing within SunOpta BioProcess Inc.(SBI) at a post money valuation of $230 million. The funds from this financing will be used to further leverage its technology and invest directly in the production of cellulosic ethanol. SBI is working toward completion of current proprietary pre-treatment and fiber preparation equipment projects and is pursuing a number of exciting cellulosic ethanol projects in both North America and around the world.

The Company remains well positioned for future growth with working capital of $155,316,000 and total assets of $525,424,000. Capital additions in the quarter were $6,985,000 as compared to $2,069,000 for the same period in the prior year. The long term debt to equity ratio at June 30, 2007 was 0.31:1:00, providing the Company financial resources to invest in internal growth, capital projects and execute on its acquisition program. Book equity per outstanding common share has grown to $3.94 from $3.72 at March 31, 2007.

25.     Regarding the Company's segment performance, the August 8, 2007 release also stated, in part, the following:

In the quarter, the SunOpta Food Group reported increased revenues of $189,264,000 as compared to $137,287,000 in the second quarter of 2006, a 37.9% increase. Segment operating income increased to $11,411,000 versus $8,168,000 in 2006, an increase of 39.7%. This increase is after additional corporate cost allocations of $1,326,000. Excluding these allocations, segment operating income increased 55.9%. The improved segment operating income was

driven by the continued rebound in sales and margins within sunflower product operations, strong volumes and margins in organic grains, packaged soy milk products and food ingredients, strong demand for organic frozen fruit products and improved margins within the SunOpta Distribution Group. *During the second quarter the Company's fruit bar operations continued to implement improvements designed to address ongoing operational issues which have impacted results in the first half of the year. The Company expects significant revenue and margin improvements in these operations as major capacity and equipment upgrades are completed late in the third quarter.*

Opta Minerals revenue increased to $18,394,000, due primarily to the acquisition of Bimac Corporation late in 2006, offset by cyclical weakness in the foundry and steel industries. Segment operating income for the quarter declined by 14.0% to $2,061,000 from $2,396,000, due primarily to product mix and reduced sales of higher margin desulphurization products. The Group continues to pursue strategic transactions and new product development to complement its existing product portfolio.

26.    In addition to the foregoing, the August 8, 2007 release also quoted defendant Bromley, in part, as follows:

Steve Bromley, President and Chief Executive Officer of SunOpta commented, "We are very pleased with our second quarter results, driven by solid internal growth of over 19% within our vertically integrated food operations. These earnings are consistent with our expectations for the second quarter and reflect our continued dedication to the growth of our business, both top line and bottom line. Based on these results, we are pleased to increase our annual revenue guidance to $775 to $800 million and confirm our net earnings guidance of $0.35 to $0.40 per share, including the dilutive impact of the additional shares issued during the first quarter."

27.    Shares of the Company rallied on this positive news. As evidence of this, shares of SunOpta traded from a low of $12.00 per share on August 8, 2007, prior to the publication of these purported "record" setting results, to a high of over $14.00 per share following such publication. Moreover, during this short two-day period, over 4.1 million of the Company's shares traded - - many times the average daily trading volume.

28.    **2Q:07 Form 10-Q.** As shares of SunOpta continued to trade at artificially inflated levels, on August 10, 2007, defendants filed with the SEC the Company's 2Q:07 Form

10-Q, for the quarter ended June 30, 2007, signed by defendant Dietrich and certified by defendants Dietrich and Bromley. In addition to making substantially similar statements concerning the Company operations, including expenses, costs, and ratios, as had been published previously, the 2Q:07 Form 10-Q also provided statements concerning the Company's Significant Accounting Policies and the Basis of its Accounting Presentation, in part, as follows:

1.    **Basis of presentation**

The interim condensed consolidated financial statements of SunOpta Inc. (the Company) have been prepared in accordance with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X and in accordance with accounting principles generally accepted in the United States. Accordingly, these financial statements do not include all of the disclosures required by generally accepted accounting principles for annual financial statements. In the opinion of management, all adjustments considered necessary for fair presentation have been included and all such adjustments are of a normal, recurring nature.....

The interim condensed consolidated financial statements include the accounts of the Company and its subsidiaries, and have been prepared on a basis consistent with the financial statements for the year ended December 31, 2006. All significant intercompany accounts and transactions have been eliminated on consolidation.

29.    **Controls.**    The Company's 2Q:07 Form 10-Q also contained representations which attested to the purported effectiveness and sufficiency of the Company's controls and procedures, as follows:

Item 4.    **Controls and Procedures**

Under the supervision and with the participation of management, the Chief Executive Officer and Chief Financial Officer of the Company have evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures as of June 30, 2007, and, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that these controls and procedures are effective. Disclosure controls and procedures are designed to ensure that information required to be disclosed by the Company in reports that it files or submits under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures are also designed to ensure that information is accumulated and communicated to

11

management, including the Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

**Internal Control over Financial Reporting**

There has been no change in the Company's internal control over financial reporting that occurred during the Company's quarter ended June 30, 2007 that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting.

