**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TROY ARDEN JULIAR, Individually And On Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>vs.<br><br>SUNOPTA, INC., STEVEN BROMLEY, JOHN H. DIETRICH, and STEPHEN R. BRONFMAN,<br><br>   Defendants. | **CASE NUMBER: 08-CV-00933**<br><br>**JUDGE PAUL A. CROTTY** |
| STEPHEN STRUGALA, Individually And On Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>vs.<br><br>SUNOPTA, INC., STEVEN BROMLEY, JOHN H. DIETRICH, and STEPHEN R. BRONFMAN,<br><br>   Defendants. | **CASE NUMBER: 08-CV-01070**<br><br>**JUDGE PAUL A. CROTTY** |
| RAY FOSTER, Individually And On Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>vs.<br><br>SUNOPTA, INC., STEVEN BROMLEY, JOHN H. DIETRICH,<br><br>   Defendants. | **CASE NUMBER: 08-CV-01313**<br><br>**JUDGE PAUL A. CROTTY** |

| | |
|---|---|
| ROGER DAVIDSON, Individually And On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>SUNOPTA, INC., STEVEN BROMLEY, JOHN H. DIETRICH,<br><br>    Defendants. | **CASE NUMBER: 08-CV-01496**<br><br>**JUDGE PAUL A. CROTTY** |
| MARIE LORENZATO, Individually And On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>SUNOPTA, INC., STEVEN BROMLEY, JOHN H. DIETRICH,<br><br>    Defendants. | **CASE NUMBER: 08-CV-01844**<br><br>**JUDGE PAUL A. CROTTY** |
| ROBERT KNOX, Individually And On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>SUNOPTA, INC., STEVEN BROMLEY, JOHN H. DIETRICH, and STEPHEN R. BRONFMAN,<br><br>    Defendants. | **CASE NUMBER: 08-CV-02034**<br><br>**JUDGE PAUL A. CROTTY** |

|  |  |
|---|---|
| ALBERT HALEGOUA, Individually And On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>SUNOPTA, INC., STEVEN BROMLEY, JOHN H. DIETRICH, and STEPHEN R. BRONFMAN,<br><br>                    Defendants. | **CASE NUMBER: 08-CV-02910-UA** |

**MEMORANDUM IN SUPPORT OF THE SUNOPTA INVESTORS GROUP MOTION TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL AND IN OPPOSITION TO ALL COMPETING MOTIONS**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................................iii

**INTRODUCTION** ......................................................................................................................... 1

**ARGUMENT** ................................................................................................................................. 3

    **A. SIG Meets the Requirements of Rule 23** ..................................................................3

    **B. SIG is a Proper Lead Plaintiff Group** .......................................................................4

    **C. Atypicality - Pension Funds Group Member WWLE Sold All Its Shares Prior to SunOpta's Corrective Disclosure and Lacks Standing** ...............................................5

    **D. WWLE's Trading Pattern Raises Serious Questions About The Pension Funds' Ability to Adequately and Fairly Represent the Class** .......................................6

    **E. The Court Should Approve SIG's Choice of Lead Counsel** ...................................11

**CONCLUSION** ............................................................................................................................11

**CERTIFICATE OF SERVICE** ...................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Beck v Status Game Corp.,* 1995 U.S. Dist. LEXIS 9978 (S.D.N.Y. July 14, 1995) .................. 8-9

*Berger v. Compaq Computer Corp.,* 257 F.3d 475 (5th Cir. 2001) ................................................. 5

*DuraPharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ........................................................................ 6

*In re Bally Total Fitness Sec. Lit.*, 2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005) ........ 6, 8

*In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298 (S.D. Ohio 2005) .................................... 10

*In re Comverse Tech., Inc. Sec. Lit.*, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. March 2, 2007) .... 2

*In re Crayfish Company Sec. Litig.*, 2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. 2002) .................... 4

*In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002) ................................................. 7-8

*In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................ 4

*In re Warnaco Group, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 13126 (S.D.N.Y. July 13, 2004) .. 4

*Landry v. PWC,* 123 F.R.D. 474 (S.D.N.Y. 1989) ............................................................. 3, 6, 8, 11

*Montoya v. Mamma.com Inc.*, 2005 U.S. Dist. LEXIS 10224 (S.D.N.Y. May 31, 2005) ........... 4-5

