UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x
TROY ARDEN JULIAR, Individually and on     :     Civil Action No. 1:08-cv-00933-PAC
Behalf of All Others Similarly Situated,          :
                                                  :     CLASS ACTION
                              Plaintiff,          :
                                                  :
           vs.                                    :
                                                  :
SUNOPTA INC., et al.,                             :
                                                  :
                              Defendants.         :
——————————————————— :
STEPHEN STRUGALA, Individually and on       :     Civil Action No. 1:08-cv-01070-PAC
Behalf of All Others Similarly Situated,          :
                                                  :     CLASS ACTION
                              Plaintiff,          :
                                                  :
           vs.                                    :
                                                  :
SUNOPTA INC., et al.,                             :
                                                  :
                              Defendants.         :
——————————————————— :
RAY FOSTER, Individually and on Behalf of    :     Civil Action No. 1:08-cv-01313-PAC
All Others Similarly Situated,                    :
                                                  :     CLASS ACTION
                              Plaintiff,          :
                                                  :
           vs.                                    :
                                                  :
STEVEN BROMLEY, et al.,                           :
                                                  :
                              Defendants.         :
——————————————————— x
[Caption continued on following page.]

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF WESTERN
WASHINGTON LABORERS-EMPLOYERS PENSION TRUST'S AND OPERATING
ENGINEERS CONSTRUCTION INDUSTRY AND MISCELLANEOUS PENSION FUND'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

|  |  |  |
|---|---|---|
| | x | |
| ROGER DAVIDSON, On Behalf of Himself and All Others Similarly Situated, | : : : | Civil Action No. 1:08-cv-01496-PAC |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : : | |
| | : | |
| SUNOPTA INC., et al., | : : | |
| | : | |
| Defendants. | : | |
| | : | |
| MARIE LORENZATO, Individually and on Behalf of All Others Similarly Situated, | : : : | Civil Action No. 1:08-cv-01844-PAC |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : : | |
| | : | |
| SUNOPTA INC., et al., | : : | |
| | : | |
| Defendants. | : | |
| | : | |
| ROBERT KNOX, Individually and on Behalf of All Others Similarly Situated, | : : | Civil Action No. 1:08-cv-02034-PAC |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : : | |
| | : | |
| SUNOPTA INC., et al., | : : | |
| | : | |
| Defendants. | : | |
| | : | |
| ALBERT HALEGOUA, Individually and on Behalf of All Others Similarly Situated, | : : | Civil Action No. 1:08-cv-02910-UA |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : : | |
| | : | |
| SUNOPTA INC., et al., | : : | |
| | : | |
| Defendants. | : | |
| | x | |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................1

II.   ARGUMENT .................................................................................................................2

      A.    The Pension Funds – Collectively and Individually – Have the Largest
           Financial Interest in the Relief Sought by the Class...............................................2

      B.    The Presumption in Favor of the Pension Funds' Appointment as Lead
           Plaintiff Has Not Been Rebutted.............................................................................3

           1.    The SunOpta Investors Group's *Dura* Argument Is Inappropriate ............3

           2.    The Pension Funds Are Not Subject to "Unique" Defenses
                Concerning Loss Causation ........................................................................5

           3.    The SunOpta Investors Group's Speculative Musings About
                Insider Trading Are Baseless and Inappropriate.........................................8

III.  CONCLUSION...............................................................................................................10

## I.      INTRODUCTION

The Western Washington Laborers-Employers Pension Trust ("Western Washington") and Operating Engineers Construction Industry and Miscellaneous Pension Fund ("Operating Engineers") (collectively, the "Pension Funds") respectfully submit this reply memorandum in support of their motion for appointment as lead plaintiff.  All movants concur that the Pension Funds have the largest financial interest in the relief sought by the class.[1]  The Pension Funds also satisfy the requirements of Rule 23.[2]  Thus, the Pension Funds should be appointed lead plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii) as they are the presumptively "most adequate plaintiff."

And while the "most adequate plaintiff" presumption is rebuttable, it "may be rebutted *only upon [a showing of] proof*."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).[3]  After two rounds of briefing, the SunOpta Investors Group has offered the Court speculation and innuendo, but no evidence, in its effort to rebut the presumption. *Ferrari v. Impath, Inc.*, 2004 U.S. Dist. LEXIS 13898, at *23 (S.D.N.Y. 2004) (Batts, J.) (rejecting challenge by movant relying "solely on innuendo and inferences rather than established fact").  The SunOpta Investors Group's proffer is factually and legally deficient.  Thus, the Pension Funds' motion should be granted and the competing motion denied.

