UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ──────────────────────── x | | |
| In re SUNOPTA INC. SECURITIES LITIGATION | : : : | Master File No. 1:08-cv-00933-PAC |
| ──────────────────────── | : | <u>CLASS ACTION</u> |
| This Document Relates To: | : : : | LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED |
| ALL ACTIONS. | : : | MOTION FOR PRELIMINARY APPROVAL |
| ──────────────────────── x | | OF SETTLEMENT |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................1

II. THE LITIGATION ...............................................................................................3

III. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................4

    A. The Standards for Reviewing a Proposed Settlement for Preliminary Approval ....................................................................................................4

    B. Preliminary Approval of the Settlement Should Be Granted...................................6

        1. The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement.......................................................6

        2. The Reaction of the Class to the Settlement ...............................................7

        3. The Stage of the Proceedings.......................................................................7

        4. The Risk of Establishing Liability and Damages .......................................8

        5. The Risks of Maintaining the Class Action Through Trial.........................9

        6. The Ability of Defendants to Withstand a Greater Judgment...................10

        7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.......................................10

    C. The Proposed Class Satisfies the Rule 23 Requirements.......................................11

        1. Securities Cases Are Particularly Suited for Class Action Treatment ...................................................................................................11

        2. The Standards for Class Certification .......................................................12

        3. The Proposed Class Satisfies Rule 23(a) ..................................................13

            a. The Proposed Class Is so Numerous that Joinder of All Members Is Impracticable...............................................................13

            b. There Exist Questions of Law and Fact Common to the Members of the Class....................................................................14

            c. Lead Plaintiffs' Claims Are Typical of the Class .........................16

        d.      Lead Plaintiffs and Their Counsel Have Fairly and Adequately Prosecuted the Case on Behalf of the Proposed Class ...................................................................................17

    4.      Lead Plaintiffs Satisfy the Rule 23(b)(3) Requirements ...........................18

        a.      Common Questions of Law or Fact Predominate .........................19

        b.      A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Controversy .............................20

IV.    THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE FORM OF THE PROOF OF CLAIM ARE APPROPRIATE ...........................................22

    A.      The Scope of the Notice Program ...........................................................22

    B.      The Scope of the Notice Program Is Adequate ......................................22

    C.      The Proposed Form of Notice Comports With the Requirements of Due Process, the PSLRA, and Rule 23 and Is the Same or Similar to the Form(s) of Notice Routinely Approved By Courts in This Jurisdiction ................23

V.     PROPOSED SCHEDULE ...............................................................................24

VI.    CONCLUSION ..............................................................................................25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997).................................................................................................19

*Baffa v. Donaldson*,
222 F.3d 52 (2d Cir. 2000)........................................................................................17

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)..................................................................................................11

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ....................................................................................20

*Cent. States Se. & Sw. Areas Health & Welfare Fund*
*v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007)......................................................................13, 14, 16

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) .............................................................................6

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)........................................................................................13

*Darquea v. Jarden Corp.*,
No. 06 Civ 722 (CLB), 2008 WL 622811
(S.D.N.Y. Mar. 6, 2008) ............................................................................................11

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)............................................................................4, 6, 8

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).....................................................................................................2

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
89 F.R.D. 87 (S.D.N.Y. 1981) ..................................................................................19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...................................................................................................13

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985)......................................................................................12

*Epstein v. MCA, Inc.*,
  50 F.3d 644 (9th Cir. 1995), *rev'd and remanded on
  other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*,
  516 U.S. 367 (1996) ........................................................................................................11

*Epstein v. Moore*,
  No. 87-2984 (AET), 1988 U.S. Dist. LEXIS 5450
  (D.N.J. June 13, 1988) ....................................................................................................16

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ........................................................................................................11

*Escott v. Barchris Constr. Corp.*,
  340 F.2d 731 (2d Cir. 1965) ...........................................................................................11

*Esplin v. Hirschi*,
  402 F.2d 94 (10th Cir. 1968) ..........................................................................................12

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................................................10

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) ........................................................................................................16

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  114 F.R.D. 48 (S.D.N.Y. 1987) .................................................................................15, 19

*Gerber v. Computer Assocs. Int'l*,
  No. 91 CV 3610 (SJ), 1995 U.S. Dist. LEXIS 21142
  (E.D.N.Y. Apr. 14, 1995) .......................................................................................14, 15, 16

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968) ......................................................................................14, 22

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ..........................................................................................................11

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983) ........................................................................................................11

*Hicks v. Morgan Stanley & Co.*,
  No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
  (S.D.N.Y. Oct. 24, 2005) ..................................................................................................6

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*,
818 F.2d 145 (2d Cir. 1987).................................................................10

*In re Alloy, Inc., Sec. Litig.*,
No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129
(S.D.N.Y. Dec. 2, 2004)................................................................6, 8

*In re Amerifirst Sec. Litig.*,
139 F.R.D. 423 (S.D. Fla. 1991)...........................................................14

*In re AMF Bowling Sec. Litig.*,
No. 99 Civ. 3023 (DC), 2002 U.S. Dist. LEXIS 4949
(S.D.N.Y. Mar. 26, 2002).................................................................21

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
No. 1500, 2006 U.S. Dist. LEXIS 17588
(S.D.N.Y. Apr. 6, 2006)...........................................................6, 8, 10

*In re Arakis Energy Corp. Sec. Litig.*,
No. 95-CV-3431(ARR), 1999 U.S. Dist. LEXIS 22246
(E.D.N.Y. Apr. 30, 1999)..............................................................19, 21

*In re Ashanti Goldfields Sec. Litig.*,
No. CV 00-0717 (DGT), 2004 U.S. Dist. LEXIS 5165
(E.D.N.Y. Mar. 30, 2004)..................................................................12