30.    **Certifications.**  In addition to the foregoing, the Company's 2Q:07 Form 10-Q also contained certifications by defendants Dietrich and Bromley, that attested to the purported accuracy and completeness of the Company's financial and operational reports, as follows:

## CERTIFICATION

(1)    I have reviewed this quarterly report on Form 10-Q of SunOpta Inc. for the quarter ended June 30, 2006,

(2)    Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

(3)    Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report;

(4)    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f) for the registrant and we have:

  a.    Designed such disclosure controls and procedures or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

b.      Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c.      Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this quarterly report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this quarterly report based on such evaluation; and

d.      Disclosed in this quarterly report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

(5)     The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors:

a.      All significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b.      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

/s/ STEVE BROMLEY
President and Chief Executive Officer
SunOpta Inc.
August 3, 2007

*     *     *

/s/ JOHN DIETRICH
Vice President and Chief Financial Officer
SunOpta Inc.
August 3, 2007

## CERTIFICATION
## PURSUANT TO 18 U.S.C. SECTION 1350

In connection with the quarterly report of SunOpta Inc. (the "Company"), on Form 10-Q for the period ended June 30, 2007 (the "Report"), I, **Steve Bromley**, President and Chief Executive Officer of the Company and I, **John Dietrich**, Vice President and Chief Financial Officer of the Company, each certify pursuant to 18 U.S.C. Section 1350, that to our knowledge:

1. the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and 2. the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: August 3, 2007

/s/ STEVE BROMLEY
Steve Bromley
President and Chief Executive Officer
SunOpta Inc.

/s/ JOHN DIETRICH
John Dietrich
Vice President and Chief Financial Officer
SunOpta Inc.

31.    The statements made by defendants and contained in the Company's August 8, 2007 release and in the Company's 2Q:07 Form 10-Q were each materially false and misleading when made, and were known by defendants to be false or were recklessly disregarded as such thereby, for the following reasons, among others:

(a)    At all times during the Class Period, it was not true that the Company's purported success was the result of its integration of acquisitions or defendants' competent management when, in fact, throughout the Class Period, defendants had propped up the Company's results by manipulating SunOpta's accounting for revenues and income;

14

(b)    At all times during the Class Period, unbeknownst to investors, defendants had materially overstated the Company's profitability by failing to properly account for the Company's results of operations and by artificially inflating the Company's financial results;

(c)    Throughout the Class Period, it was also not true that SunOpta contained adequate systems of internal operational or financial controls, such that SunOpta's reported financial statements were true, accurate or reliable;

(d)    As a result of the foregoing, throughout the Class Period it also was not true that the Company's financial statements and reports were prepared in accordance with GAAP ad SEC rules; and

(e)    As a result of the aforementioned adverse conditions which defendants failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to claim that SunOpta was operating according to plan, or that SunOpta could achieve guidance sponsored and/or endorsed by defendants.

32.    **"Record" 3Q:07 Results Announced.**   On November 6, 2007, defendants published a release announcing purported "record" setting results for the third quarter of 2007, the period ended September 30, 2007.  This release also stated, in part, the following:

**SunOpta Announces Record Third Quarter Results**

*Revenues Increase 41.4 Percent, Net Earnings Increase 234.4 Percent*

SunOpta Inc. (SunOpta or the Company) (NasdaqGS:STKL - News) today announced record results for the third quarter ended September 30, 2007. All amounts are expressed in U.S. dollars.

The Company achieved record revenues for the three months ended September 30, 2007, realizing its 40th consecutive quarter of increased revenue growth versus the same quarter in the previous year. Revenues in the quarter increased by 41.4% to $205,666,000 as compared to $145,463,000 in the third quarter of 2006, led by a 45.2% increase in revenues within the Company's vertically integrated natural and organic food operations. The Company's revenue growth in the

quarter reflects an internal growth rate of 21.6% on a consolidated basis and includes internal growth of 24.8% within the SunOpta Food Group.

Operating income(1) for the quarter increased 154.4% to $9,025,000 as compared to $3,547,000 in 2006, driven by increases in segment operating income within the SunOpta Food Group and led by the SunOpta Grains and Foods Group and the SunOpta Distribution Group. Net earnings for the quarter increased 234.4% to $5,096,000 or $0.08 per diluted common share as compared to $1,524,000 or $0.03 per diluted common share for the same period in the prior year. These results were realized despite significant costs and investment spending within the Company's healthy fruit snack business and SunOpta BioProcess Inc., and the unfavorable impact of the rising Canadian dollar on Canadian based overhead costs.

For the nine months ended September 30, 2007, the Company has achieved record revenues of $597,083,000 versus $434,520,000 in the same period of the prior year, an increase of 37.4%. Net earnings for the same period increased 76.8% to $15,696,000 or $0.25 per diluted common share as compared to $8,879,000 or $0.15 per diluted common share for the same period in 2006.