*Rozenboom v. Van Der Moolen Holding, N.V.*, 2004 U.S. Dist. LEXIS 6382 (S.D.N.Y. April 14, 2004) .......................................................................................................................................... 5

*Sofran v. LaBranche* & Co., 220 F.R.D. 398 (S.D.N.Y. 2004) ....................................................... 3

*Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001) ....................................................................... 4

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ............................................................................................ 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .............................................................................................. 4

15 U.S.C. § 78u-4(a)(3)(B)(v) ........................................................................................................ 11

15 U.S.C. §78u-4(a)(3)(B) ............................................................................................................... 1

The SunOpta Investors Group (hereinafter, "SIG"), with losses of $241,708, respectfully submits this memorandum of law in further support of its motion for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and in further opposition to all other motions. 15 U.S.C. §78u-4(a)(3)(B).

## I.   INTRODUCTION

Seven related securities class actions have been filed on behalf of all purchasers of SunOpta, Inc. ("SunOpta" or the "Company") common stock during the period from January 4, 2007 to January 25, 2008, inclusive.[1] On March 28, 2008, in addition to SIG, two other motions were filed by movants seeking appointment as lead plaintiffs in this action.[2]

Of the two other competing movant groups, only one movant, a shareholder group comprised of both the Western Washington Laborers-Employers Pension Trust ("WWLE") and the Operating Engineers Construction Industry and Miscellaneous Pension Fund ("OECI," and together with WWLE, the "Pension Funds"), purports to claim losses greater than SIG. Docket #18, p. 5. However, the Pension Funds should not be appointed lead plaintiff in this action because its members are subject to unique claims and defenses that render the Pension Funds group atypical, inadequate and incapable of leading this litigation.

Accordingly, SIG should be found to be the "most adequate plaintiff" because it has the largest financial interest among the competing movants that also satisfies the Fed. R. Civ. Pr. 23 typicality and adequacy prongs of Section 21D(a)(3)(B) of the PSLRA. Unlike WWLE, which liquidated all of its holdings of SunOpta stock – over 40,000 shares – *immediately* prior to the Company's corrective disclosure on January 24, 2008 (Docket # 19-2 at p.4), SIG continued to

---

[1] SIG has moved for consolidation of all the related actions. See Docket # 11, Sunopta Investors Group Br., pp. 5-6. No movants have opposed consolidation.

[2] On April 10, 2008, the Reck Group filed a Notice of Withdrawal of Motion (Docket # 21).

1

hold its shares until such time that defendants belatedly revealed the undisclosed problems that were impacting SunOpta - - thereby experiencing a loss typical of other Class members that purchased shares of the Company during the Class Period and who were damaged by defendants' misleading statements.

While it has moved to be appointed lead plaintiff in the instant action, it is clear that WWLE's financial interest in the relief sought by the Class and its purported damages were *not* proximately linked to the misconduct that it alleges. In fact, WWLE's losses cannot be linked to the misrepresentations alleged by it to be false, and its claims are atypical of the Class. *See*, *In re Comverse Tech., Inc. Sec. Lit.*, 2007 U.S. Dist. LEXIS 14878, *13 (E.D.N.Y. March 2, 2007) ("In short, it is clear that under *Dura* and its progeny, any losses that (a movant) may have incurred before (the defendant's) misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue….")

When WWLE's claimed losses are excluded from the Pension Funds' claimed loss, this movant group does not have the larges financial interest in the relief sought, and SIG's losses are at least $30,000 greater. Accordingly, SIG is obviously the movant with the largest financial interest in the relief sought by the Class who is both adequate and typical and, therefore, it alone should be appointed as lead plaintiff in this action.

In addition to the foregoing, WWLE's trading activities raise serious questions about whether it relied upon publicly available information or whether it engaged in a particularly speculative trading strategy in anticipation of SunOpta's earnings release after hours on January 24, 2008.[3] As the result of its ability to sell 34,675 shares in the hours preceding SunOpta's

---

[3] SunOpta's earnings release can be found at http://biz.yahoo.com/pz/080124/134996.html.

2

press release, WWLE earned $114,078.38 more than it would have, had it sold those same shares only hours later.