---

[1]      *See* Memorandum in Support of the SunOpta Investors Group Motion to Consolidate Related Actions; to be Appointed Lead Plaintiff; and to Approve Proposed Lead Plaintiff's Choice of Counsel and in Opposition to All Competing Motions ("SIG Oppo.") at 1.

[2]      *See* Western Washington Laborers-Employers Pension Trust's and Operating Engineers Construction Industry and Miscellaneous Pension Fund's Memorandum of Law in Opposition to Competing Motions for Appointment as Lead Plaintiff ("Pension Funds' Oppo.") at 4-5.

[3]      All emphasis is added and all citations are omitted unless otherwise noted.  All exhibits are attached to the Declaration of David A. Rosenfeld in Support of Western Washington's and Operating Engineers' Reply Memorandum of Law in Further Support of Motion for Appointment as Lead Plaintiff ("Rosenfeld Decl.").

## II.    ARGUMENT

### A.    The Pension Funds – Collectively and Individually – Have the Largest Financial Interest in the Relief Sought by the Class

Courts in this circuit routinely look to a four-factor test to determine which movant(s) should be appointed lead plaintiff. *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (Buchwald, J.). Like most courts, this Court "place[es] the most emphasis on the last of the four factors: the approximate loss suffered." *Id.*[4] The Pension Funds possess the largest financial interest in three of the four categories:

| | Total Shares Purchased | Net Shares Purchased | Net Funds Expended | Losses |
|---|---|---|---|---|
| Pension Funds | 72,450 | 31,500 | ($516,809.75) | ($340,094.76) |
| SunOpta Investors Group | 44,300 | 32,110 | ($336,426.40) | ($153,630.88) |

Moreover, even if the Court were to consider the constituent members of each movant individually, the Operating Engineers' financial interest ***alone*** is greater than the ***entire*** SunOpta Investors Group:

| | Total Shares Purchased | Net Shares Purchased | Net Funds Expended | Losses |
|---|---|---|---|---|
| Operating Engineers | 31,500 | 31,500 | ($387,708.43) | ($210,993.43) |
| Western Washington | 40,950 | 0 | ($129,101.32) | ($129,101.32) |
| Troy Juliar | 20,800 | 20,800 | ($207,172.00) | ($88,761.95) |
| Warren Nesbitt | 12,500 | 11,000 | ($129,312.00) | ($66,691.30) |
| Larry Mages | 11,000 | 310 | $57.60 | $1,822.37 |

Because the Operating Engineers' loss is greater than the SunOpta Investors Group

---

[4]    The Pension Funds' loss is constant irrespective of LIFO or FIFO. *See* Rosenfeld Oppo. Decl., Ex. A. As such, the court's concerns in *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (Scheindlin, J.), cited by the SunOpta Investors Group, are not implicated here. Ironically, only the SunOpta Investors Group's losses are impacted by LIFO/FIFO. *See* Rosenfeld Oppo. Decl., Ex. A (FIFO loss of $242,000 vs. LIFO loss of $153,000). Moreover, the SunOpta Investors Group's assertion that its "losses are at least $30,000 greater" is erroneous. *See* SIG Oppo. at 2. This (mis)calculation stems from the SunOpta Investors Group's admitted failure to properly account for Mr. Mages' Class Period ***gain*** of $1,822.37, rather than his "loss" of $87,120. *See* Pension Funds' Oppo. at 3 n.5, 9. It is troubling that the SunOpta Investors Group's counsel is so desirous of serving as lead counsel that it is willing to saddle the class with a so-called "net gainer" who defendants will argue cannot prove ***any loss*** – never mind ***loss causation***. *Id.*

combined, the exclusion of Western Washington has "no material affect on the lead plaintiff determination." *eSpeed*, 232 F.R.D. at 102.[5] The Pension Funds should be appointed as lead plaintiff.