*In re Avon Sec. Litig.*,
No. 91 Civ. 2287 (LMM), 1998 U.S. Dist. LEXIS 18642
(S.D.N.Y. Nov. 30, 1998)..................................................................12

*In re Baldwin-United Corp. Litig.*,
122 F.R.D. 424 (S.D.N.Y. 1986)........................................................15, 16

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999).......................................................12, 14, 21

*In re Currency Conversion Fee Antitrust Litig.*,
No. 1409, 2006 U.S. Dist. LEXIS 81440
(S.D.N.Y. Nov. 8, 2006)................................................................4, 5

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
228 F.R.D. 541 (S.D. Tex. 2005)......................................................11, 18

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
      529 F. Supp. 2d 644 (S.D. Tex. 2006) .............................................................18

*In re Enron Corp. Sec. Litig.*,
      No. H-01-3624, 2005 U.S. Dist. LEXIS 39867
      (S.D. Tex. Dec. 22, 2005) ...........................................................................18

*In re Frontier Ins. Group Sec. Litig.*,
      172 F.R.D. 31 (E.D.N.Y. 1997) ...................................................................15

*In re Gilat Satellite Networks, Ltd.*,
      No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062
      (E.D.N.Y. Apr. 19, 2007) ............................................................................22

*In re Global Crossing Sec. & ERISA Litig.*,
      225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................8, 10

*In re Greenfield Online Sec. Litig.*,
      No. 3:07-cv-01118 (VLB), 2008 U.S. Dist. LEXIS 84175
      (D. Conn. Oct. 20, 2008) ................................................................14, 18, 20, 21

*In re Indep. Energy Holdings PLC Sec. Litig.*,
      No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
      (S.D.N.Y. Sept. 29, 2003) ...........................................................................9, 10

*In re Initial Pub. Offering Sec. Litig.*,
      471 F.3d 24 (2d Cir. 2006) ........................................................................12, 13

*In re Interpublic Sec. Litig.*,
      No. 02 CIV 6527 (DLC), 2003 U.S. Dist. LEXIS 19784
      (S.D.N.Y. Nov. 7, 2003) ..............................................................................15

*In re Luxottica Group S.p.A., Sec. Litig.*,
      No. CV 01-3285 (JBW), 2005 U.S. Dist. LEXIS 27765
      (E.D.N.Y. Nov. 15, 2005) ............................................................................23

*In re Med. X-Ray Film Antitrust Litig.*,
      No. CV 93-5904 (CPS), 1997 U.S. Dist. LEXIS 21936
      (E.D.N.Y. Dec. 10, 1997) ..............................................................................5

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
      No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
      (S.D.N.Y. Feb. 1, 2007) ...............................................................................22

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ...........................................................6, 8

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ...........................................................4, 5

*In re NTL, Inc. Sec. Litig.*,
    No. 02 Civ. 3013 (LAK) (AJP), 2006 U.S. Dist. LEXIS 5346
    (S.D.N.Y. Feb. 14, 2006) ...........................................................14

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ...........................................................15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................5

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    164 F.R.D. 362 (S.D.N.Y.), *aff'd sub nom. Toland v*
    *Prudential Sec. P'ship Litig.*,
    107 F.3d 3 (2d Cir. 1996) ...........................................................23

*In re State St. Bank & Trust Co. ERISA Litig.*,
    No. 07 Civ. 8488 (RJH), 2009 U.S. Dist. LEXIS 100971
    (S.D.N.Y. Oct. 28, 2009) ...........................................................4, 5

*In re Stock Exchs. Options Trading Antitrust Litig.*,
    No. 99 Civ. 0962 (RCC), 2006 U.S. Dist. LEXIS 87825
    (S.D.N.Y. Dec. 4, 2006) ...........................................................23

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ...........................................................17

*In re Veeco Instruments, Inc., Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ...........................................................15

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) ...........................................................12

*Korn v. Franchard Corp.*,
    456 F.2d 1206 (2d Cir. 1972) ...........................................................12

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) ...........................................................9

*Matsushita Elec. Indus. Co. v. Epstein*,
    516 U.S. 367 (1996)............................................................11

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002).............................................19

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)...............................................10

*Ohman v. Kahn*,
    No. 87 Civ. 7117 (JFK), 1990 U.S. Dist. LEXIS 7781
    (S.D.N.Y. June 27, 1990).............................................13, 16

*Port Auth. Police Benevolent Ass'n v. Port Auth.*,
    698 F.2d 150 (2d Cir. 1983)...............................................15

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848
    (S.D.N.Y. June 7, 2005)......................................................4

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................4

*Weigner v. New York*,
    852 F.2d 646 (2d Cir. 1988)...............................................22

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982).................................................23

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77k...................................................................................2
    §77o...................................................................................2
    §78j(b)...............................................................................2
    §78u-4(a)(7)(A)-(F) .........................................................24

17 C.F.R.
    §240.10b-5 ...................................................................................................................2

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................... *passim*
    Rule 23(a)..............................................................................13, 16, 18
    Rule 23(a)(1)..........................................................................13, 14
    Rule 23(a)(2)..............................................................................14
    Rule 23(a)(3)..............................................................................16
    Rule 23(a)(4)..........................................................................17, 18
    Rule 23(b)(3)......................................................................13, 18, 20

## SECONDARY AUTHORITIES

James Wm. Moore, *Moore's Federal Practice*
    §23.80....................................................................................................5

*Manual for Complex Litigation* (3d ed. 1995)
    §30.41....................................................................................................5

*Manual for Complex Litigation* (4th ed. 2004)
    §21.632..................................................................................................4

Lead Plaintiffs, Western Washington Laborers-Employers Pension Trust and Operating

Engineers Construction Industry and Miscellaneous Pension Fund (collectively, "Lead Plaintiffs"),

respectfully submit this memorandum in support of their unopposed motion for preliminary approval

of settlement. This proposed settlement provides a cash recovery of $11,250,000, plus the adoption

by SunOpta Inc. ("SunOpta" or the "Company") of certain corporate governance enhancements to

resolve this securities class action, as well as to resolve an action pending in the Ontario Superior

Court of Justice (the "Canadian Action"), against all defendants, SunOpta, Organic Ingredients Inc.,

Cleugh's Frozen Foods, Inc., Pacific Fruit Processors, Inc., and the Individual Defendants.[1] The

settlement is contained in a Stipulation and Settlement Agreement entered into by all parties dated

September 23, 2009 (the "Stipulation" or "Settlement"), and submitted herewith.