\*    \*    \*

SunOpta BioProcess Inc. recorded revenues of $779,000 in the quarter ended September 30, 2007 as compared to $1,573,000 in the prior year which included the sale of a pilot plant to a Chinese customer. The Group continues to work toward completing current proprietary pre-treatment and fiber preparation equipment projects and is pursuing a number of cellulosic ethanol projects in both North America and around the world. With the increasing interest in cellulosic ethanol due to raw material supply and cost issues in traditional ethanol markets, the Company has increased development and commercial activities and continues to responsibly invest in personnel and technological advancements deemed essential to execute on the potential of this growing market.

The Company remains well positioned for future growth with working capital of $154,778,000 and total assets of $571,603,000. Capital additions in the quarter were $9,562,000 including approximately $1,500,000 for the acquisition of a soymilk manufacturing facility during the quarter, as compared to $2,143,000 for the same period in the prior year. The long-term debt to equity ratio at September 30, 2007 was 0.35:1:00, providing the Company financial resources to invest in internal growth, capital projects and execute on its acquisition program. Book equity per outstanding common share has grown to $4.11 from $3.94 at June 30, 2007.

33.    Regarding the Company's segment performance, the November 6, 2007 release also stated, in part, the following:

In the third quarter, the SunOpta Food Group reported increased revenues of $184,402,000 as compared to $127,003,000 in the third quarter of 2006, a 45.2% increase. Segment operating income increased to $8,480,000 versus $2,625,000 in 2006, an increase of 223.1%. This increase was realized despite additional corporate cost allocations of $1,657,000 versus the prior year. The increase in segment operating income reflects improved results in the SunOpta Grains and Foods Group due to strong sales of non-GMO and organic grains and grain based ingredients, increased sales of aseptic and extended shelf life packaged beverage products and is reflective of the significant turnaround that has been realized within the Group's sunflower operations. The SunOpta Ingredients Group realized improved segment operating income due to higher volumes of oat and soy fiber and dairy based ingredients plus the beneficial impact of process improvement and cost rationalization initiatives within the Group's processing operations. The SunOpta Distribution Group realized strong improvement in segment operating income due to continued growth in the natural and organic grocery sector combined with ongoing margin improvement initiatives. These increases were partially offset by a decline in Fruit Group segment operating income as the Group continued to invest in operational improvements and expanded capacity within its healthy fruit snack operations. These investments will significantly increase capacity and address ongoing processing inefficiencies which have significantly impacted this business during 2007. The healthy fruit snack business expects to realize improved results in the fourth quarter and a $2 million profit turnaround in 2008.

Opta Minerals' revenue increased to $20,485,000, due primarily to the acquisitions of Bimac Corporation in late 2006 and Newco a.s. during the quarter, offset by cyclical weakness in the foundry and steel industries. Segment operating income for the quarter increased by 10.7% to $2,236,000 from $2,020,000, due primarily to the acquisitions completed, offset by product mix and reduced sales of higher margin desulphurization products which are sold into the steel industry. The Group continues to pursue strategic transactions and new product development to complement its existing product portfolio.

34.    The November 6, 2007 release also quoted defendant Bromley, in part, as

follows:

Steve Bromley, President and Chief Executive Officer of SunOpta commented, ``We are quite pleased with our third quarter results, driven by solid internal growth of over 20% in the quarter. We continue to see strong growth prospects within each of our operating segments and are positioning the Company to realize these opportunities. Last year we stated that our sunflower business would see a turnaround of $4,000,000 year over year and we are pleased to report that these results have actually increased by over $5,000,000 after just nine months. We expect that the significant investments being made within our healthy fruit snack business and SunOpta BioProcess Inc., which have impacted the third quarter

operating results, are a wise investment for the long-term and will provide excellent returns. Based on our results to date, we are pleased to reconfirm our revenue guidance of $775,000,000 to $800,000,000 for fiscal 2007 as well as confirm our net earnings guidance in the range of $0.35 to $0.40 per share, albeit at the lower end of the range, after absorbing the previously mentioned investment spending in our fruit snack operations and SunOpta BioProcess Inc."

35.    **3Q:07 Form 10-Q.**  On or about November 11, 2007, defendants filed with the SEC the Company's 3Q:07 Form 10-Q, for the quarter ended September 30, 2007, signed by defendant Dietrich and certified by defendants Dietrich and Bromley.  In addition to making substantially similar statements concerning the Company operations, including expenses, costs, and ratios, as had been published previously, the 3Q:0Q Form 10-Q also provided statements concerning the Company's Significant Accounting Policies and the Basis of its Accounting Presentation, in part, as follows:

1.    Basis of presentation

The interim condensed consolidated financial statements of SunOpta Inc. (the Company) have been prepared in accordance with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X and in accordance with accounting principles generally accepted in the United States.  Accordingly, these financial statements do not include all of the disclosures required by generally accepted accounting principles for annual financial statements.  In the opinion of management, all adjustments considered necessary for fair presentation have been included and all such adjustments are of a normal, recurring nature....