To the extent that defendants will belabor this issue at the class certification stage, this share liquidation immediately prior to the publication of disappointing results by the Company on January 24, 2008, will also create additional unique issues that will burden the course of this litigation, and that precludes the appointment of WWLE as lead plaintiff in this action. As the Court in this District has held previously, the "mere specter of antagonistic interest" is enough to find a lead plaintiff movant atypical and inadequate, even if viable defenses existed to a unique claim at issue. *Landry v. PWC,* 123 F.R.D. 474, 476 (S.D.N.Y. 1989).

In addition to the foregoing, to the extent that OECI had firsthand knowledge about WWLE's strategy and has chosen to move for appointment with OECI as part of the Pension Group, it too should be deemed inadequate and not typical of the Class it seeks to represent.

Accordingly, because both members of the Pension Funds suffer from serious infirmities that render them inadequate and atypical, and because SIG has the largest financial interest in the relief sought and because it is also adequate and typical of the Class, it alone should be appointed lead plaintiff in this action.

## II. ARGUMENT

### A. SIG Meets the Requirements of Rule 23

Once the Court "identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." *Sofran v. LaBranche* & Co., 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (citing *Cavanaugh*, 306 F.3d at 726, 732). A Court's view that "another plaintiff may be 'more typical' or 'more adequate' is of no consequence." *Id*. In short, the plaintiff with the largest losses who is both adequate and typical is the lead plaintiff, even if the court believes a different

3

lead plaintiff movant could do a better job. *See In re Warnaco Group, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 13126, *3 (S.D.N.Y. July 13, 2004) ("The 'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23.").

### B. SIG is a Proper Lead Plaintiff Group

The PSLRA expressly refers to the "***person or group of persons*** that…has the largest financial interest in the relief sought…" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). As a result, courts in this Circuit permit plaintiffs to aggregate their losses for the purposes of Lead Plaintiff selection, particularly when the lone competing movant who claims to be an institutional investor is rendered inadequate under the PSLRA. *See In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y. 2005) (the "majority view" in the Second Circuit holds that "unrelated investors may aggregate;" and the Court concluded that "where aggregation would not displace an institutional investor as presumptive Lead Plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as Lead Plaintiff, assuming they meet other necessary requirements."); *Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001) (permitting aggregation of the losses of a "group of seven" unrelated investors); *In re Crayfish Company Sec. Litig.*, 2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. June 4, 2002) (this Court finds that a group of seven individuals does not "present a group so cumbersome as to deliver the control of the litigation into the hands of the lawyers.").

The overwhelming majority of courts in this Circuit and elsewhere have appointed small manageable group of previously unrelated plaintiffs as Lead Plaintiffs. SIG includes three sophisticated individual investors with a significant financial interest in the litigation, who have been in communication prior to the filing of SIG's motion, have agreed upon a litigation strategy and have signed Declarations submitted with SIG's opening motion – contrary to the Pension Funds group. As such, the group has built-in cohesiveness and manageability, two prime concerns of the courts in appointing groups as lead plaintiffs under the PSLRA. *See, e.g., Montoya v. Mamma.com Inc.*, 2005 U.S. Dist. LEXIS 10224, *7-8 (S.D.N.Y. May 31, 2005)

4

(appointing a "diverse yet cohesive" group of investors); *Rozenboom v. Van Der Moolen Holding, N.V.*, 2004 U.S. Dist. LEXIS 6382 (S.D.N.Y. April 14, 2004) (citing cases saying that "previously unrelated persons may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive."); *see also Berger v. Compaq Computer Corp.,* 257 F.3d 475, 478 n.2 (5th Cir. 2001) (noting that the Securities and Exchange Commission limits lead plaintiff groups to between three and five individual investors).

SIG is small, cohesive, and able to work together to manage the litigation, in addition to having the largest losses of any movant for lead plaintiff in this action who otherwise satisfies Rule 23's typicality and adequacy requirements. The prevailing law in this Circuit indicates that such a group is ideally situation to manage counsel rather than being managed by counsel, and its large losses ensure its interest in vigorously prosecuting the Action.