**B.    The Presumption in Favor of the Pension Funds' Appointment as Lead Plaintiff Has Not Been Rebutted**

The Pension Funds are the presumptively most adequate lead plaintiff.  To overcome the presumption, the SunOpta Investors Group was required to provide ***evidence*** that the Pension Funds are inadequate or atypical.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (presumption "may be rebutted ***only upon proof***"); *In re Unumprovident Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 24633, at *30 (E.D. Tenn. 2003) (class member "must affirmatively prove" most adequate plaintiff is not entitled to presumption).  Here, the SunOpta Investors Group has not even attempted to meet its burden.[6]

**1.    The SunOpta Investors Group's *Dura* Argument Is Inappropriate**

The SunOpta Investors Group protests that Western Washington's "claims are not typical of other class members due to its sale of its entire position in SunOpta shares prior to the end of the class period."  *See* SIG Oppo. at 6.  The SunOpta Investors Group is wrong.

The SunOpta Investors Group asks the Court to hold – as a matter of law – that a large portion of the class will, under no circumstances, be able to establish loss causation. *See* SIG Oppo. at 2.  This argument ignores both the facts and the law and appears to be based upon the supposed

---

[5]    And, as the SunOpta Investors Group's own authority recognizes, "a group of unrelated investors should not be considered as lead plaintiff when that group would displace the institutional investor preferred by the PSLRA."  *eSpeed*, 232 F.R.D. at 100.

[6]    *See Playboy Enters. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court.").

lack of loss causation alleged in its own inartfully pled complaint.[7]  A request **by a plaintiff** to "exclude from the class those traders who sold their stock prior" to a disclosure "because they cannot prove loss causation as a matter of law under *Dura*" prior to development of a factual record is not only "premature," it is highly irresponsible.  *See In re Fannie Mae Sec.*, 247 F.R.D. 32, 41 (D.D.C. 2008) (denying exclusion of "early sellers" from the class at the even more rigorous class certification stage).  Fortunately for the absent class members, this is not the law.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 168 (S.D.N.Y. 2007) (Conner, J.) (finding in-and-out purchasers should not be excluded from class at class certification because "discovery is still incomplete and plaintiffs intend to further develop their leakage theory"); *Roth v. AON Corp.*, 238 F.R.D. 603, 608 (N.D. Ill. 2006) ("disputes about loss causation concern factual questions not appropriate at the class certification stage of the game"); *In re Tyco Int'l, Ltd. Sec. Litig.*, 2000 U.S. Dist. LEXIS 13390, at *32 (D.N.H. 2000) (same).  One can only wonder why a plaintiff or his counsel would argue **against** the interests of so many class members.

To simply abandon all SunOpta shareholders who sold prior to January 25, 2008 is antagonistic to the interests of the class and, unlike the SunOpta Investors Group, the Pension Funds will not voluntarily do so.  *See Flag Telecom*, 245 F.R.D. at 167 (plaintiffs "entitled to fully develop the facts surrounding" "'leakage' of the truth before the end of the class period").[8]  Beginning in

---

[7]    SunOpta Investors Group member Mr. Juliar filed the first complaint in this action that failed to plead facts, including those relevant to loss causation, such as the "leakage" that occurred prior to the Company's January 24 press release.  For example, counsel for the SunOpta Investors Group omitted a January **22** analyst report warning the market that it was "most concerned about STKL in the very near term" because SunOpta's "Q4 earnings could be light of estimates and that management will guide below consensus out of conservatism." *See* Rosenfeld Decl., Ex. B. Notably, the report was disseminated to the market **prior** to Western Washington's sales on January 23-24.

[8]    Without citing any legal authority, the SunOpta Investors Group takes the position that district courts must adopt a *per se* rule in every securities fraud case that shareholders who sold on

- 4 -

December 2007, after the announcement of SunOpta director Stephen Bronfman's resignation,

SunOpta's stock began to decline and its trading volume almost tripled.  *See* Rosenfeld Decl., Ex. A.

And then, during the week prior to SunOpta's January 24, 2008 release, SunOpta's average weekly

volume spiked by almost 400%, rising from roughly 1 million shares to almost 4 million shares, as

adverse information about SunOpta, including the January 22 RBC Capital Markets analyst report,

"leaked" to the market.  *Id.*  In light of these facts, the SunOpta Investors Group's position that all

class members who did not hold their shares until January 25, 2008, could not be entitled to a

recovery under any circumstances makes no sense at all.  This is particularly nonsensical here

because the class will not be prejudiced by the appointment of the Pension Funds, two sophisticated

institutional investors who are ideally situated to protect and advance the interests of ***all*** class

members.  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229

F.R.D. 395, 408 (S.D.N.Y. 2004) (Sweet, J.) (appointment of lead plaintiff "may be re-opened").