By this motion, Lead Plaintiffs seek entry of an order: 1) granting preliminary approval of the

proposed Settlement; 2) certifying the Class for settlement purposes; 3) approving the form and

manner of giving notice of the proposed Settlement to the Class; and 4) setting a hearing date for

final approval thereof (the "Settlement Hearing") and a schedule for various deadlines. As shown

below, the proposed Settlement is a very good result for the Class, is fair, reasonable, and adequate

under the governing standards in this Circuit and warrants approval of this Court.

## I.     INTRODUCTION

This litigation arises from Defendants' alleged misrepresentations and omissions concerning

the Company's financial performance and the strength and effectiveness of its internal controls.

Specifically, Lead Plaintiffs alleged that the Company's inventory-related controls were non-existent

or wholly ineffective, and that its failure to execute inventory-related controls resulted in an

---

[1]      Unless otherwise defined, all capitalized terms have the meaning ascribed to them in the
Stipulation.

overstatement of the Company's 2007 quarterly pre-tax earnings during the Class Period (February 23, 2007 through January 27, 2008, inclusive) of between 95% and 240%. The Company revealed, after the close of trading on January 24, 2008, that it "determined that inventories within the SunOpta Fruit Group's berry operations require write-down to net realizable value and preliminary estimates indicate that an adjustment in the range of $9 to $11 million for this issue and related items is necessary." The Company also announced that its Audit Committee had engaged a third party to assess internal controls and processes. Shares of SunOpta dropped nearly 40% upon this announcement. Lead Plaintiffs also alleged that SunOpta's Registration Statement and Prospectus for its December 2007 Secondary Stock Offering contained financial statements that were falsely represented to have been presented in conformity with Generally Accepted Accounting Principles ("GAAP") and SEC accounting rules and regulations, made untrue representations about the Company's disclosure and internal controls, failed to disclose the true risks associated with investing in SunOpta, and otherwise failed to comply with the rules and regulations governing its preparation.

Lead Plaintiffs alleged that Defendants' actions violated §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, and §§11 and 15 of the Securities Act of 1933 (the "Securities Act"). Lead Plaintiffs further alleged that as a direct and proximate cause of Defendants' misrepresentations or omissions, SunOpta's public shareholders suffered losses in the market value of their investments when the truth was revealed.

Defendants deny all allegations of wrongdoing and insist that they have no liability. They claim that Lead Plaintiffs did not adequately allege Defendants' scienter or loss causation under *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344 (2005). Defendants also argued that Lead Plaintiffs lacked standing to sue under the Securities Act, and that Lead Plaintiff's Securities Act claims against certain defendants are time-barred. Defendants further argued that the evidence

would establish that, even if Lead Plaintiffs could establish liability, at most only a small portion of SunOpta's stock price drop could be recoverable by the Class.

After extensive investigation and months of negotiations among the parties, including mediation before the Honorable Daniel Weinstein (Ret.), the parties reached this Settlement, which they are pleased to present to the Court for preliminary approval.

## II. THE LITIGATION

The first of several purported class actions alleging that Defendants violated the Exchange Act and the Securities Act was filed on January 28, 2008. On January 30, 2009, the Court consolidated the pending actions, appointed Lead Plaintiffs, and approved Lead Plaintiffs' choice of counsel. Lead Plaintiffs filed their Consolidated Amended Class Action Complaint for Violation of Federal Securities Laws (the "Complaint") on April 14, 2009.

The parties held settlement negotiations during the course of the litigation. On July 8, 2009, Lead Plaintiffs and Defendants participated in non-binding mediation before the Honorable Daniel Weinstein (Ret.). During and following the mediation, Lead Plaintiffs and Defendants engaged in arm's-length negotiations in an effort to reach a potential settlement of the litigation.

On or about July 14, 2009, Lead Plaintiffs and Defendants reached an agreement-in-principle to settle all claims arising from the facts and circumstances alleged in the Complaint for $11.25 million, plus the adoption by SunOpta of corporate governance reforms. The parties then drafted and negotiated the terms of the Stipulation and supporting exhibits, which was executed on September 23, 2009. The parties now respectfully seek preliminary approval of this Settlement.[2]

---

[2] The Canadian Action has already received preliminary approval.

# III. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

As discussed herein, the proposed Settlement is a very good result for Lead Plaintiffs and the Class. The Settlement provides a significant recovery in a case where Lead Plaintiffs faced significant hurdles to proving liability and damages, and is certainly within the range of what would be determined to be fair, reasonable, and adequate. Accordingly, Lead Plaintiffs respectfully submit that an analysis of the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)), set forth below, which apply to a court's determination of final approval of a settlement, also supports preliminary approval of this Settlement.