36.    **Controls.**  The Company's 3Q:07 Form 10-Q also contained representations which attested to the purported effectiveness and sufficiency of the Company's controls and procedures, as follows:

Item 4.    **Controls and Procedures**

Under the supervision and with the participation of management, the Chief Executive Officer and Chief Financial Officer of the Company have evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures as of September 30, 2007, and, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that these controls and procedures are effective.  Disclosure controls and procedures are

designed to ensure that information required to be disclosed by the Company in reports that it files or submits under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures are also designed to ensure that information is accumulated and communicated to management, including the Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

**Internal Control over Financial Reporting**

There has been no change in the Company's internal control over financial reporting that occurred during the Company's quarter ended September 30, 2007 that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting.

37.    **Certifications.** In addition to the foregoing, the Company's 3Q:07 Form 10-Q also contained certifications by defendants Dietrich and Bromley, which attested to the purported accuracy and completeness of the Company's financial and operational reports, as follows:

### CERTIFICATION
### PURSUANT TO 18 U.S.C. SECTION 1350

In connection with the quarterly report of SunOpta Inc. (the "Company"), on Form 10-Q for the period ended September 30, 2007 (the "Report"), I, **Steven Bromley**, President and Chief Executive Officer of the Company and I, **John Dietrich**, Vice President and Chief Financial Officer of the Company, each certify pursuant to 18 U.S.C. Section 1350, that to our knowledge:

1. the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and 2. the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date:   November 8, 2007

/s/ STEVEN BROMLEY
Steven Bromley
President and Chief Executive Officer
SunOpta Inc.

/s/ JOHN DIETRICH
John Dietrich
Vice President and Chief Financial Officer
SunOpta Inc.

38.    The statements made by defendants and contained in the Company's November 6, 2007 release and in the Company's 3Q:07 Form 10-Q were each materially false and misleading when made and were know by defendants to be false at that time, or were recklessly disregarded as such thereby, for the reasons stated herein in ¶31, *supra*.

39.    Taking full advantage of the artificial inflation in the price of Company shares caused as a result of the publication of defendants' materially false and misleading statements, on December 3, 2007 - - as shares of the Company traded above $14.25 - - defendants announced that Company insiders, including defendant Bronfman and entities controlled and/or owned by him, registered for sale 5.1 million shares of SunOpta stock then valued at over $72.4 million.    At the time this large insider share offering was announced, defendants published a release that again quoted defendant Bromley, in part, as follows:

> Steve Bromley, President and CEO of SunOpta, commented, ``The Selling Shareholders have been valued shareholders and partners over the past six years, and I'd like to personally thank them for their significant support of SunOpta over the years. Their participation came at a very important time in our development as a world class leader in natural, organic and specialty foods. Today, SunOpta is looking at a very bright future, and I want to take this opportunity to welcome the new shareholders this offering brings to SunOpta.''

40.    According to the Form S-3ASR Registration Statement, signed by all defendants and filed with the SEC on December 3, 2007 in connection with the Insiders Offering, defendants identified the Selling Shareholders, including defendant Bronfman, as follows:

### SELLING SECURITY HOLDERS

We will not receive any of the proceeds from the sale of the Shares by the selling security holders. (See page 16). The following table sets forth information with respect to Shares owned by such selling security holders. The information

regarding Common Shares to be owned after the offering assumes the sale of all
Shares offered by the selling security holders by this Prospectus.

| Name of Selling Security Holder | Number of Shares Held Prior to Offering | Number of Shares being Offered | Number of Shares to be Owned After Offering |
|---|---|---|---|
| Stephen R. Bronfman | 4,550,000 | 4,550,000 | 0 |
| Charles R. Bronfman Trust | 109,818 | 109,818 | 0 |
| SRB Belvedere Trust | 420,714 | 420,714 | 0 |
| Total | 5,080,532 | 5,080,532 | 0 |

41.     The Form S-3ASR Registration Statement also contained a statement by the
Company's purported independent auditors that stated, in part, the following:

**CONSENT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM**

We hereby consent to the incorporation by reference in the Registration Statement
on Form S-3 of our report dated February 22, 2007 relating to the financial
statements, management's assessment of the effectiveness of internal control over
financial reporting and the effectiveness of internal control over financial
reporting which appears in SunOpta Inc.'s Annual Report on Form 10-K for the
year ended December 31, 2006. We also consent to the reference to us under the
heading "Experts" in such Registration Statement.