    **C.**    **Atypicality - Pension Funds Group Member WWLE Sold All Its Shares Prior to SunOpta's Corrective Disclosure and Lacks Standing**

Pension Fund Group member WWLE sold all of its SunOpta shares in the period *immediately prior* to the Company's January 24, 2008 corrective disclosure. According to the trade data it supplied, WWLE sold 6,275 shares on January 17, 2008; 18,550 shares on January 23, 2008; and an additional 16,125 shares on January 24, 2008. Docket # 19-2 at p.4. These sales - which consisted of WWLE's entire SunOpta position – occurred immediately prior to publication of the Company's earnings release on January 24, 2008, and prior to the collapse of SunOpta shares that occurred the following day, January 25, 2008, the end of the Class Period.

Thus, because it sold all of its shares *prior* to the publication of the Company's January 24, 2008 corrective disclosure, WWLE's claimed loss cannot be linked to the misrepresentations alleged in this action and it is, therefore, neither adequate or typical of the Class it seeks to represent. WWLE's sale of ***all*** of its shares immediately prior to the revelation of the alleged misrepresentations by SunOpta will, foreseeably, be exploited by defendants seeking to prove

5

lack of loss causation. *See DuraPharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("if . . . the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss"); *see also*, *In re Bally Total Fitness Sec. Lit.*, 2005 U.S. Dist. LEXIS 6243 at *16-18 (N.D. Ill. Mar. 15, 2005) (refusing to appoint as lead plaintiff in-and-out trader did not meet typicality requirement, because of unique trading strategy and failure to link loss to corrective disclosure).

Defendants will undoubtedly exploit this deficiency within the "group," and it too will become a focus of this litigation, again rendering WWLE inadequate and atypical of the Class it seeks to represent. As the Court in this District has held previously, the "mere specter of antagonistic interest" is enough to find a lead plaintiff movant atypical and inadequate, even if viable defenses existed to a unique claim at issue. *Landry v. PWC,* 123 F.R.D. 474 (S.D.N.Y. 1989). Whether defenses may exist to its insider trading, is of no matter. *Id*. at 476.

The fact that WWLE will be subject to such defenses renders its claims atypical of other class members. Thus, WWLE's claims are not typical of other class members due to its sale of its entire position in SunOpta shares prior to the end of the class period and, therefore, it should not be appointed lead plaintiff in this action.

### D. WWLE's Trading Pattern Raises Serious Questions About The Pension Funds' Ability to Adequately and Fairly Represent the Class

In fact, both members of the Pension Fund group, WWLE and OECI, are rendered inadequate to serve as a lead plaintiff in this action by virtue of WWLE's irregular trading activity – which resulted in the liquidation of all of its 40,000 SunOpta shares in the days and minutes leading up to the Company's January 24, 2008 corrective disclosure that serves as the basis for this action. The suspicious timing of these sales raises, at a minimum, serious questions about WWLE's trading, and raises the possibility that WWLE had traded upon the receipt of

6

adverse information that was not made available to the public. The decision of EOCI to move for lead with WWLE, after it presumably knew of its partner's infirmity, renders it too inadequate and atypical of the Class it now seeks to represent.

First, by selling a total of 34,675 shares of SunOpta stock within 24 hours of the stock collapsing more than 40%, WWLE actually profited from the fraudulent misrepresentations that are at issue in this case.[4] It should be of no surprise that Courts have routinely refused to appoint investors who may have *purchased* shares based on insider information, and not in reliance on the market, as lead plaintiffs in securities class actions because such movants can not meet the adequacy requirement of Fed. R. Civ. Pro. 23.

For example, in *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002), Alliance Capital Management served as Enron's largest institutional shareholder and as the investment advisor to Florida State Board of Administration ("FSBA"). Alliance Capital partner, Frank Savage, served on Enron's Board and also recommended that FSBA purchase 2.9 million shares of Enron after public disclosure that Enron had overstated its assets.[5] In refusing to appoint FSBA, whose losses of over $325 million were almost twice as large as the next competing movant, as Lead Plaintiff, the Court stated:

> "First, the Court finds that FSBA has issues and interests atypical of and antagonistic to those of the rest of the class arising out of its purchases of Enron

---

[4] During the 90 calendar days after the end of the class period, which ended on January 25, 2008, after the disclosures of the misrepresentations were made to the general public, SunOpta's stock traded at an average price of $5.71. On January 23, 2008, WWLE sold 18,550 shares for a total of $161,837.62 ($8.72 per share), and on January 24, 2008, WWLE sold 16,125 shares for a total of $150,235.01 ($9.32 per share). Thus, in the sales of SunOpta stock it made on January 23, 2008 and January 24, 2008, WWLE received $312,072.63. If the shares had been sold after the bad news came out at $5.71 per share, WWLE would have only received $197,994.25 - a difference of $114,078.38.