**2.      The Pension Funds Are Not Subject to "Unique" Defenses
Concerning Loss Causation**

The SunOpta Investors Group argues that because Western Washington sold shares on

January 24, 2008 – the same day SunOpta announced it was lowering its 2007 earnings guidance and

that financial restatements were likely – its "losses cannot be linked to the misrepresentations alleged

by it to be false and its claims are atypical of the Class."  *See* SIG Oppo. at 2.  Apparently the

SunOpta Investors Group's counsel believes that because its counsel failed to properly plead the full

range of relevant facts during January 2008 in their own complaint, somehow that precludes as a

---

the last day of the class period must be excluded.  This is untenable.  All that is required is that
plaintiff prove the elements of the cause of action.  *See Flag Telecom*, 245 F.R.D. at 158-59 (court's
"analysis should focus on whether the class representatives 'have the incentive to prove all the
elements of the cause of action which would be presented by the individual members of the class
were they initiating individualized actions'").  The Pension Funds intend to do so.

matter of law class members who transacted in millions of SunOpta shares from being included in the class.  The SunOpta Investors Group is wrong again.

First, the SunOpta Investors Group ignores the fact that courts "may properly include 'in-and-out' traders as part of potential classes in securities fraud cases."  *Flag Telecom*, 245 F.R.D. at 158-59; *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 544 (E.D. Va. 2006) (appointing in-and-out purchaser as lead plaintiff because they "may conceivably prove loss causation"); *In re CIGNA Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 356 (E.D. Pa. 2006) (denying arguments such as those asserted here even at the ***summary judgment stage***).[9]  Further, that there does not appear to be any dispute about economic loss as to the Operating Engineers makes these arguments even less relevant.  *See Pirelli*, 229 F.R.D. at 412 ("the different perspectives that CalPERS and Empire each brings 'will materially add to the overall quality of lead representation in this case'").

Second, Western Washington's sale of 16,000 shares was a mere fraction of the ***more than one million*** shares traded by class members on January 24, 2008.  *See* Rosenfeld Decl., Ex. A.  As such, arguing that Western Washington is subject to a challenge on a purported inability to prove loss causation "surely cannot be described as unique."  *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, 2006 U.S. Dist. LEXIS 3028, at *19 (S.D.N.Y. 2006) (Holwell, J.); *see also Montoya v. Mamma.com Inc.*, 2005 U.S. Dist. LEXIS 10224, at *7 (S.D.N.Y. 2005) (Baer, J.) ("at least at [the lead plaintiff] stage, 'in and out purchasers' do not appear to be 'unique'"); *BearingPoint*, 232

---

[9]      It is also significant that in *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 86 n.5 (S.D.N.Y. 2007) (Holwell, J.), this Court recognized that while defendants "oppose the inclusion of so-called in-and-out purchasers in any class certified," defendants "***do not oppose the appointment of any of the proposed class representatives on this basis***."  *Id.*  Thus, the SunOpta Investors Group's concerns about harm to the class resulting from Western Washington's appointment as lead plaintiff ring hollow.  If anything, as an in-and-out trader, Western Washington's appointment as one of two lead plaintiffs "ensures that plaintiffs' counsel will further attempt to collect evidence and establish that sufficient leakage occurred at least prior to that date."  245 F.R.D. at 168.

F.R.D. at 544 (finding these issues "are common to many, and in any event, will not make class litigation unwieldy or inefficient").

Further, the *per se* rule urged here by the SunOpta Investors Group that the only way to prove *Dura*-compliant loss causation is by a "corrective disclosure" **issued by defendants themselves** has been rejected by this Court and the U.S. Supreme Court as well. The "market may learn of possible fraud [from] a number of sources: *e.g.*, from whistleblowers, **analysts**' questioning financial results, resignation of CFOs or auditors, announcements by the company of changes in accounting treatment going forward, newspapers and journals, etc.'" *In re Winstar Commc'ns*, 2006 U.S. Dist. LEXIS 7618, at *45-*46 (S.D.N.Y. 2006) (Daniels, J.) ("The Dura opinion did not specify what was required to adequately plead loss causation. The Supreme Court spoke in terms of the 'relevant truth' and the 'truth' making its way into the market place."); *Nursing Home Pension Fund v. Oracle Corp.*, 2006 U.S. Dist. LEXIS 94470, at *34-*36 (N.D. Cal. 2006) ("*Dura* does not require a 10(b) plaintiff to identify a corrective disclosure in order to properly plead or prove loss causation. . . . At most, what can be inferred from this language is that identifying a 'corrective disclosure' is **one way** in which a 10(b) plaintiff can demonstrate loss causation. *Dura* does not, however, state that this is the **only way** to plead and prove loss causation.") (emphasis in original); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 305 (S.D.N.Y. 2005) (Kaplan, J.) (same).[10]  In fact, appointing