## A. The Standards for Reviewing a Proposed Settlement for Preliminary Approval

Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval. In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. 1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at *15-*16 (S.D.N.Y. June 7, 2005); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled. . . . In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.") (citations omitted). Courts are afforded wide discretion in determining which information to consider at this preliminary stage, and this initial assessment can be made on the basis of information already known to the court. *Manual for Complex Litigation* §21.632 (4th ed. 2004). *See also In re State St. Bank & Trust Co. ERISA Litig.*, No. 07 Civ. 8488 (RJH), 2009 U.S. Dist. LEXIS

100971, at *14 (S.D.N.Y. Oct. 28, 2009) ("Preliminary approval is 'at most a determination that there is what might be termed "probable cause" to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness.'") (citation omitted).

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted. *See NASDAQ*, 176 F.R.D. at 102 (citing *Manual for Complex Litigation* §30.41 (3d ed. 1995)); *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *18; *In re Med. X-Ray Film Antitrust Litig.*, No. CV 93-5904 (CPS), 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997) ("preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlement[]"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval.'") (citation omitted). "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ*, 176 F.R.D. at 102.

At the preliminary approval stage, the court does not make a final determination of the merits of the proposed settlement. *State St.*, 2009 U.S. Dist. LEXIS 100971, at *14 ("[A]t the preliminary approval stage, the Court need decide only if the proposed settlement 'fits within the range of possible approval.'") (citation omitted); *Prudential*, 163 F.R.D. at 210. Full evaluation is made at the final approval stage, after notice of the settlement has been given to the class and they have had an opportunity to voice their views of the settlement. *Prudential*, 163 F.R.D. at 210; *see also* 3B James Wm. Moore, *Moore's Federal Practice* §23.80 [2.-1], at 23-479 (2d ed. 1996). A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is

reached by experienced counsel after arm's-length negotiations, and courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

## B.     Preliminary Approval of the Settlement Should Be Granted

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted). For the following reasons, each of the applicable *Grinnell* factors supports preliminary approval of the Settlement.

### 1.     The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement

Courts have consistently recognized the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially where the settlement being evaluated is a securities class action. *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005); *In re Alloy, Inc., Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *6 (S.D.N.Y. Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties"). *See also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 1500, 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006) (due

to their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

This case is no exception. Lead Plaintiffs advanced numerous complex legal and factual issues under the federal securities laws, each of which required expert discovery and testimony. Defendants would have undoubtedly moved to dismiss the Complaint, the outcome of which motion would have affected the nature of the case that Lead Plaintiffs would litigate. This trial would be very complicated for jurors, and would be expensive for the Class. This Settlement obviates the need for the Court to rule on a motion to dismiss, and the numerous discovery and dispositive motions which would likely follow. Moreover, this litigation faces jurisdictional issues not present in most cases – this cross-border action involves corporate activity in two countries. This Settlement enables the Class to recover much sooner than it would if the action went to trial, and conserves judicial resources. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

### 2. The Reaction of the Class to the Settlement

Lead Plaintiffs have participated throughout the prosecution of their claims and were actively involved in the decision to enter into the Settlement. Notice regarding the Settlement has not yet been distributed. Should any objections be received after the notice is disseminated, they will be addressed by counsel in connection with their motion for final approval of the Settlement.

### 3. The Stage of the Proceedings

The volume and substance of Lead Plaintiffs' and Lead Plaintiffs' counsel's knowledge of the merits and potential weaknesses of the Class's claims are unquestionably adequate to support the Settlement. This knowledge is based on Lead Plaintiffs' and Lead Plaintiffs' counsel's extensive

investigation during the prosecution of this action, including, *inter alia*: (i) review of SunOpta's press releases, public statements, SEC filings, regulatory filings and reports, and securities analysts' reports and advisories about the Company; (ii) review of media reports about the Company; (iii) interviewing percipient witnesses, including former SunOpta employees; (iv) research of the applicable law with respect to the claims asserted in the action and the potential defenses thereto; and (v) negotiating this Settlement with Defendants. The accumulation of the information found in the above sources permitted Lead Plaintiffs and Lead Plaintiffs' counsel to be well-informed about the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants. In addition, SunOpta has agreed to produce to Lead Plaintiffs' counsel all non-privileged documents dated between January 1, 2007 and January 27, 2008, collected from SunOpta employees and produced to the SEC in connection with its investigation of the Company.

By the time the parties entered into an agreement to settle this action, Lead Plaintiffs' counsel were extremely knowledgeable of the issues raised and able to recommend the Settlement to Lead Plaintiffs, and upon preliminary approval by the Court, to the Class. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("the question is whether the parties had adequate information about their claims").

### 4. The Risk of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 U.S. Dist. LEXIS 24129, at *6 (finding that issues present in securities action presented significant hurdles to proving liability); *Michael Milken*, 150 F.R.D. at 65 (when evaluating securities class

action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)).

While Lead Plaintiffs believe that the allegations of the Complaint would ultimately be borne out by the evidence, they also recognize that they would face hurdles to proving liability. Defendants have articulated defenses to Lead Plaintiffs' allegations that could be accepted by the Court or jury. Among other things, Defendants claimed that Lead Plaintiffs could not establish standing to sue under the Securities Act, and falsity, scienter or loss causation, and therefore damages under the Exchange Act. If Defendants were successful in convincing the Court of their arguments, the case would be over, with no recovery for the Class. *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11-*12 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving damages in securities cases). In order to prevail, Lead Plaintiffs would be required to prove that Defendants' alleged false and misleading statements inflated the price of SunOpta securities, as well as the amount of the artificial inflation. Lead Plaintiffs' counsel, with the assistance of their damages experts, have calculated preliminarily the damages that are attributable to Defendants' alleged wrongdoing. However, this figure assumes that every element of the Class's damages theory is accepted by the jury as being correct and recoverable. As such, its viability as an actual calculation for damages could be affected by many factors, including Defendants' rebuttals and defenses to Lead Plaintiffs' damages calculations and expert testimony. These risks, when balanced against the immediate benefits of this Settlement, favor a finding that the Settlement is well within the range of reasonableness.