/s/ PRICEWATERHOUSECOOPERS LLP
 Chartered Accountants, Licensed Public Accountants
Mississauga, Ontario
December 3, 2007

42.     Immediately after defendant Bronfman liquidated 100% of the Company shares
he owned or controlled, he next resigned from the Board of Directors of SunOpta.  Thereafter, on
December 20, 2007, the Company published a release announcing Bronfman's resignation which
quoted the Company's Chairman, Jeremy Kendall, in part, as follows:

SunOpta Announces Director Resignation

SunOpta Inc. (NasdaqGS:STKL - News) today announced that Stephen
Bronfman, Chairman and President of Claridge Inc., a member of the Company's
Board of Directors, submitted his resignation effective today. Mr. Bronfman's
resignation was expected given the recent liquidation of his holdings in the
Company.

21

Jeremy Kendall, Chairman of SunOpta commented, ``On behalf of the Board, the management and employees of the Company, we want to thank Stephen for his contribution over the years in the development of SunOpta and wish him the very best in his future endeavours.''

43.     The statements made by defendants and contained in the Company's December 3 and December 20, 2007 releases were materially false and misleading when made and were know by defendants to be false at that time, or were recklessly disregarded as such thereby, for the reasons stated herein in ¶31, *supra*.

## THE TRUE FINANCIAL AND OPERATIONAL CONDITION OF SUNOPTA IS BELATED DISCLOSED

44.     On January 24, 2008, following the close of trading, defendants shocked and alarmed investors after they published a release that revealed, for the first time, that the Company was performing well below expectations and that defendants expected to cause the Company to take a material restatement charge in the near term - - rendering its prior reported financial statements and reports unreliable, false, and materially misleading. This release stated, in part, the following:

SunOpta Provides Update On 2007 Earnings Results

SunOpta Inc. (NasdaqGS:STKL - News) today provided an indication of expected financial results for 2007.

For fiscal 2007, the Company is expected to realize revenues of slightly over $800 million, exceeding previously provided revenue guidance of $775 to $800 million, an increase of approximately 34% versus 2006. These revenues are reflective of the continued strong demand in the Company's core natural and organic foods business.

Earnings for the year are expected to be in the range of $0.12 to $0.14 per diluted common share and have been impacted by significant issues within the SunOpta Fruit and SunOpta BioProcess Groups which have led to significant write downs and provisions in the range of $12 to $14 million pre-tax. The Company is currently analyzing the impact of the adjustments related to the SunOpta Fruit Group berry operations, including the potential impact on previously issued fiscal

2007 financial statements which will likely result in the restatement of previous quarters.

The Company has determined that inventories within the SunOpta Fruit Group's berry operations require write-down to net realizable value and preliminary estimates indicate that an adjustment in the range of $9 to $11 million for this issue and related items is necessary. Upon becoming aware of this issue, the Company has initiated a number of immediate and specific actions including engagement of an independent third party by the Company's audit committee to assess internal controls and processes, and implementation of a series of specific pricing and cost related actions to address potential causes of this issue. The Company's testing and analysis is ongoing and there can be no assurance that further adjustments will not be required.

Included in the updated earnings estimate for the year is a provision of approximately $3 million pre-tax, related to difficulties in collecting for services and equipment provided to a customer under the terms of an existing equipment supply contract within the SunOpta BioProcess Group. The Company also has knowledge that the customer's US affiliate is in violation of a Technical Development Agreement which delineates the intellectual property of each of the parties. As a result of failed discussions to resolve these issues, the Company has taken legal action to protect its intellectual property and recover costs, and thus feels it is necessary to reserve for uncollected amounts.

* * *

Given the issues within the SunOpta Fruit Group's berry operations, the Company has decided to fully assess the short and long term impact of the root causes behind the issues identified before providing 2008 revenue and earnings guidance. This analysis is currently ongoing. The Company remains very confident in its strategic positioning and the outlook for the business, but believes it is most prudent to complete this analysis in order to ensure that the guidance provided is as accurate as possible.

45.    Following this announcement, analysts at Northland Securities immediately downgraded shares of the Company.    In addition, the following day, January 25, 2008, the *Associated Press* reported, in part, the following:

SunOpta Shares Drop on Guidance Cut

SunOpta Shares Plummet After Company Slashes 2007 Guidance, Blaming Write-Downs

23

NEW YORK (AP) -- Shares of Toronto-based SunOpta Inc. hit a 52-week low Friday after the company dramatically cut its 2007 profit prediction and said it likely will have to restate results for prior quarters.

In heavy morning trading, SunOpta's U.S. shares plummeted $3.72, or 39 percent, to $5.84, after dropping as low as $5.71 earlier in the day and easily passing its previous low of $8.47.

SunOpta, which processes and produces organic foods, said it expects to post a profit of 12 cents to 14 cents per share for the year, citing issues within its fruit and BioProcess groups that led to pretax write-downs and provisions of $12 million to $14 million.

The company had previously projected a profit of 35 cents to 40 cents per share for the year. Analysts polled by Thomson Financial expect a profit of 34 cents per share.

SunOpta said it's analyzing the impact of the adjustments related to its fruit group berry operations, including the potential impact on previously issued fiscal 2007 financial results, which will likely result in the restatement of previous quarters.