[5] In total, between 10/18/98 and 11/27/01, FSBA purchased over 9.107 million Enron shares for $681.142 million, and suffered losses of $325,343,851.00.

7

> stock…. ***Because FSBA did not buy this stock based in reliance either on the market or on statements by Enron or its agents, or on Registration Statements and Prospectuses, it has unique defenses rendering it atypical of the putative class***. *See, e.g., Koenig v. Benson*, 117 F.R.D. 330, 335-36 (E.D.N.Y.1987) ("There is a concern ***if a named plaintiff is subject to 'unique defenses' concerning his individual reliance, then attention will be diverted away from issues common to the class. This would impair his ability to act as a representative for the class. Also, questions of individual reliance may place the materiality of the alleged misrepresentations into doubt*** [citations omitted]."); *Epstein v. American Reserve Corp.,* No. 79 C 4767, 1988 WL 40500, *3-4 (N.D.Ill. Apr.21,1988) *Kovaleff v. Piano*, 142 F.R.D. 406, 407-08 (S.D.N.Y.1992). In this case, in light of the factual scenario described below, these *456 unique defenses are likely to more than distract FSBA from duties of Lead Plaintiff. While FSBA argues that those Plaintiffs asserting conflicts of interest are merely speculating and have no proof, which is required by the statute, to support their allegations, what evidence has been submitted, though largely media articles, leads the Court to find that the information raises ***more than the mere specter of antagonistic interest and unique defenses to rebut the presumption that FSBA is the most adequate lead plaintiff***. In good conscience this Court cannot endanger this litigation by ignoring the issues created by FSBA's unique involvement with Enron. [Emphasis added.]

*Id.* at 455-56.

Second, the "mere specter of antagonistic interest" is enough to find a lead plaintiff movant atypical and inadequate, even if viable defenses existed to a unique claim at issue. *Landry v. PWC,* 123 F.R.D. 474 (S.D.N.Y. 1989). Thus, as the Court stated, "whether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members." *Id.* at 476; *See also*, *In re Bally Total Fitness Sec. Lit.*, 2005 U.S. Dist. LEXIS 6243 at *19 ("Our concern is that the time and attention Genesse would be required to devote to the loss causation issue (not to rebut a defense, but to prove its case) would distract it from the claims of the rest of the class.").

Similarly, in *Beck v Status Game Corp.,* 1995 U.S. Dist. LEXIS 9978 at *11 (S.D.N.Y. July 14, 1995), Judge Edelstein determined that a movant with similar issues to the Pension

8

Funds was inadequate and atypical and could not serve as a class representative in a securities class action:

> Plaintiffs' claim that Goldberg did not receive inside information, but rather relied on public information, does not alter the fact that his claim is atypical. As this Court noted in Landry, it does not matter whether a unique defense ultimately will prove meritorious because the fact remains that Goldberg will "be required to devote considerable time to rebut" the unique defense. [Landry, 123 F.R.D.] at 476 (citations omitted); see also id. ("whether these defenses will be successful is of no matter"). Accordingly, this Court finds that Goldberg's claim is not typipcal of the claims of other class members, and thus, plaintiffs have failed to satisfy Rule 23(a)(3) regarding Goldberg.

In addition to the foregoing, WWLE's fortuitous liquidation of all its shares 24 hours before SunOpta's earnings release also raises the issue as to whether it relied on the efficiency of the market, and this too will impact its ability to later represent a Class of investors who have alleged a fraud-on-the-market theory on a class-wide basis. Whether WWLE in fact traded on non-public information by selling over 40,000 shares prior to the earnings release, or traded speculatively in anticipation of the earnings release, WWLE will have to defend against zealous defense counsel on this issue. This too threatens to distract WWLE at the class certification stage, and beyond, as it defends against these individual claims by SunOpta.