---

[10]    The SunOpta Investors Group's citation to a lone case from the Eastern District of New York in support of its *Dura* argument is not controlling in light of applicable decisions from **this** Court. *See* SIG Oppo. at 2 (citing *In re Comverse Tech., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. 2007)).  And, even if the Court were persuaded by the *Comverse* decision, the Operating Engineers is still the presumptively most adequate lead plaintiff because it has "the greatest number of relevant net shares purchased, net funds expended, and suffered the greatest loss." 2007 U.S. Dist. LEXIS 14878, at *24.  Indeed, the Operating Engineers has a greater loss, less shares sold, and more net funds expended than the **entire** SunOpta Investors Group.  Quite simply, the class is not jeopardized by the appointment of Western Washington as lead plaintiff along with the Operating Engineers.

Western Washington as one of the lead plaintiffs ensures that the lead counsel will expend all appropriate efforts "to overcome defendants' affirmative defense . . . notwithstanding that [one particular press release] is the most critical corrective disclosure." *Flag Telecom*, 245 F.R.D. at 167.

The SunOpta Investors Group argues that if Western Washington is appointed lead plaintiff together with the Operating Engineers, loss causation "will burden the course of this litigation." *See* SIG Oppo. at 3.  What the SunOpta Investors Group ignores is that loss causation is an element of *every* securities fraud action, and *every* plaintiff will have to defend against defendants' attacks, regardless of whether they are "in-and-out" purchasers. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (plaintiff must allege proximate causation and economic loss).  The "'test, ultimately, is whether the class representative will promote the interests of the class as he protects his own.'" *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 376 (S.D.N.Y. 2000) (Brieant, J.).  And, "particularly in view of the co-lead plaintiff structure set forth here," with a retention plaintiff, *i.e.*, the Operating Engineers, Western Washington's status as an alleged in-and-out trader does not render it inadequate to represent the interests of the class. *Pirelli*, 229 F.R.D. at 412 ("co-lead structure . . .  provid[es] greater stability in the prosecution of these consolidat[ed] actions, should a decision be reach at some later stage in the litigation that either co-lead plaintiff will not adequately represent the class").

### 3.     The SunOpta Investors Group's Speculative Musings About Insider Trading Are Baseless and Inappropriate

Counsel for the SunOpta Investors Group baldly speculates, *without any evidence*, that Western Washington's "suspicious timing of these sales . . . raises the possibility that WWLE had traded upon the receipt of adverse information that was not made available to the public." *See* SIG

Oppo. at 6-7.[11]  This uncorroborated "string of suppositions" should not be countenanced.
*BearingPoint*, 232 F.R.D. at 541 (rejecting such theories as "plainly speculative").  It is axiomatic
that "innuendo and inferences rather than established fact" are not sufficient "evidence" to rebut the
PSLRA presumption.  *Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *23.[12]

Regardless of the impropriety of the SunOpta Investors Group making such an assertion
without any basis for doing so, atypicality has been found **only "where there is evidence that the
named plaintiff received information** . . . , either directly or indirectly, **from an officer or director**."
*In re Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476, 482 (S.D.N.Y. 2002) (Scheindlin,
J.).[13]  Here, "there is no affirmative evidence of wrongdoing" and the SunOpta Investors Group's

---

[11]    Even more troubling, the SunOpta Investors Group appears to suggest that all **one million**
shares traded on January 24, 2008 were insider trades despite heavy volume that was 400% greater
than that just ten days before on January 14, 2008 (264,700) and the fact that "leakage" of the truth
about SunOpta was reaching the market.  *See* Rosenfeld Decl., Exs. A-B.  This "plainly speculative"
theory should not be tolerated.  *BearingPoint*, 232 F.R.D. at 541.