### 5. The Risks of Maintaining the Class Action Through Trial

While Lead Plaintiffs believe that the Court would certify the Class, Defendants took the position that no class could be certified in this litigation. Moreover, even if the Court ultimately certified the Class, certification can be reviewed and modified at any time before trial. Thus, there is

always a risk that the action, or particular claims, might not be maintained as a class through trial. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (nothing that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might not be certified is not illusory").

### 6. The Ability of Defendants to Withstand a Greater Judgment

The Court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement. Here, SunOpta does not have unlimited financial resources. In fact, at the time the Settlement was reached, SunOpta's cash position was precarious at best, and it had limited insurance. Therefore, this factor favors approval of the Settlement.

### 7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" - a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *12-*13 (noting few cases tried before a jury result in full amount of damages claimed). In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44

(where settlement fund in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). Considering the present and time value of money and the risk that the Class would not succeed in proving liability or in establishing loss causation or damages in excess of the Settlement amount, this Settlement is well within the range of reasonableness. As the court stated when approving one of the settlements in the *Enron* ERISA litigation: "The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005).

### C. The Proposed Class Satisfies the Rule 23 Requirements

#### 1. Securities Cases Are Particularly Suited for Class Action Treatment

"Class actions serve an important function in our system of civil justice," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981), and have been recognized repeatedly as an important means of enforcing the federal securities laws. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 320 n.4 (2007); *Basic Inc. v. Levinson*, 485 U.S. 224, 230-32 (1988); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380 n.10 (1983); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196 (1976); *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd and remanded on other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) (holding that securities actions alleging misstatements or omissions fit the requirements of Rule 23 "like a glove").

Rule 23 allows for the effective enforcement of the securities laws for large numbers of investors who have suffered injuries but do not have a sufficient economic interest to incur the expense or inconvenience of an individual lawsuit. *See, e.g.*, *Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965). As a result, securities law claims are routinely found to be appropriate for class treatment. *See, e.g.*, *Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 WL 622811

(S.D.N.Y. Mar. 6, 2008); *In re Ashanti Goldfields Sec. Litig.*, No. CV 00-0717 (DGT), 2004 U.S. Dist. LEXIS 5165 (E.D.N.Y. Mar. 30, 2004).

Furthermore, by providing a single forum in which to litigate the same or similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources. *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (holding that "'the effectiveness of the securities laws may depend in large measure on the application of the class action device'") (citation omitted); *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Rule 23, therefore, is broadly structured so as to facilitate certification of class actions. "Accordingly, in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999); *see also Eisenberg*, 766 F.2d at 785 ("'The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action.'") (quoting *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968)).

## 2.     The Standards for Class Certification

"[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met . . . ." *In re Initial Pub. Offering Sec. Litig. ("IPO")*, 471 F.3d 24, 41 (2d Cir. 2006). In making those determinations, the Second Circuit has instructed courts to be "mindful of the admonition of liberality toward demands for class suit status in securities litigation." *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972); *Ashanti*, 2004 U.S. Dist. LEXIS 5165, at *32 ("A liberal standard is in accord with the Second Circuit's preference for the use of class actions in securities law claims."); *In re Avon Sec. Litig.*, No. 91 Civ. 2287 (LMM), 1998 U.S. Dist. LEXIS 18642, at *13 (S.D.N.Y. Nov. 30, 1998) ("In light of the importance of the class action device in securities litigation, courts in this circuit apply Rule 23 according to a liberal standard.");

*Ohman v. Kahn*, No. 87 Civ. 7117 (JFK), 1990 U.S. Dist. LEXIS 7781, at *3 (S.D.N.Y. June 27, 1990) ("Rule 23's factors 'are to be construed liberally' . . . when the proposed class includes alleged victims of securities fraud.") (citation omitted).

Thus, in considering a class certification motion, a court will focus only on whether the prerequisites of Rule 23 are met. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). While a court may resolve factual issues concerning the prerequisites of Rule 23 when those issues overlap with issues relating to the merits (*IPO*, 471 F.3d at 41), here there are no merits-based issues that impact the Court's consideration of class certification. As demonstrated below, the Class satisfies the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3), in that common questions of law and fact predominate and that a class action is superior to alternative methods for the fair and efficient adjudication of Defendants' alleged violations of the Exchange Act. Class certification is therefore appropriate, and the Court should certify the Class.

### 3. The Proposed Class Satisfies Rule 23(a)

#### a. The Proposed Class Is so Numerous that Joinder of All Members Is Impracticable

For a class action to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable. Fed. R. Civ. P. 23(a)(1). Rule 23 does not require joinder to be impossible, but "the difficulty or inconvenience of joining all members of the class [must] make [the] use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed when a class consists of forty or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

To fulfill its obligation to establish numerosity, a plaintiff need not allege the exact number or identity of class members. Rather, courts "'may make common sense assumptions to support a

finding of numerosity.'" *Blech*, 187 F.R.D. at 103 (citation omitted); *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK) (AJP), 2006 U.S. Dist. LEXIS 5346, at *18 (S.D.N.Y. Feb. 14, 2006) ("'Although precise calculation of the number of class members is not required, . . . it is permissible for the court to rely on reasonable inferences drawn from available facts . . . .'") (citation omitted); *In re NTL Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK), 2006 U.S. Dist. LEXIS 76959, at *3 (S.D.N.Y. Mar. 9, 2006) (granting certification). Accordingly, "the numerosity requirement of Rule 23(a)(1) is generally assumed to have been met in class action suits, such as the one here, involving nationally traded securities." *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991).[3] Approximately 64 million SunOpta common shares were outstanding during the Class Period, held by thousands of shareholders, and nearly 130 million shares of SunOpta stock were traded during that time. Thus, Rule 23(a)(1) is satisfied.