The company also boosted its revenue prediction for the year to slightly over $800 million, up from its previous guidance of $775 million to $800 million, citing continued strong demand in its core natural and organic foods business.

Analysts, on average, expect revenue of $795.8 million for the year.

46.    The belated revelations on January 24, 2008 that the Company had materially misrepresented its financial and operational condition, controls and procedures, and results of operations, and the realization that the Company would be forced to restate its prior financial results, caused shares of SunOpta stock to fall precipitously. As evidence of this, on January 24, 2008, shares of the Company collapsed over 40%, from a close of $9.50 per share to approximately $6.00 per share in the single trading day - - on very high trading volume of over 11.488 million shares traded.

## CAUSATION AND ECONOMIC LOSS

47.    During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market, and a course of conduct that artificially inflated SunOpta's stock price and operated as a fraud or deceit on Class Period purchasers of SunOpta's stock by misrepresenting the Company's financial results.    Over a period of approximately six months, defendants improperly inflated the Company's financial results.    Ultimately, however, when defendants' prior misrepresentations and fraudulent conduct came to be revealed and was apparent to investors, shares of SunOpta declined precipitously - - evidence that the prior artificial inflation in the price of SunOpta's shares was eradicated.    As a result of their purchases of SunOpta stock during the Class Period, plaintiff and other members of the Class suffered economic losses, *i.e.* damages under the federal securities laws.

48.    By improperly characterizing the Company's financial results and misrepresenting its prospects, the defendants presented a misleading image of SunOpta's business and future growth prospects.    During the Class Period, defendants repeatedly reported purported "record" setting financial and operational results that met or exceeded guidance sponsored and/or endorsed by defendants.    These claims caused and maintained the artificial inflation in SunOpta's stock price throughout the Class Period and until the truth about the Company was ultimately revealed to investors.

49.    Defendants' false and materially misleading statements had the intended effect of causing SunOpta's shares to trade at artificially inflated levels throughout the Class Period - - reaching a Class Period high of over $15.00 per share in October 2007.

50.    On January 24, 2008, however, as investors learned the truth about the Company and learned that defendants had failed to report SunOpta's true financial and operational results,

shares of the Company collapsed  This collapse was evidence that defendants' belated disclosures had an immediate, adverse impact on the price of SunOpta shares.

51.    These belated revelations also evidenced defendants' prior falsification of SunOpta's business prospects via defendants' false statements.  As investors and the market ultimately learned, the Company's prior business prospects had been overstated as were the Company's results of operations.  As this adverse information became known to investors, the prior artificial inflation began to be eliminated from SunOpta's share price and were damaged as a result of the related share price decline.

52.    As a direct result of investors learning the truth about the Company on January 24, 2008, SunOpta's stock price collapsed over 40%, from a close of $9.50 per share to approximately $6.00 per share in the single trading day, on very high trading volume of over 11.488 million shares traded.  This dramatic share price decline eradicated much of the artificial inflation from SunOpta's share price, causing real economic loss to investors who purchased this stock during the Class Period.

53.    The decline in SunOpta's stock price at the end of the Class Period was a direct result of the nature and extent of defendants' fraud being revealed to investors and to the market. The timing and magnitude of SunOpta's stock price decline negates any inference that the losses suffered by plaintiff and the other members of the Class was caused by changed market conditions, macroeconomic or industry factors or even Company-specific facts unrelated to defendants' fraudulent conduct.  During the same period in which SunOpta's share price fell over 40% as a result of defendants' fraud being revealed, the Standard & Poor's 500 securities index was relatively unchanged.

26

54.    The economic loss, *i.e.* damages suffered by plaintiff and other members of the Class, was a direct result of defendants' fraudulent scheme to artificially inflate the price of SunOpta's stock and the subsequent significant decline in the value of the Company's shares when defendants' prior misstatements and other fraudulent conduct was revealed.    The dramatic decline in the price of Company shares immediately following defendants' belated disclosure is evidenced, in part, by the chart below:



## VIOLATIONS OF GAAP AND SEC REPORTING RULES

55.    During the Class period, defendants materially misled the investing public, thereby inflating the price of the Company's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its financial performance, accounting, reporting, and financial condition in violation of the federal securities laws and GAAP.

56.    GAAP consists of those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at the particular time. Regulation S-X, to which the Company is subject as a registrant under the

27

Exchange Act, 17 C.F.R. 210.4-01(a)(1), provides that financial statements filed with the SEC which are not prepared in compliance with GAAP, are presumed to be misleading and inaccurate. SEC Rule 13a-13 requires issuers to file quarterly reports.