The direct result of the selling of its shares prior to the time that SunOpta published its corrective disclosure is that unique issues are raised surrounding WWLE's reliance, the cause of its losses and the fraud-on-the-market theory adopted by the Class. As such, WWLE cannot serve as a lead plaintiff in this action.

In addition to the foregoing, OECI, which has consciously chosen to aggregate its losses with WWLE - and which has no prior relationship with WWLE other than aggregating their losses for the purpose of becoming lead plaintiff in this action - is also incapable of being appointed in this action.

By virtue of the group formation process itself, and ongoing communications throughout the early stages of this litigation, OECI would have very likely garnered first hand information on WWLE's trading strategy. It may have learned what information WWLE relied upon in making its decision to sell its SunOpta shares 24 hours prior to SunOpta's seminal earnings release.

*In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) provides this Court with some guidance on the analysis of adequacy in the context of a movant group:

> A group vying for lead plaintiff status does not necessarily rise and fall as a group. Segmentation is a viable remedy and finds support in the case law. *In re Surebeam Corp. Sec. Litig.*, No. 03CV 1721, 2003 U.S. Dist. LEXIS 25022, at *23 (S.D. Cal. Jan. 5, 2004). There, the court found one member of the presumptive lead plaintiff, FMC Pension Group, inadequate because of its securities industry misconduct. The court explained that it had the authority to "break apart a proposed group in search of the most adequate lead plaintiff." *Id.; see also Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 505 (S.D. Fla. 2002) (holding that one member's inadequacy is not imputed to the rest of the group, noting that the remainder of the group still claimed a financial interest of well over $ 1 million)

In *In re Cardinal Health, Inc. Sec. Litig.*, the court ultimately noted that two of six large and sophisticated institutional investors were subject to unique defenses, for reaping net gains related to the sales of pre-class period holdings. After eliminating the two funds, the court found that another group possessed the largest financial interest (although this group was ultimately not appointed as lead plaintiff due to other adequacy issues).

In the instant action, movant WWLE's adequacy cannot be evaluated in a vacuum – its trading strategy is of fundamental import, and the success of this action at the class certification stage may be directly impacted by the knowledge of its fellow movant OECI. Because the nature of communications amongst group members will be at issue, and because these communications taint OECI's ability to assure that the Class' interests are protected, this Court must also disqualify OECI from serving as a lead plaintiff.

It is absolutely foreseeable that defendants will spend a material amount of time in discovery on the relationship and knowledge of SunOpta and the lead plaintiffs' trading knowledge. Thus, "whether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members." *Landry* at 476. Accordingly, this Court should not appoint either member of the Pension Funds group as lead plaintiff, and instead should appoint SIG lead plaintiff.

### E. The Court Should Approve SIG's Choice of Lead Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiffs' choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

SIG has selected KGS to serve as proposed Lead Counsel for the Class. This firm has not only prosecuted complex securities fraud actions, but has also successfully prosecuted many other types of complex class actions. *See* Docket # 12, Miller Decl. Exhibit D. Furthermore, SIG's counsel has continually invested time and resources in carefully investigating and prosecuting this case. This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

### CONCLUSION

For all of the foregoing reasons, the SunOpta Investors Group respectfully request that this Court: (1) consolidate all related actions, (2) appoint the SunOpta Investors Group to serve as Lead Plaintiff in this action; (3) approve the SunOpta Investors Group's selection of Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: April 14, 2008                           Respectfully submitted,

                                                     KAHN GAUTHIER SWICK, LLC

                                                     /s/ Kim E. Miller
                                                     Kim E. Miller (KM-6996)
                                                     12 East 41st Street, 12th Floor
                                                     New York, NY 10017
                                                     Telephone: (212) 696-3730
                                                     Facsimile: (504) 455-1498


                                                     KAHN GAUTHIER SWICK, LLC
                                                     Lewis S. Kahn
                                                     650 Poydras St., Suite 2150
                                                     New Orleans, Louisiana 70130
                                                     Telephone: (504) 455-1400
                                                     Facsimile: (504) 455-1498

                                                     *Counsel for The SunOpta Investors Group and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

      I hereby certify that this Memorandum was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on April 14, 2008.

                                                /s/   Kim E. Miller
                                                     Kim E. Miller