[12]    *See also Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) (Stein, J.)
("[C]onclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under
the PSLRA without specific support in evidence of the existence of an actual or potential conflict of
interest or a defense to which [the potential lead plaintiff] would be uniquely subject."); *Strougo v.
Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007) (Robinson, J.) ("[s]peculation and
conjecture from one interested party is not enough to prove a nefarious collaboration"); *Sofran v.
LaBranche & Co., Inc.*, 220 F.R.D. 398, 403-04 (S.D.N.Y. 2007) (Sweet, J.) (same).

[13]    The SunOpta Investors Group's citation to *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427
(S.D. Tex. 2002) only highlights the weakness of its position.  In *Enron*, the competing movants
submitted **evidence** in the form of media articles, legislative investigations and subpoenas to **prove**
that FSBA's financial advisor, Alliance Capital, had a director/senior employee who was an Enron
board member during the class period.  *Id.* at 456.  In light of this **evidence**, the court determined it
"cannot endanger this litigation by ignoring the issues created by FSBA's unique involvement with
Enron."  *Id.*; *see also Beck v. Status Game Corp.*, 1995 U.S. Dist. LEXIS 9978, at *8 (S.D.N.Y.
1995) (finding class member atypical because, unlike the class, he "met with [defendant] face-to-
face" to discuss his investment).  Here, the SunOpta Investors Group does not even suggest that
anything of the sort of activity at issue in *Enron* or *Beck* occurred here, let alone offer evidence
thereof.  *Sofran*, 220 F.R.D. at 404 (without "proof, the citations to other cases provides only
speculation as to such a possibility").

hypothesis is simply a "red herring." *Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *21-*22; *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (Batts, J.) (finding that "***no evidence exists*** to suggest that the Weinstein Plaintiffs Groups's interests are antagonistic to other members of the class").[14] As in *Ferrari*, it is telling that the SunOpta Investors Group "does not make a single citation to the record to support its allegations" that Western Washington traded on insider information or that this information was also communicated by Western Washington to the Operating Engineers which supposedly taints Operating Engineers, rendering it "incapable of being appointed in this action." *See* SIG Oppo. at 9-10; 2004 U.S. Dist. LEXIS 13898, at *23. The SunOpta Investors Group's arguments pile speculation on top of innuendo and are insufficient to rebut the presumption which lies in favor of the Pension Funds. 2004 U.S. Dist. LEXIS 13898, at *23.

## III.    CONCLUSION

The Pension Funds are the presumptively "most adequate plaintiff." The SunOpta Investors Group failed to submit ***any*** evidence which rebuts the presumption. The Pension Funds' motion should be granted.

DATED: April 24, 2008                    Respectfully submitted,

                                         COUGHLIN STOIA GELLER
                                           RUDMAN & ROBBINS LLP
                                                 s/ David A. Rosenfeld
                                         _____
                                             DAVID A. ROSENFELD

---

[14]    The SunOpta Investors Group cites a pre-PSLRA case, *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989), apparently as a substitute for their ***lack*** of evidence, arguing that the "mere specter of antagonistic interest" supports a finding of atypicality. This Court has previously rejected this exact argument and held reliance on *Landry* is inapposite. *See Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *23 n.9 (noting decision was based on direct testimony from a putative class member – evidence which the SunOpta Investors Group has clearly failed to provide the Court here).

SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

[Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Sunopta\BRF00050831.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 24, 2008.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:drosenfeld@csgrr.com

# Mailing Information for a Case 1:08-cv-00933-PAC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **William J. Hine**
  wjhine@jonesday.com,dpjacobson@jonesday.com

- **Kim Elaine Miller**
  kimmiller225@yahoo.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com,amartin@csgrr.com

- **Evan J Smith**
  esmith@brodsky-smith.com

- **Jayant W. Tambe**
  dpjacobson@jonesday.com,kpollak@jonesday.com,jtambe@jonesday.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Lewis Stephen Kahn
Kahn Gauthier Swick, LLC
650 Poydras Street
Suite 2150
New Orleans, LA 70130

Kim E. Miller
Kahn Gauthier Swick, LLC
12 East 41st Street
12th Floor
New York, NY 10017

Eric J. O'Bell
Law Offices of Eric J. O'Bell, LLC
3500 Noth Hullen Street
Metairie, LA 70002
```