### b. There Exist Questions of Law and Fact Common to the Members of the Class

Rule 23(a)(2) requires that "'plaintiffs' grievances share a common question of law or of fact.'" *Cent. States*, 504 F.3d at 245 (citation omitted). Proof of Lead Plaintiffs' claims is necessarily common to all members of the Class. In determining whether common questions exist, Rule 23(a)(2) "requires only that there be 'a common nucleus of operative fact,' not that there be an

---

[3] In fact, "'[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'" *In re Greenfield Online Sec. Litig.*, No. 3:07-cv-01118 (VLB), 2008 U.S. Dist. LEXIS 84175, at *11 (D. Conn. Oct. 20, 2008) (citation omitted); *Gerber v. Computer Assocs. Int'l*, No. 91 CV 3610 (SJ), 1995 U.S. Dist. LEXIS 21142, at *7 (E.D.N.Y. Apr. 14, 1995) ("[Defendants'] common stock was listed and actively traded on the New York Stock Exchange; therefore, it is likely that [defendants'] stockholders are not concentrated in any one geographic location, but rather, are widely dispersed. Hence, given that there will be a variety of residences and numerous claims, joinder would be impractical.") (citing *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968)).

absolute identity of facts." *Gerber*, 1995 U.S. Dist. LEXIS 21142, at \*7-\*8 (quoting *Port Auth. Police Benevolent Ass'n v. Port Auth.*, 698 F.2d 150, 153-54 (2d Cir. 1983)); *see also In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail.").

Common questions of law and fact are present where, as here, the alleged misconduct involves material misrepresentations and omissions in written publications circulated to the investing public and filed with the SEC, press releases and statements provided to the investment community and the media, and investor conference calls. *See, e.g.*, *In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (disseminating statements that omitted or misrepresented material facts deemed common questions). The repeated misrepresentations alleged here are of the sort that courts routinely hold to satisfy the "common question" requirement. *See, e.g.*, *In re Interpublic Sec. Litig.*, No. 02 CIV. 6527 (DLC), 2003 U.S. Dist. LEXIS 19784, at \*7-\*8 (S.D.N.Y. Nov. 7, 2003) ("Plaintiffs have raised a number of common issues of law and fact. Among them are whether [defendants'] public filings and statements contained material misstatements, whether the defendants acted knowingly or with reckless disregard for the truth in misrepresenting material facts in [defendants'] public filings and press releases, and whether the damages to the investors were caused by the defendants' misstatements."); *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 426 (S.D.N.Y. 1986) ("The nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication. Essentially, this is a course of conduct case, which as pled satisfies the commonality requirement of Rule 23."); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987) ("The liability issue in this action will concern defendant's alleged duty to disclose and the materiality of the

alleged omission. . . . [P]laintiffs have shown these issues to be common to the class.").  The alleged misrepresentations and omissions, which form the basis of Lead Plaintiffs' claims, are necessarily common to all members of the proposed Class.  Thus, the commonality requirement is satisfied.

### c. Lead Plaintiffs' Claims Are Typical of the Class

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class."[4]  The typicality requirement is satisfied "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Cent. States*, 504 F.3d at 245 (citation omitted).  The claims here satisfy the typicality requirement in that they all arise from the same false and misleading statements and require similar arguments by Class Members concerning liability.

In order to meet the typicality requirement, "[t]he claims need not be identical, but must derive from 'the same general, over-all course of fraudulent conduct.'"  *Gerber*, 1995 U.S. Dist. LEXIS 21142, at *8-*9 (quoting *Epstein v. Moore*, No. 87-2984 (AET), 1988 U.S. Dist. LEXIS 5450, at *6 (D.N.J. June 13, 1988)).  Thus:

> Because this [typicality] inquiry focuses on the nature of the claims asserted, factual differences involving the date, type and manner of the purchase, the investor's perception of the transaction, or even the information furnished to him at the time will not destroy typicality if each class member was the victim of the same material omissions and the same consistent course of conduct.

*Baldwin-United*, 122 F.R.D. at 428.  Lead Plaintiffs' claims are not only similar to, but are virtually identical to, those of the members of the Class.  All members of the Class seek to prove that

---

[4]     The Supreme Court noted that the "commonality and typicality requirements of Rule 23(a) tend to merge."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *accord Ohman*, 1990 U.S. Dist. LEXIS 7781, at *10 ("The typicality requirement of Rule 23(a)(3) is a close cousin of the commonality requirement.").  Accordingly, inasmuch as commonality has been established, typicality has been established as well.

Defendants made materially false and misleading statements during the Class Period and failed to disclose material adverse facts about SunOpta's business. As such, Lead Plaintiffs and the other members of the Class have been injured by the same course of conduct by the Defendants. Moreover, the damages that they seek arise from the purchase or acquisition of SunOpta securities at prices that were artificially inflated as a result of Defendants' alleged false and misleading statements, and the subsequent decline in the price of SunOpta securities when the alleged wrongdoing was revealed. Thus, Lead Plaintiffs stand in precisely the same position as other purchasers or acquirers of the Company's shares during the Class Period. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) ("[T]he element of typicality is met because the class members have been allegedly harmed by the same course of conduct [--] the distribution of false and misleading information which artificially inflated the stock . . . ."). Accordingly, Lead Plaintiffs' claims are typical of those of the Class.

> **d.** **Lead Plaintiffs and Their Counsel Have Fairly and Adequately Prosecuted the Case on Behalf of the Proposed Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement is met if a plaintiff does not have interests that are antagonistic to those of the class, and his chosen counsel is qualified, experienced, and generally able to conduct the litigation. *See Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000).