57.    SEC Rule 12b-20 requires that periodic reports contain such further information as is necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

58.    In addition, Item 303 of Regulation S-K requires that, for interim periods, the Management Division and Analysis Section ("MD&A") must include, among other things, a discussion of any material changes in the registrant's results of operations with respect to the most recent fiscal year-to-date period for which an income statement is provided. Instructions to Item 303 require that the this discussion identify any significant elements of registrant's income or loss from continuing operations that are not necessarily representative of the registrant's ongoing business. Item 303(a)(2)(ii) to Regulation S-K requires the following discussion in the MD&A of a company's publicly filed reports with the SEC:

> Describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations. If the registrant knows of events that will cause a material change in the relationship between costs and revenues (such as known future increases in costs of labor or materials or price increases or inventory adjustments), the change in relationship shall be disclosed.

Paragraph 3 of the Instructions to Item 303 states in relevant part:

> The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition. This would include descriptions and amounts of (A) matters that would have an impact on future operations and have not had an impact in the past. . .

59.    The GAAP requirement for recognition of an adequate provision for foreseeable costs and an associated allowance applies to interim financial statements as required by Accounting Principles Board Opinion No. 28. Paragraph 17 of this authoritative pronouncement states that:

> The amounts of certain costs and expenses are frequently subjected to year-end adjustments even though they can be reasonably approximated at interim dates. To the extent possible such adjustments should be estimated and the estimated costs and expenses assigned to interim periods so that the interim periods bear a reasonable portion of the anticipated annual amount.

60.    The Company's financial statements contained in the quarterly reports filed with the SEC on Forms 10-Q for the quarterly periods throughout the Class Period were presented in a manner that violated the principle of fair financial reporting and the following GAAP, among others:

(a)    The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Concepts No. 1).

(b)    The principle that financial reporting should provide information about an enterprise's financial performance during a period (FASB Statement of Concepts No. 1).

(c)    The principle that financial reporting should be reliable in that it represents what it purports to represent (FASB Statement of Concepts No. 2).

(d)    The principle of completeness, which means that nothing material is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions (FASB Statement of Concepts No. 2).

(e)    The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered (FASB Statement of Concepts No. 2).

(f)    The principle that contingencies and other uncertainties that affect the fairness of presentation of financial data at an interim date shall be disclosed in interim reports in the same manner required for annual reports (APB Opinion No. 28).

(g)    The principle that disclosures of contingencies shall be repeated in interim and annual reports until the contingencies and have been removed, resolved, or have become immaterial (APB Opinion No. 28).

(h)    The principle that management should provide commentary relating to the effects of significant events upon the interim financial results (APB Opinion No. 28).

61.    In addition, during the Class Period, defendants violated SEC disclosure rules:

(a)    defendants failed to disclose the existence of known trends, events or uncertainties that they reasonably expected would have a material, unfavorable impact on net revenues or income or that were reasonably likely to result in the Company's liquidity decreasing in a material way, in violation of Item 303 of Regulation S-K under the federal securities laws (17 C.F.R. 229.303), and that failure to disclose the information rendered the statements that were made during the Class Period materially false and misleading; and

(b)    by failing to file financial statements with the SEC that conformed to the requirements of GAAP, such financial statements were presumptively misleading and inaccurate pursuant to Regulation S-X, 17 C.F.R. ' 210.4-01(a)(1).

62.    Defendants were required to disclose, in the Company's financial statements, the existence of the material facts described herein and to appropriately recognize and report assets,

revenues, and expenses in conformity with GAAP. The Company failed to make such disclosures and to account for and to report its financial statements in conformity with GAAP. Defendants knew, or were reckless in not knowing, the facts which indicated that all of the Company's interim financial statements, press releases, public statements, and filings with the SEC, which were disseminated to the investing public during the Class Period, were materially false and misleading for the reasons set forth herein. Had the true financial position and results of operations of the Company been disclosed during the Class period, the Company's common stock would have traded at prices well below that which it did.

## ADDITIONAL SCIENTER ALLEGATIONS

63.     As alleged herein, defendants acted with scienter in that each defendant knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding SunOpta, their control over, and/or receipt and/or modification of SunOpta's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SunOpta, participated in the fraudulent scheme alleged herein.

64.     Defendants were motivated to materially misrepresent to the SEC and investors the true financial condition of the Company because: (i) it deceived the investing public regarding SunOpta's business, operations, management and the intrinsic value of SunOpta common stock; (ii) it enabled defendants to artificially inflate the price of SunOpta shares; (iii) it

enabled SunOpta insiders to sell tens of millions of dollars of their privately held SunOpta shares while in possession of material adverse non-public information about the Company; and (iv) it caused plaintiff and other members of the Class to purchase SunOpta common stock at artificially inflated prices.