Lead Plaintiffs satisfy both prongs of the adequacy test. Indeed, they already have successfully represented the interests of the proposed Class and demonstrated their adequacy to prosecute this action. Moreover, none of Lead Plaintiffs' interests are antagonistic to those of the Class. All members of the Class allege claims arising from the same wrongful conduct and are based on the same legal theories as the claims advanced by Lead Plaintiffs. Lead Plaintiffs are

committed to the vigorous prosecution of this action. Thus, interests of the other members of the Class will continue to be protected by Lead Plaintiffs.

Moreover, Lead Plaintiffs have retained the law firm of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as Lead Plaintiffs' counsel for the proposed Class, a firm that has substantial experience in the prosecution of securities class actions. For example, among other noteworthy securities fraud cases, Coughlin Stoia has served as sole lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624, 2005 U.S. Dist. LEXIS 39867 (S.D. Tex. Dec. 22, 2005), in which Coughlin Stoia has obtained recoveries to date which collectively represent the largest recovery ever obtained in a putative shareholder class action. Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

Coughlin Stoia is clearly qualified to represent the Class and, along with Lead Plaintiffs, have vigorously protected the interests of the proposed Class. Indeed, the Court-appointed Lead Plaintiffs' counsel have successfully prosecuted the action thus far, which resulted in the proposed Settlement of $11.25 million in cash. *See Greenfield Online*, 2008 U.S. Dist. LEXIS 84175, at *11-*12. Thus, the requirements of Rule 23(a)(4) are satisfied.

### 4. Lead Plaintiffs Satisfy the Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), the present action also satisfies the requirements of Rule 23(b)(3), which requires a proposed class representative to establish that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available means of adjudication. Here, common questions

of law and fact predominate, and a class action is the superior (if not the only) method available to fairly and efficiently litigate this securities fraud lawsuit.

### a.     Common Questions of Law or Fact Predominate

In determining whether common questions predominate, the inquiry should be directed primarily toward whether the issue of liability is common to members of the class.  Indeed, "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Genden*, 114 F.R.D. at 52 ("When determining whether common questions predominate courts 'focus on the liability issue . . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions.'") (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)).

The Supreme Court has noted that the predominance requirement "is a test readily met in certain cases alleging consumer or securities fraud." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).  In addition, courts have recognized that common issues of law and fact will generally predominate in actions alleging that materially false representations were made to large groups of investors. *See, e.g.*, *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431(ARR), 1999 U.S. Dist. LEXIS 22246, at *37 (E.D.N.Y. Apr. 30, 1999) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."). Where, as here, a complaint alleges that the defendants have made false and misleading representations, the issues of law and fact that flow from that conduct predominate over any individual issues, rendering class treatment appropriate:

The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) (citations omitted).

As noted in the discussion of commonality, above, the nature of this case and the elements of Lead Plaintiffs' claims involve issues primarily focusing on Defendants' misrepresentations and false statements – in short, Defendants' liability to the proposed Class. The Complaint alleges that Defendants pursued a common course of conduct that injured Lead Plaintiffs and the other members of the Class. Thus, all members of the Class are substantially – if not identically – situated with respect to those claims. In this case, it is difficult to discern any liability issues that are not common to the claims of each member of the Class. *See Greenfield Online*, 2008 U.S. Dist. LEXIS 84175, at *12 ("Because class members purchased Greenfield stock before one or both of the price declines and held the stock at the time of one or both of the price declines, the issues common to the entire class predominate over any issues that affect only individual class members."). Once common questions of liability are resolved, all that remains is the ministerial act of computing the amount of damages suffered by each Class Member. Thus, the predominance requirement is satisfied.

### b. A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Controversy

Not only do common questions predominate in the present litigation, but, as further required by Rule 23(b)(3), "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23 (b)(3) identifies factors to be considered in making a "superiority" determination:

(A)     the interest of members of the class individually controlling the prosecution of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already commenced by members of the class;

(C)     the desirability of concentrating the litigation of the claims in the particular forum; and

(D)     the difficulties likely to be encountered in the management of a class action.

In this litigation, the interest of members of the Class in individually controlling the prosecution of separate actions is minimal, because the costs and expenses of individual actions, when weighed against the individual recoveries potentially obtainable, would be prohibitive. Thus, the first superiority factor is satisfied. *See Blech*, 187 F.R.D. at 107 (superiority requirement satisfied as "[m]ultiple lawsuits would be costly and inefficient"). *See also Greenfield Online*, 2008 U.S. Dist. LEXIS 84175, at *12.

Lead Plaintiffs are not aware of any similar individual suits currently pending against Defendants. As such, there is no dispute that this Court is a desirable forum for concentrating the litigation of Class Members' claims. *See In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023 (DC), 2002 U.S. Dist. LEXIS 4949, at *26 (S.D.N.Y. Mar. 26, 2002) ("For each investor to litigate individually 'would risk disparate results among those seeking redress, . . . would exponentially increase the costs of litigation for all, and would be a particularly inefficient use of judicial resources.'") (citation omitted); *Arakis Energy*, 1999 U.S. Dist. LEXIS 22246, at *38 ("In addition, were plaintiffs required to bring individual actions, the potential for duplicative litigation and consequent waste of judicial and party resources would be significant."). The actions that form this consolidated matter were consolidated here. Thus, the second and third superiority factors are satisfied.

Finally, Lead Plaintiffs do not envision any significant difficulties likely to be encountered in the management of this case as a class action or the administration of the proposed Settlement. This

action is appropriate for class treatment, embodying all of the hallmarks, both in form and in substance, of the types of securities actions that are routinely certified in this Circuit and elsewhere. Thus, as the Second Circuit has recognized, a class action is superior to other available methods – particularly duplicative individual lawsuits – for the fair and efficient adjudication of a controversy affecting a large number of securities holders injured by violations of the federal securities laws. *Green*, 406 F.2d at 296.