65.    Sales of Company shares by Insiders, including defendant Bronfman, that occurred during the Class Period include, in part, the following:

### INSIDER TRANSACTIONS REPORTED DURING CLASS PERIOD

| Date | Insider | Shares | Transaction | Value* |
|---|---|---|---|---|
| 14-Dec-07 | BROMLEY STEVEN R<br>Officer | 17,000 | Sale at $12.90 - $13 per share. | $220,000[2] |
| 14-Dec-07 | BRONFMAN STEPHEN R<br>Director | 29,000 | Sale at $13.07 per share. | $379,030 |
| 14-Dec-07 | CHHIBA BENJAMIN<br>Officer | 2,000 | Sale at $13 per share. | $26,000 |
| 13-Dec-07 | BROMLEY STEVEN R<br>Officer | 3,250 | Sale at $13.03 per share. | $42,347 |
| 7-Dec-07 | BRONFMAN STEPHEN R<br>Director | 4,550,000 | Sale at $13.20 per share. | $60,060,000 |

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

66.    At all relevant times, the market for SunOpta's common stock was an efficient market for the following reasons, among others:

(a)    SunOpta's stock met the requirements for listing, and was listed and actively traded on the Nasdaq national market exchange, a highly efficient and automated market;

(b)    As a regulated issuer, SunOpta filed periodic public reports with the SEC and the Nasdaq;

32

(c)    SunOpta regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    SunOpta was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

67.    As a result of the foregoing, the market for SunOpta securities promptly digested current information regarding SunOpta from all publicly available sources and reflected such information in SunOpta stock price. Under these circumstances, all purchasers of SunOpta common stock during the Class Period suffered similar injury through their purchase of SunOpta common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

68.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each

33

of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of SunOpta who knew that those statements were false when made.

## BASIS OF ALLEGATIONS

69.    Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of SEC filings by SunOpta, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

70.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public regarding SunOpta's business, operations, management and the intrinsic value of SunOpta common stock; (ii) enable defendants to artificially inflate the price of SunOpta shares; (iii) enable SunOpta insiders to sell tens of millions of dollars of their privately held SunOpta shares while in possession of material adverse non-public information about the Company; and (iv) cause plaintiff and other members of the Class to purchase SunOpta common stock at artificially

inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, jointly and individually (and each of them) took the actions set forth herein.

72. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for SunOpta's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

73. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of SunOpta as specified herein.

74. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SunOpta's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SunOpta and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a

course of business which operated as a fraud and deceit upon the purchasers of SunOpta common stock during the Class Period.

75.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

76.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts.  Such defendants' material misrepresentations and/or omissions were done knowingly or with recklessly for the purpose and effect of concealing SunOpta's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by

36

recklessly refraining from taking those steps necessary to discover whether those statements were false or misleading.

77.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SunOpta common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of SunOpta's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired SunOpta common stock during the Class Period at artificially high prices and were damaged thereby.

78.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that SunOpta was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their SunOpta common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

79.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

80.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against Individual Defendants

81.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82.    The Individual Defendants acted as controlling persons of SunOpta within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

83.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

38

84.     As set forth above, SunOpta and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 and any appropriate state law remedies to assure that the Class has an effective remedy; and

E.      Such other and further relief as the Court may deem just and proper.

//

//

//

//

39

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 28, 2008

Kim E. Miller
**KAHN GAUTHIER SWICK, LLC**
12 East 41st Street
New York, NY 10017
Telephone: (212) 696 - 3730
Facsimile:  (504) 455-1498


Lewis Kahn
**KAHN GAUTHIER SWICK, LLC**
650 Poydras Street - Suite 2150
New Orleans, LA  70130
Telephone: (504) 455-1400
Facsimile:  (504) 455-1498

-and-

Eric J. O'Bell
**LAW OFFICES OF ERIC J. O'BELL, LLC**
3500 North Hullen Street
Metairie, Louisiana 70002
Telephone: 504-456-8677
Facsimile:  504-456-8624

**Attorneys for Plaintiff**

Jan 27 08 09:33a                                                                                    p.2

## CERTIFICATION IN SUPPORT OF APPLICATION FOR LEAD PLAINTIFF

___Troy Arden Juliar_____(name) ("plaintiff") declares, as to the claims asserted under the federal securities law, that:

1.    Plaintiff has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws and plaintiff is willing to serve as a lead plaintiff in this case and all other related cases that may be consolidated with it.

2.    Plaintiff did not purchase securities of SunOpta, Inc., at the direction of counsel or in order to participate in a private action under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    During the Class Period, plaintiff has executed transactions in the securities of SunOpta, Inc. as follows. See Attached Schedule.

5.    In the last three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6.    Plaintiff will not accept payment for serving as a lead plaintiff beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: _1/27/_____, 2008

_____
Plaintiff

Name of plaintiff: _Issy Alden Julie_
Schedule of plaintiff's Transaction(s) in
SunOpta, Inc.

Purchase(s):

| Date | Units | Price |
|------|-------|-------|
| 1/18/2008 | 800 | $9.97 |
| 1/18/2008 | 5000 | $9.98 |
| 1/18/2008 | 14,200 | $10.00 |
| 1/22/2008 | 800 | $9.12 |

Sale(s):

| Date | Units | Price |
|------|-------|-------|