## IV. THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE FORM OF THE PROOF OF CLAIM ARE APPROPRIATE

### A. The Scope of the Notice Program

Exhibit G to the Stipulation, the Plan of Notice, sets forth the extensive two-language notice program the parties intend to implement in order to provide adequate notice of the Settlement to the Class, and that exhibit is respectfully incorporated herein.

### B. The Scope of the Notice Program Is Adequate

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement. Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, the court should look to its reasonableness. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *26 (S.D.N.Y. Feb. 1, 2007). It is clearly established that "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*. at *27 (citing *Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988)). In fact, notice programs such as the one proposed by Lead Plaintiffs' counsel have been approved as adequate under Due Process and Rule 23 in a multitude of class action settlements. *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2007 U.S.

Dist. LEXIS 29062, at *41-*42 (E.D.N.Y. Apr. 19, 2007); *In re Luxottica Group S.p.A., Sec. Litig.*, No. CV 01-3285 (JBW) (MDG), 2005 U.S. Dist. LEXIS 27765, at *4-*5 (E.D.N.Y. Nov. 15, 2005); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y.) (approving proposed notice and noting mailing of notice to each identifiable class member's last known address is "a procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996). Here, by consulting with counsel for Defendants and the transfer agent (through counsel for Defendants), Lead Plaintiffs' counsel are ensuring that every known avenue for obtaining the identity of Class Members is being utilized to disseminate the Notice. Lead Plaintiffs' counsel respectfully submit that the proposed notice program is adequate and should be approved by the Court.

### C. The Proposed Form of Notice Comports With the Requirements of Due Process, the PSLRA, and Rule 23 and Is the Same or Similar to the Form(s) of Notice Routinely Approved By Courts in This Jurisdiction

The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006). *See also Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the settlement notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'") (citation omitted).

Specifically with respect to cases filed under the PSLRA, notices of settlements must state: (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per-share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement

from each settling party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;[5] (iv) the name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to the class; (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) such other information as may be required by the court. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA. *See* Notice, Exhibit I to the Stipulation. The information is also provided in a format that is accessible to the reader. In addition, the Notice advises recipients that they have the right to exclude themselves from the Settlement, or to object to any aspect of the Settlement. Furthermore, the Notice provides recipients with the contact information for Gilardi and Lead Plaintiffs' counsel. Finally, the proposed format is the same or similar to formats that have been approved by many other courts in this jurisdiction, therefore, Lead Plaintiffs' counsel respectfully submit that the Court should approve the form of notice.

## V.    PROPOSED SCHEDULE

If the Court grants preliminary approval to the proposed Settlement, the parties respectfully submit the following procedural schedule for the Court's review:

---

[5]     The Notice informs Class Members that Lead Plaintiffs' counsel are seeking an award of attorneys' fees not to exceed 25% of 70% of the Gross Settlement Fund and an award of expenses incurred in litigating the case not to exceed $150,000.

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice and Proof of Claim and Release form to Class Members (the "Notice Date") | 14 calendar days after entry of the Court's Preliminary Order for Notice and Hearings in Connection with Settlement Proceedings ("Preliminary Approval Order") |
| Deadline for publishing the Summary Notice | 14 calendar days after entry of the Court's Preliminary Approval Order |
| Deadline for filing Proof of Claim and Release forms | 120 days following the Notice Date |
| Deadline for submitting exclusion requests or objections | 14 calendar days before the Settlement Hearing |
| Filing of memoranda in support of approval of the Settlement and Plan of Allocation, or in support of Lead Plaintiffs' counsel's application for an award of expenses | 21 calendar days before the Settlement Hearing |
| Settlement Hearing | Approximately 90 days following execution of the Preliminary Approval Order, at the Court's convenience |

## VI.    CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court enter the proposed

Preliminary Approval Order in connection with the Settlement proceedings.

DATED:  November 13, 2009                    Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.


*s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

Document1

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2009, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail

addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on November 13, 2009.

*s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:srudman@csgrr.com

# Mailing Information for a Case 1:08-cv-00933-PAC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@csgrr.com,e_file_ny@csgrr.com,drosenfeld@csgrr.com

- **Torello H. Calvani**
  tcalvani@omm.com

- **Jeffrey Philip Campisi**
  jcampisi@kaplanfox.com

- **Melissa Ryan Clark**
  melissa.clark@kgscounsel.com

- **Frederic Scott Fox , Sr**
  ffox@kaplanfox.com

- **William J. Hine**
  wjhine@jonesday.com,jmsim@jonesday.com,dpjacobson@jonesday.com

- **Lewis Stephen Kahn**
  lewis.kahn@ksfcounsel.com

- **Gregory Bradley Linkh**
  glinkh@murrayfrank.com

- **Kim Elaine Miller**
  kimmiller225@yahoo.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

- **David R. Scott**
  drscott@scott-scott.com,efile@scott-scott.com

- **Arthur L. Shingler , III**
  ashingler@scott-scott.com

- **Evan J. Smith**
  esmith@brodsky-smith.com

- **William Joseph Sushon**
  wsushon@omm.com,#nymanagingattorney@omm.com

- **Jayant W. Tambe**
  dpjacobson@jonesday.com,kpollak@jonesday.com,jtambe@jonesday.com

- **Curtis Victor Trinko**
  ctrinko@trinko.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Michael J. McConnell
Jones Day(GA)
1420 Peachtree Street, Suite 800
Atlanta, GA 30309

Eric J. O'Bell
Law Offices of Eric J. O'Bell, LLC
3500 Noth Hullen Street
Metairie, LA 70002
```