**EXHIBIT A**

**EXHIBIT "A"**

Court File No. 57453CP

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE

B E T W E E N :

JOHN O'NEIL

Plaintiff

– and –

SUNOPTA, INC.,
STEVEN R. BROMLEY and  JOHN H. DIETRICH

Defendants

Proceeding under the *Class Proceedings Act*, 1992

#### AMENDED AMENDED STATEMENT OF CLAIM

TO THE DEFENDANT

A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU by the plaintiff. The claim made against you is set out in the following pages.

IF YOU WISH TO DEFEND THIS PROCEEDING, you or an Ontario lawyer acting for you must prepare a statement of defence in Form 18A prescribed by the Rules of Civil Procedure, serve it on the plaintiff's lawyer or, where the plaintiff does not have a lawyer, serve it on the plaintiff, and file it, with proof of service, in this court office, WITHIN TWENTY DAYS after this statement of claim is served on you, if you are served in Ontario.

If you are served in another province or territory of Canada or in the United States of America, the period for serving and filing your statement of defence is forty days.  If you are served outside Canada and the United States of America, the period is sixty days.

Instead of serving and filing a statement of defence, you may serve and file a notice of intent to defend in Form 18B prescribed by the Rules of Civil Procedure.  This will entitle you to ten more days within which to serve and file your statement of defence.

IF YOU FAIL TO DEFEND THIS PROCEEDING, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU. IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.

- 2 -

IF YOU PAY THE PLAINTIFF'S CLAIM, and $400.00 for costs, within the time for serving and filing your statement of defence, you may move to have this proceeding dismissed by the court. If you believe the amount claimed for costs is excessive, you may pay the plaintiff's claim and $400.00 for costs and have the costs assessed by the court.

Date: August 28, 2008         Issued by: _____
                                          Registrar

                              Address of Court Office: 80 Dundas Street
                                                       London, ON  N6A 6A3

| TO: | SunOpta Inc.<br>2838 Bovaird Drive West<br>Brampton, ON  L7A 0H2 |
|---|---|
| AND TO: | **STEVEN R. BROMLEY**<br>2838 Bovaird Drive West<br>Brampton, ON  L7A 0H2 |
| AND TO: | **JOHN H. DIETRICH**<br>2838 Bovaird Drive West<br>Brampton, ON  L7A 0H2 |

## CLAIM

### DEFINITIONS

1.      The following definitions apply for the purpose of this statement of claim

    (a)    "**2007 Q1**" means the quarter ended March 31, 2007;

    (b)    "**2007 Q2**" means the quarter ended June 30, 2007;

    (c)    "**2007 Q3**" means the quarter ended September 30, 2007;

    (d)    "**Bromley**" means the defendant, Steven R. Bromley;

    (e)    "*C$*" means Canadian dollars;

    (f)    "*CJA*" means the *Courts of Justice Act,* R.S.O. 1990, c. C.43, as amended;

(g) "Class" or "Class Members" means all ~~persons~~ **individuals and entities**, other than **Excluded Persons**, who **purchased or otherwise** acquired securities of **SunOpta** during the **Class Period** and ~~who held some or all of those securities on January 25, 2008, or such other definition as may be approved by the court~~ **either (i) were Canadian residents at the time of such purchase or acquisition; or (ii) purchased or acquired such SunOpta securities over the Toronto Stock Exchange**;

(h) "Class Period" means the period from the opening of trading on ~~May 8, 2007~~ **February 23, 2007** to the close of trading on January ~~24~~ **27**, 2008;

(i) "*CPA*" means the *Class Proceedings Act, 1992*, S.O. 1992 c. 6, as amended;

(j) "*Corrective Release*" means the **SunOpta** press release dated January 24, 2008;

(k) "Defendants" means **SunOpta, Bromley and Dietrich**;

(l) "Dietrich" means the defendant, John H. Dietrich;

(ll) "EDGAR" means the website for the Electronic Data Gathering, Analysis, and Retrieval system operated by the SEC on which companies required to file documents with the SEC may do so electronically, and where those documents are posted and publicly available;

(m) "Excluded Persons" means **SunOpta's** past and present subsidiaries, affiliates, officers, directors, senior employees, legal representatives, heirs, predecessors, successors and assigns, and any member of the **Individual Defendants'** families

- 4 -

and any entity in which any of them has any legal or *de facto* controlling interest;

(n)    "**Financial Statements Q1**" means **SunOpta's** interim unaudited consolidated financial statements for the **2007 Q1**;

(o)    "**Financial Statements Q2**" means **SunOpta's** interim unaudited consolidated financial statements for the **2007 Q2**;

(p)    "**Financial Statements Q3**" means **SunOpta's** interim unaudited consolidated financial statements for **2007 Q3**;

(q)    "**Form 52-109F2**" means the Certification of Interim Filings required to be filed with **SEDAR** and signed by the Chief Executive Officer and Chief Financial Officer of a reporting issuer contemporaneously with the issuance of the reporting issuer's interim financial statements;

(r)    "**GAAP**" means generally accepted accounting principles;

(s)    "**Individual Defendants**" means **Bromley** and **Dietrich**;

(t)    "**MD&A Q1**" means **SunOpta's** Management's Discussion and Analysis for the **2007 Q1**;

(u)    "**MD&A Q2**" means **SunOpta's** Management's Discussion and Analysis for the **2007 Q2**;

(v)    "**MD&A Q3**" means **SunOpta's** Management's Discussion and Analysis for the **2007 Q3**;

(w)   **"Misrepresentation"** means the statement explicitly and/or implicitly contained in **SunOpta's** press releases of May 8, 2007, August 8, 2007, November 6, 2007, and in the **Financial Statements Q1; Q2** and **Q3**, and in the **MD&A Q1, Q2** and **Q3**, that SunOpta's **Financial Statements Q1; Q2** and **Q3** were prepared in accordance with **GAAP** and fairly presented in all material respects **SunOpta's** financial position for and as of the relevant periods and dates;

(x)   **"NASDAQ"** means the electronic screen-based equity securities market that is based in New York, New York;

(y)   **"OSA"** means the *Securities Act*, R.S.O. 1990, c. S.5, as amended;

(z)   **"OSC"** means the Ontario Securities Commission;

(zz)   "SEC" means the United States Securities and Exchange Commission;

(aa)   **"SEDAR"** means the system for electronic document analysis and of the Canadian Securities Administrators;

(aaa)   "Subclass" or "Subclass Members" means Class Members who, as of the close of trading on the TSX and the Nasdaq on June 26, 2008, continued to hold SunOpta securities that they acquired during the Class Period;

(bb)   **"SunOpta"** means the defendant, SunOpta Inc.;

(cc)   **"TSX"** means the Toronto Stock Exchange; and

(ccc)   "USD$" means United States dollars;

2.   The Plaintiff claims on his behalf and on behalf of the other Class Members:

- 6 -

(a)     an order pursuant to the *CPA* certifying this action as a class proceeding and appointing him as representative plaintiff;

(b)     a declaration that the defendants made the Misrepresentation and the other misstatements alleged herein during the Class Period, and that the Misrepresentation and such misstatements constituted untrue statements of material fact;

(c)     a declaration that the defendants made the aforesaid Misrepresentation and misstatements negligently or alternatively, recklessly, caring not whether they were true or false;

(d)     a declaration that SunOpta is vicariously liable for the acts and/or omissions of the Individual Defendants;

(e)     a declaration that, during the Class Period, Bromley and Dietrich conspired with each other to misrepresent the financial results of SunOpta and thereby to cause the price of SunOpta's securities to become inflated;

(f)     leave to amend this statement of claim to assert the causes of action set out in s. 138.3 of the *OSA;*

(g)     general and special damages in the sum of $100 million or such other sum as this court finds appropriate at the trial of the common issues or at a reference or references;

(h)     punitive damages in the amount of $10 million or such other sum as this court finds appropriate at the trial of the common issues;

<u>(i)</u>     an order directing a reference or giving such other directions as may be necessary to determine issues not determined in the trial of the common issues;

<u>(j)</u>     prejudgement interest and postjudgement interest, compounded, or pursuant to ss. 128 and 129 of the *CJA*;

<u>(k)</u>     costs of this action on a substantial indemnity basis or in an amount that provides full indemnity plus, pursuant to s. 26(9) of the *CPA*, the costs of notice and of administering the plan of distribution of the recovery in this action plus applicable taxes; and

<u>(l)</u>     such further and other relief as to this Honourable Court seem just.

## THE NATURE OF THE ACTION

3.    SunOpta is a publicly listed company and its shares were traded at all material times on the TSX and NASDAQ under the symbols SOY and STKL, respectively.

4.    Throughout the Class Period, SunOpta and the Individual Defendants made the Misrepresentation.  The Misrepresentation was made in, among other documents, the MD&A Q1, MD&A Q2, MD&A Q3, the Financial Statements Q1; Q2 and Q3, and the press releases dated May 8, 2007, August 8, 2007 and November 6, 2007.

5.    The Plaintiff seeks damages in an amount equal to the losses that he and the other Class Members suffered as a result of purchasing or acquiring SunOpta securities during the Class Period.

## THE PLAINTIFF

6.    The Plaintiff lives in the Town of Parkhill, in the Province of Ontario.  During the Class Period, he made various purchases on the TSX of SunOpta's common shares, and continues to hold ~~1~~500 such shares.  Particulars of these ~~purchases~~ transactions during the Class Period are as follows:

| Date | Number of Shares | Purchase/Sale | Price per Share | Total Cost/Proceeds |
|---|---|---|---|---|
| September 20, 2007 | 500 | Purchase | C$14.00 | C$7,009.95 |
| October 02, 2007 | 500 | Sale | C$15.00 | C$7,490.05 |
| October 12, 2007 | 500 | Purchase | C$14.00 | C$7,009.95 |

**THE DEFENDANTS**

7.      At all material times, SunOpta was a corporation incorporated pursuant to the laws of Canada, with its head office in Brampton, Ontario.

8.      SunOpta is a reporting issuer in British Columbia, Alberta, Saskatchewan, Manitoba and Ontario.

9.      As a reporting issuer in Ontario, SunOpta is subject to various continuous disclosure obligations under the *OSA*.

10.     Bromley is, and at all material times during the Class Period was, the President, Chief Executive Officer and a member of the Board of Directors of SunOpta.  On June 26, 2008, SunOpta announced that Bromley would be leaving his positions as President, Chief Executive Officer, and member of the Board of Directors of SunOpta as a result of the matters alleged herein.  During the Class Period, Bromley owned a significant number of SunOpta common shares and options to purchase SunOpta common shares.

11.     Dietrich is, and at all material times during the Class Period was, the Vice President and Chief Financial Officers of SunOpta.  On June 26, 2008, SunOpta announced that Dietrich would be leaving his position as Vice President and Chief Financial Officer of SunOpta as a result of the matters alleged herein.  During the Class Period, Dietrich owned a significant number of SunOpta's common shares and options to purchase SunOpta's common shares.

12.     By virtue of their positions as senior officers and/or directors of SunOpta, the Individual Defendants had actual, implied or apparent authority to speak on SunOpta's behalf prior to and during the Class Period.

**SUNOPTA'S BUSINESS**

13.    SunOpta was founded <u>in Canada</u> in 1973 under the name "Stake Technology" to commercialize its proprietary steam explosion technology.  According to SunOpta, it has extensive expertise in sourcing, processing, packaging and distributing natural, organic and specialty foods.

14.    SunOpta describes its business as the operation of three high growth, "ethical" business segments: SunOpta Food Group; Opta Minerals; and the SunOpta BioProcess Group.

15.    SunOpta Food Group represents over 90% of SunOpta's annual revenues and is comprised of four operating groups:  SunOpta Grains and Foods Group, SunOpta Ingredients Group, SunOpta Fruit Group, and the SunOpta Distribution Group.  The SunOpta Grains and Foods Group specializes in bringing identity preserved, non-GMO and organic soybeans, sunflower and corn products to market.  The SunOpta Ingredients Group focuses on the technical processing and contract manufacturing of value-added food ingredients such as oat fibers, stabilized brans, germs and natural preservatives.  The SunOpta Fruit Group is focused on the global sourcing and processing of a diverse range of organic and natural fruits, fruit ingredients and packaged products for industrial, food service and private label retail customers.  The SunOpta Distribution Group distributes organic, natural, kosher and specialty foods.

16.    Opta Minerals Inc. is a TSX listed company and trades under the symbol "OPM."  Opta Minerals Inc. represents approximately 9% of SunOpta's annual revenues and is focused on processing and recycling silica free abrasives and a wide range of industrial minerals.

- 11 -

17.     SunOpta BioProcess Group represents approximately 1% of SunOpta's revenue and is focused on the processing of biomass for the production of cellulosic ethanol and other bio-products.

18.     SunOpta became listed on the TSX on November 6, 2001.

## SUNOPTA'S DISCLOSURE OBLIGATIONS

19.     SunOpta is a reporting issuer in Ontario and as such, pursuant to the *OSA*, is required to file with SEDAR

    (a)     quarterly interim financial statements that must include a comparative statement to the end of each of the corresponding periods in the previous financial year, and

    (b)     annual financial statements within 140 days from the end of its last financial year including comparative financial statements relating to the period covered by the preceding financial year,

    each compiled in accordance with GAAP.

20.     SunOpta, because it is traded on the NASDAQ, it is **also** subject to the United States *Securities and Exchange Act* of 1934, which requires, among other things, that SunOpta issue quarterly unaudited financial statements prepared in accordance with GAAP and file them with EDGAR.

- 12 -

## SUNOPTA'S MISREPRESENTATION DURING THE CLASS PERIOD
### *THE FEBRUARY 23, 2007 CONFERENCE CALL*

20A.  On February 23, 2007, SunOpta held a conference call with investors and securities

analysts to discuss the Company's reported results for last quarter of 2006, ending

December 31, 2006.  On that call, Jeremy Kendall, Chairman of the Board of

Directors of SunOpta and each of SunOpta's subsidiaries, made the following

statements about the Company's internal controls and new Oracle system:

> We continued the implementation of improved and stronger internal controls and
> once again met the requirements for Sarbanes-Oxley 404 certification. In addition,
> we continued implementation of our new Oracle operating platform at a number of
> our operating facilities and corporate office and expect to be fully implemented by
> the end of 2007. This is a key initiative as we continue to grow our business and
> build a scaleable and sustainable platform for continued growth.

### *THE FEBRUARY 26, 2007 FORM 10-K*

20B.  On February 26, 2007, the Company filed its 2006 Form 10-K with the SEC.

SunOpta's 2006 Form 10-K included the following representations concerning its

internal and/or disclosure controls:

> We have the necessary processes and controls in place that provide for an additional
> level of traceability of all raw materials from the supplier to the immediate
> subsequent recipient of the finished products.
>
> ***
>
> Under the supervision and with the participation of our management, including our
> principal executive officer and principal financial officer, we conducted an
> evaluation of our disclosure controls and procedures, as such term is defined under
> Rule 13a-15(e) promulgated under the Securities Exchange Act of 1934, as amended
> (the Exchange Act). Based on this evaluation, our principal executive officer and our
> principal financial officer concluded that our disclosure controls and procedures
> were effective as of the end of the period covered by this annual report.
>
> ***
>
> Management is responsible for establishing and maintaining adequate internal
> control over financial reporting, as such term is defined in Exchange Act Rules 13a-
> 15(e). Under the supervision and with the participation of our management,
> including our principal executive officer and principal financial officer, we
> conducted an evaluation of the effectiveness of our internal control over financial
> reporting based on the framework in Internal Control – Integrated Framework
> issued by the Committee of Sponsoring Organizations of the Treadway Commission.

> Based on our evaluation under the framework in Internal Control - Integrated Framework, our management concluded that our internal control over financial reporting was effective as of December 31, 2006.

**20C.   The statements in paragraphs 21 and 22 were each materially false and misleading when made because they and failed to disclose and misrepresented the fact that SunOpta's systems of internal and disclosure controls were riddled with material deficiencies. As noted above, SunOpta has admitted that these deficiencies were material, widespread in nature and number and directly contributed to the restatement of SunOpta's materially inflated interim financial statements.**

*THE MAY 8, 2007 PRESS RELEASE*

21.   After the close of trading on May 8, 2007, SunOpta issued and filed with SEDAR and EDGAR a press release announcing its 2007 Q1 results. The aforesaid press release stated among other things the following:

> SunOpta Inc. (SunOpta or the Company) (Nasdaq:STKL) (TSX:SOY) today announced results for the first quarter ended March 31, 2007. All amounts are expressed in U.S. dollars.
>
> The Company achieved record revenues for the three months ended March 31, 2007, realizing its 38[th] consecutive quarter of increased revenue growth versus the same quarter in the previous year. Revenues in the quarter increased by 37.6% to $183,440,000 as compared to $133,312,000 in the first quarter of 2006, led by a 39.4% increase in revenues within the Company's vertically integrated natural and organic food operations. The Company's revenue growth in the quarter reflects an internal growth rate of 16.1% on a consolidated basis and includes internal growth of 20.2% within the SunOpta Food Group.
>
> Operating income (1) for the quarter increased by 32.3% to $7,976,000 or 4.3% of net revenue as compared to $6,031,000 or 4.5% of net revenue in 2006, driven by solid increases in operating income within the SunOpta Grains and Foods Group, the SunOpta Canadian Food Distribution Group and Opta Minerals Inc. Net earnings in the quarter were $3,850,000 or $0.063 per diluted common share as compared to $3,012,000 or $0.053 per diluted common share in the prior year.
>
> The SunOpta Food Group reported increased revenues of $166,262,000 as compared to $119,271,000 in 2006, a 39.4% increase. Segment operating income increased to $7,935,000 versus $6,829,000 in 2006. This increase includes additional corporate cost allocations of $1,169,000. Excluding these allocations, segment operating income increased 33.3%. The improved segment operating income was driven by strong growth in packaged soymilk products, a rebound in sales and margins of sunflower products, revenue gains and improved margins within the SunOpta Canadian Food Distribution

- 15 -

includes growth on base business plus growth on acquisitions from the date of acquisition over the previous year.

Operating income increased to $7,976,000, representing an increase of 32.3% versus the first three months of 2006. Growth in operating income was attributed to improved operating earnings from the SunOpta Food Group of $1,106,000 due primarily to the strong revenues and margins in the SunOpta Canadian Food Distribution Group operations and improved revenue and operating margins in the SunOpta Grains and Food Group. In addition, operating improvements of $449,000 were realized in Opta Minerals while the SunOpta BioProcess and Corporate segment realized reduced costs of $390,000. Please note that segmented operating income reflects an increase in allocated costs from Corporate to the SunOpta Food Group of $1,169,000 for increased information technology services as well as back office functions provided to divisions using the Oracle ERP system.

Interest expense increased by 36.6% to $1,911,000 for the three months ended March 31, 2007 due to increased average long-term debt and operating lines of approximately $21,000,000. The increase in debt is primarily related to acquisitions completed during the previous year and additional working capital utilized to fund internal growth. The average interest rate for the quarter was approximately 6.4%, slightly higher that the prior years first quarter at 6.2%. The Company's long term debt to equity ratio is 0.31:1:00, below the Company's long term target. Bank indebtedness is approximately 14% of accounts receivable and inventory, which is used to finance operating lines.

Other expense for the three months ending March 31, 2006 of $189,000 includes certain restructuring costs incurred during the quarter mainly relating to the consolidation of warehouses within the SunOpta Canadian Food Distribution Group. Other expenses of $85,000 in the previous year were related to costs incurred with the acquisition of Magnesium Technologies Corporation.

26.    In addition to inaccurately reporting SunOpta's 2007 Q1 financial results, the Financial

Statements Q1 also provided statements by SunOpta related to its Accounting

Presentation, that stated, in part, the following:

The interim condensed consolidated financial statements of SunOpta Inc. (the Company) have been prepared in accordance with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X and in accordance with accounting principles generally accepted in the United States. Accordingly, these financial statements do not include all of the disclosures required by generally accepted accounting principles for annual financial statements. In the opinion of management, all adjustments considered necessary for fair presentation have been included and all such adjustments are of a normal, recurring nature. Operating results for the three months ended March 31, 2007 are not necessarily indicative of the results that may be expected for the full year ending December 31, 2007. For further information, see the Company's consolidated financial statements, and notes thereto, included in the Annual Report on Form 10K for the year ended December 31, 2006.

The interim condensed consolidated financial statements include the accounts of the Company and its subsidiaries, and have been prepared on a basis consistent with the financial statements for the year ending December 31, 2006. All significant intercompany accounts and transactions have been eliminated on consolidation.

27. The foregoing statements were materially false and/or materially misleading when made, inasmuch as the financial results contained within the Financial Statements Q1 and the MD&A Q1 had not been compiled in accordance with GAAP and did not fairly present the performance and financial positions of SunOpta for 2007 Q1 or as at March 31, 2007.

28. The MD&A Q1 further stated, under the heading "Controls and Procedures", that:

> Under the supervision and with the participation of management, the Chief Executive Officer and Chief Financial Officer of the Company have evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures as of March 31, 2007, and, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that these controls and procedures are effective.

29. The foregoing statement was materially false and/or materially misleading when made, inasmuch as SunOpta's disclosure controls and procedures were not effective as at March 31, 2007.

30. Bromley and Dietrich each authorized, permitted and/or acquiesced in the issuance and publication of the Financial Statements Q1 and MD&A Q1.

*Form 52-109F2 – Certification of Interim Filings*

31. On May 10, 2007, contemporaneously with the issuance of the Financial Statements Q1 and the MD&A Q1, SunOpta issued and filed a Form 52-109F2 signed by Bromley and Dietrich. Bromley and Dietrich certified in part therein that:

> (2) Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;
>
> (3) Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report;
>
> (4) The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-

- 19 -

accordance with GAAP and did not fairly present the performance and financial positions

of SunOpta for 2007 Q2 or as at June 30, 2007.

*Financial Statements Q2 and MD&A Q2*

36.    On August 9, 2007, SunOpta issued and filed with SEDAR and EDGAR its Financial

Statements Q2 and MD&A Q2.

37.    The MD&A Q2 stated in part that:

> Revenues in the three months ending June 30, 2007 increased by 33.5% to $207,977,000
> based on internal growth of 16.2% and acquisition revenues of $23,200,000. Internal
> growth includes growth on base business plus growth on acquisitions from the date of
> acquisition over the previous year. The majority of the growth came from the SunOpta
> Food Group with both acquisition and internal growth contributing to the increase.
>
> Operating income increased to $11,402,000, representing an increase of 30.0% versus the
> three months ended June 30, 2006. Growth in operating income was attributed to the
> continued strength SunOpta Grains and Foods Group which demonstrated improved
> throughput and efficiencies. Improved operating income was also partially attributed to
> the strong increases in the SunOpta Distribution Group. For the quarter every operating
> group in the Food Group increased operating income versus the prior year. These gains
> were offset by decreased volume within the Opta Minerals group. Further details on
> revenue and operating income are provided below by operating group.
>
> Interest expense increased by 3.9% to $1,817,000 for the three months ended June 30,
> 2007 due to increased average long term debt and operating lines of approximately
> $22,000,000. The increase in debt is primarily related to acquisitions completed and
> additional working capital to fund internal growth. The average interest rate for the
> quarter was approximately 6.6%. The Company's long term debt to equity ratio is
> 0.31:1:00, below the Company's long term target. Bank indebtedness is approximately
> 23.5% of accounts receivable and inventory, which it finances.
>
> Other expense for the three months ending June 30, 2007 of $217,000 includes certain
> restructuring costs incurred during the quarter mainly relating to the consolidation of
> warehouses within the SunOpta Distribution Group and settlement of a legal claim.

38.    In addition to inaccurately reporting SunOpta's 2007 Q2 financial results, the Financial

Statements Q2 also provided statements by SunOpta related to its Accounting

Presentation, that stated, in part, the following:

> The interim condensed consolidated financial statements of SunOpta Inc. (the Company)
> have been prepared in accordance with the instructions to Form 10-Q and Rule 10-01 of
> Regulation S-X and in accordance with accounting principles generally accepted in the
> United States. Accordingly, these financial statements do not include all of the

disclosures required by generally accepted accounting principles for annual financial statements. In the opinion of management, all adjustments considered necessary for fair presentation have been included and all such adjustments are of a normal, recurring nature. Operating results for the six months ended June 30, 2007 are not necessarily indicative of the results that may be expected for the full year ending December 31, 2007. For further information, see the Company's consolidated financial statements, and notes thereto, included in the Annual Report on Form 10K for the year ended December 31, 2006.

The interim condensed consolidated financial statements include the accounts of the Company and its subsidiaries, and have been prepared on a basis consistent with the financial statements for the year ended December 31, 2006. All significant intercompany accounts and transactions have been eliminated on consolidation.

39.   The foregoing statements were materially false and/or materially misleading when made, inasmuch as the financial results contained within the Financial Statements Q2 and the MD&A Q2 had not been compiled in accordance with GAAP and did not fairly present the performance and financial positions of SunOpta for 2007 Q2 or as at June 30, 2007.

40.   The MD&A Q2 further stated, under the heading "Controls and Procedures", that:

Under the supervision and with the participation of management, the Chief Executive Officer and Chief Financial Officer of the Company have evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures as of June 30, 2007, and, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that these controls and procedures are effective.

On August 7, 2007, the price of SunOpta's shares closed at C$12.92.  On August 9, 2007, as a result of the foregoing disclosures, SunOpta's shares strengthened on extraordinarily heavy volume over two trading days to C$14.72, an increase of approximately 14% from the August 7, 2007 closing price.

41.   The foregoing statement was materially false and/or materially misleading when made, inasmuch as SunOpta's disclosure controls and procedures were not effective as at June 30, 2007.

42.    Bromley and Dietrich each authorized, permitted, and/or acquiesced in the issuance and

publication of the Financial Statements Q2 and MD&A Q2.

43.    On August 7, 2007, the price of SunOpta's shares closed at C$12.92.  On August 9, 2007,

as a result of the foregoing disclosures, SunOpta's shares strengthened on extraordinarily

heavy volume over two trading days to C$14.72, an increase of approximately 14% from

the August 7, 2007 closing price.

*Form 52-109F2 – Certification of Interim Filings*

44.    On August 9, 2007, contemporaneously with the issuance of the Financial Statements Q2

and the MD&A Q2, SunOpta issued and filed a Form 52-109F2 signed by Bromley and

Dietrich.  Bromley and Dietrich certified, in part, that:

> (2) Based on my knowledge, this quarterly report does not contain any untrue statement
> of a material fact or omit to state a material fact necessary in order to make the statements
> made, in light of the circumstances under which such statements were made, not
> misleading with respect to the period covered by this quarterly report;
>
> (3) Based on my knowledge, the financial statements, and other financial information
> included in this quarterly report, fairly present in all material respects the financial
> condition, results of operations and cash flows of the registrant as of, and for, the periods
> presented in this quarterly report;
>
> (4) The registrant's other certifying officer and I are responsible for establishing and
> maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-
> 15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange
> Act Rules 13a-15(f) and 15d-15(f) for the registrant and we have:
>
> a.Designed such disclosure controls and procedures or caused such disclosure controls
> and procedures to be designed under our supervision, to ensure that material information
> relating to the registrant including its consolidated subsidiaries, is made known to us by
> others within those entities, particularly during the period in which this quarterly report is
> being prepared;
>
> b. Designed such internal control over financial reporting, or caused such internal control
> over financial reporting to be designed under our supervision, to provide reasonable
> assurance regarding the reliability of financial reporting and the preparation of financial
> statements for external purposes in accordance with generally accepted accounting
> principles;
>
> [...]

- 22 -

45.    The Financial Statements Q2, MD&A Q2, August 8, 2007 press release and the Form 52-

109F2 for 2007 Q2 contained the Misrepresentation, which was false and materially

misleading when made.

*THE NOVEMBER 6, 2007 PRESS RELEASE*

46.    After the close of trading on November 6, 2007, SunOpta issued, and later filed with

SEDAR and EDGAR ~~on November 7, 2007~~, a press release announcing its 2007 Q3

results entitled "SunOpta Announces Record Third Quarter Results Revenues Increase

41.4%, Net Earnings Increase 234.4%."  The aforesaid press release stated among other

things the following:

> SunOpta Inc. (SunOpta or the Company) (Nasdaq:STKL) (TSX:SOY) today announced
> record results for the third quarter ended September 30, 2007. All amounts are expressed
> in U.S. dollars.
>
> The Company achieved record revenues for the three months ended September 30, 2007,
> realizing its 40th consecutive quarter of increased revenue growth versus the same
> quarter in the previous year. Revenues in the quarter increased by 41.4% to $205,666,000
> as compared to $145,463,000 in the third quarter of 2006, led by a 45.2% increase in
> revenues within the Company's vertically integrated natural and organic food operations.
> The Company's revenue growth in the quarter reflects an internal growth rate of 21.6%
> on a consolidated basis and includes internal growth of 24.8% within the SunOpta Food
> Group.
>
> Operating income(1) for the quarter increased 154.4% to $9,025,000 as compared to
> $3,547,000 in 2006, driven by increases in segment operating income within the SunOpta
> Food Group and led by the SunOpta Grains and Foods Group and the SunOpta
> Distribution Group. Net earnings for the quarter increased 234.4% to $5,096,000 or $0.08
> per diluted common share as compared to $1,524,000 or $0.03 per diluted common share
> for the same period in the prior year. These results were realized despite significant costs
> and investment spending within the Company's healthy fruit snack business and SunOpta
> BioProcess Inc., and the unfavorable impact of the rising Canadian dollar on Canadian
> based overhead costs.
>
> For the nine months ended September 30, 2007, the Company has achieved record
> revenues of $597,083,000 versus $434,520,000 in the same period of the prior year, an
> increase of 37.4%. Net earnings for the same period increased 76.8% to $15,696,000 or
> $0.25 per diluted common share as compared to $8,879,000 or $0.15 per diluted common
> share for the same period in 2006.
>
> In the third quarter, the SunOpta Food Group reported increased revenues of
> $184,402,000 as compared to $127,003,000 in the third quarter of 2006, a 45.2%
> increase. Segment operating income increased to $8,480,000 versus $2,625,000 in 2006,
> an increase of 223.1%. This increase was realized despite additional corporate cost
> allocations of $1,657,000 versus the prior year. The increase in segment operating

income reflects improved results in the SunOpta Grains and Foods Group due to strong sales of non-GMO and organic grains and grain based ingredients, increased sales of aseptic and extended shelf life packaged beverage products and is reflective of the significant turnaround that has been realized within the Group's sunflower operations. The SunOpta Ingredients Group realized improved segment operating income due to higher volumes of oat and soy fiber and dairy based ingredients plus the beneficial impact of process improvement and cost rationalization initiatives within the Group's processing operations. The SunOpta Distribution Group realized strong improvement in segment operating income due to continued growth in the natural and organic grocery sector combined with ongoing margin improvement initiatives. These increases were partially offset by a decline in Fruit Group segment operating income as the Group continued to invest in operational improvements and expanded capacity within its healthy fruit snack operations. These investments will significantly increase capacity and address ongoing processing inefficiencies which have significantly impacted this business during 2007. The healthy fruit snack business expects to realize improved results in the fourth quarter and a $2 million profit turnaround in 2008.

[...]

The Company remains well positioned for future growth with working capital of $154,778,000 and total assets of $571,603,000. Capital additions in the quarter were $9,562,000 including approximately $1,500,000 for the acquisition of a soymilk manufacturing facility during the quarter, as compared to $2,143,000 for the same period in the prior year. The long-term debt to equity ratio at September 30, 2007 was 0.35:1:00, providing the Company financial resources to invest in internal growth, capital projects and execute on its acquisition program. Book equity per outstanding common share has grown to $4.11 from $3.94 at June 30, 2007.

47.     In addition to the foregoing, the November 6, 2007 press release also quoted Bromley as stating:

We are quite pleased with our third quarter results, driven by solid internal growth of over 20% in the quarter. We continue to see strong growth prospects within each of our operating segments and are positioning the Company to realize these opportunities. Last year we stated that our sunflower business would see a turnaround of $4,000,000 year over year and we are pleased to report that these results have actually increased by over $5,000,000 after just nine months. We expect that the significant investments being made within our healthy fruit snack business and SunOpta BioProcess Inc., which have impacted the third quarter operating results, are a wise investment for the long-term and will provide excellent returns. Based on our results to date, we are pleased to reconfirm our revenue guidance of $775,000,000 to $800,000,000 for fiscal 2007 as well as confirm our net earnings guidance in the range of $0.35 to $0.40 per share, albeit at the lower end of the range, after absorbing the previously mentioned investment spending in our fruit snack operations and SunOpta BioProcess Inc.

48.     These statements were materially false and/or materially misleading when made, inasmuch as the financial results contained within them had not been compiled in accordance with GAAP and did not fairly present the performance and financial positions of SunOpta for 2007 Q3 or as at September 30, 2007.

Regulation S-X and in accordance with accounting principles generally accepted in the United States. Accordingly, these financial statements do not include all of the disclosures required by generally accepted accounting principles for annual financial statements. In the opinion of management, all adjustments considered necessary for fair presentation have been included and all such adjustments are of a normal, recurring nature. Operating results for the nine months ended September 30, 2007 are not necessarily indicative of the results that may be expected for the full year ending December 31, 2007. For further information, see the Company's consolidated financial statements and notes thereto, included in the Annual Report on Form 10K for the year ended December 31, 2006.

The interim condensed consolidated financial statements include the accounts of the Company and its subsidiaries, and have been prepared on a basis consistent with the financial statements for the year ended December 31, 2006. All significant intercompany accounts and transactions have been eliminated on consolidation. As a result of Opta Minerals issuing one million shares in the quarter, SunOpta's ownership declined from 70.6% to approximately 66.6%.

52.     The foregoing statements were materially false and/or materially misleading when made, inasmuch as the financial results contained within the Financial Statements Q3 and the MD&A Q3 had not been compiled in accordance with GAAP and did not fairly present the performance and financial positions of SunOpta for 2007 Q3 or as at September 30, 2007.

53.     The MD&A Q3 further stated, under the heading "Controls and Procedures", that:

Under the supervision and with the participation of management, the Chief Executive Officer and Chief Financial Officer of the Company have evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures as of September 30, 2007, and, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that these controls and procedures are effective.

54.     The foregoing statement was materially false and/or materially misleading when made, inasmuch as SunOpta's disclosure controls and procedures were not effective as at September 30, 2007.

55.     Bromley and Dietrich each authorized, permitted and/or acquiesced in the issuance and publication of the Financial Statements Q3 and MD&A Q3.

*Form 52-109F2 – Certification of Interim Filings*

56.     On November 15, 2007, contemporaneously with the issuance of the Financial

        Statements Q3 and the MD&A Q3, SunOpta issued and filed a Form 52-109F2 that was

        signed by Bromley and Dietrich.  Bromley and Dietrich certified, in part, that:

> (2) Based on my knowledge, this quarterly report does not contain any untrue statement
> of a material fact or omit to state a material fact necessary in order to make the statements
> made, in light of the circumstances under which such statements were made, not
> misleading with respect to the period covered by this quarterly report;
>
> (3) Based on my knowledge, the financial statements, and other financial information
> included in this quarterly report, fairly present in all material respects the financial
> condition, results of operations and cash flows of the registrant as of, and for, the periods
> presented in this quarterly report;
>
> (4) The registrant's other certifying officer and I are responsible for establishing and
> maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-
> 15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange
> Act Rules 13a -15(f) and 15d -15(f) for the registrant and we have:
>
> a. Designed such disclosure controls and procedures or caused such disclosure controls
> and procedures to be designed under our supervision, to ensure that material information
> relating to the registrant including its consolidated subsidiaries, is made known to us by
> others within those entities, particularly during the period in which this quarterly report is
> being prepared;
>
> b. Designed such internal control over financial reporting, or caused such internal control
> over financial reporting to be designed under our supervision, to provide reasonable
> assurance regarding the reliability of financial reporting and the preparation of financial
> statements for external purposes in accordance with generally accepted accounting
> principles;
>
> [...]

57.     The Financial Statements Q3, MD&A Q3, November 6, 2007 press release and the Forms

        52-109F2 contained the Misrepresentation, which was false and materially misleading

        when made.

58.     The defendants' certifications and earnings statements and figures contained in, among

        other documents the MD&A Q1, MD&A Q2, MD&A Q3, the Financial Statements for

        Q1; Q2 and Q3, and the press releases dated May 8, 2007, August 8, 2007 and November

        6, 2007, were false and/or materially misleading when made.  The Defendants had

materially overstated the Company's profitability by failing to properly account for the Company's results of operations. The Defendants lacked any reasonable basis to claim that SunOpta was operating according to plan, or that SunOpta could achieve guidance sponsored and/or endorsed by Defendants.

*THE DECEMBER, 2007 REGISTRATION STATEMENT*

58A.    On December 3, 2007 SunOpta filed with EDGAR a Registration Statement to permit the sale to the public of the SunOpta shares owned or controlled by Bronfman.

58B.    The Registration Statement stated, among other things, that:

    (a)    SunOpta's Financial Statements Q1, Q2, and Q3 were incorporated therein by reference;

    (b)    SunOpta would not receive any of the proceeds of the sale of the shares; and

    (c)    The maximum price anticipated for the sale of the shares was USD$13.255.

58C.    The Registration Statement therefore incorporated the Misrepresentation, which was false and misleading when made.

58D.    As a result of the making of the Misrepresentation, Bronfman sold his shares in SunOpta at a substantially higher price than he would have been able to sell them had the Misrepresentation not been made, or had it been corrected prior to the issuance of the Registration Statement. As such, Bronfman profited directly from the making of the Misrepresentation.

and equipment provided to a customer under the terms of an existing equipment supply contract within the SunOpta BioProcess Group.

61A.   SunOpta's senior management and certain employees learned of the above issues by at least January 15, 2008.  On January 14, 2008, the price of SunOpta's shares closed at C$12.05 on the TSX and USD$11.84 on the Nasdaq.  Over the ensuing 8  trading days, during which period SunOpta and certain of its officers, directors, and advisors including Bromley, Dietrich, and others unknown to the Plaintiff, knew of SunOpta's pending correction of the Misrepresentation, SunOpta's share price dropped approximately 20% on unusually heavy trading volume.

61B.   During this period, SunOpta made no public disclosures concerning its business or affairs, and there were no third party disclosures which ought reasonably to have impacted trading in SunOpta's shares in this manner.  Instead, this decline was the result of trading by persons with knowledge of SunOpta's pending Corrective Release, the specific identities of whom are unknown to the Plaintiff.  Such trading was based on the information contained in the Corrective Release, which information was not publicly available during this period, and which information was knowingly or negligently disclosed selectively, and in violation of Ontario and United States securities laws, by one or more of the Defendants, or by persons acting at the direction of one or more of the Defendants.

61C.   ~~The decline of the price in SunOpta's shares during this period is attributable to the correction of the Misrepresentation.~~

- 30 -

62.    ~~On January 24, 2008, the price of SunOpta's shares closed at C$9.64~~ **on the TSX and at USD$9.65 on the Nasdaq**.  ~~On January 25, 2008, as a result of the foregoing disclosures, SunOpta's shares plummeted on extraordinarily heavy volume to C$6.00~~ **on the TSX and to USD$6.05 on the Nasdaq**, ~~a decrease of approximately 38% from the prior day's closing price.~~

## ~~POST-CLASS PERIOD DISCLOSURES~~

~~62A.~~  On January 25, 2008, SunOpta convened a conference call for investors and market analysts during which it provided further information on the Corrective Release, and addressed questions from members of the public.  In the course of that conference call, Bromley and Dietrich stated that:

(a)    These issues had arisen in the course of SunOpta's implementation of an Oracle operating platform, which had turned out to be more difficult than anticipated;

(b)    SunOpta's detailed year-end testing and analytical procedures combined with the impact of untimely decisions regarding customer pricing, increased commodity and input costs and a shortfall in expected sales in the late fourth quarter of low-end strawberry by-products for the industrial market led the Company to conclude the write-down was necessary, as certain inventories appeared overvalued and required writing down to net realizable value;

(c)    The estimated write-down was preliminary, but that the Company was in the midst of finalizing its analysis;

(d)    In response to these issues, the Company had:

(i)    assigned additional corporate finance resources to support the analysis,

- 31 -

    (ii)    through its Audit Committee, engaged an independent third party to commence a full review of the berry operations,

    (iii)    restructured and supplemented the organizational structure within the Fruit Group to ensure proper focus and support for each of the key business units and proper focus on this issue,

    (iv)    developed a detailed operational and business turnaround plan within the berry business to address the underlying issues that may have led to the problems uncovered;

    (e)    It appeared that certain products had become overvalued as the year went along because pricing dropped off in the market and the cost of those products was high;

    (f)    That the issue had come to the attention of Dietrich and Bromley by January 18, 2008;

    (g)    The result of the problem identified was that SunOpta had been reporting gross margins that were higher than those actually being realized; and

    (h)    The write-down was inexcusable.

**61D.**    The decline of the price in SunOpta's shares during this period is attributable to the correction of the Misrepresentation.

62.    On January 24, 2008, the price of SunOpta's shares closed at C\$9.64 on the TSX and at USD\$9.65 on the Nasdaq.  On January 25, 2008, as a result of the foregoing disclosures, SunOpta's shares plummeted on extraordinarily heavy volume to C\$6.00 on the TSX and to USD\$6.05 on the Nasdaq, a decrease of approximately 38% from the prior day's closing price.

- 32 -

**62A.   Over the next two trading days, SunOpta's common stock continued to decline, dropping another 10% on heavy trading volume, as the market digested the Defendants' January 25, 2008 statements, and the inflation, which caused real economic loss to investors who had purchased SunOpta common stock during the Class Period, was removed from the price of SunOpta common stock.**

## POST-CLASS PERIOD DISCLOSURES

62B    On March 6, 2008, SunOpta issued a press release titled "SunOpta Provides Update on Previously Announced Internal Review Related to 2007 Earnings Results". The March 6 press release stated, among other things, that:

> As previously disclosed, as part of the Company's year end close procedure within the SunOpta Fruit Group's berry operations, management determined that inventories were overstated and thus required a write-down estimated in the range of $9-11 million. Upon becoming aware of this matter, the Company identified and voluntarily initiated a wide range of specific actions to understand and address potential root causes and ensure corrective actions are implemented in a timely manner. At this time, the Company reported that it is making good progress and is satisfied that the actions undertaken will result in improved processes and address the root causes that led to this write-down.

> The Company further reported that it is progressing with its 2007 year end analysis and related investigative procedures throughout the Company's berry operations. In addition, the Company's Audit Committee has initiated and commenced an investigation into processes within the Company's berry operations and has retained independent legal counsel and accountants to assist with this matter. The Company also announced it intends to delay the filing of its Annual Report on Form 10-K for the fiscal year ended December 31, 2007 until it has completed the audit, the restatement of previous quarters, and the Audit Committee has completed its investigation. The Company intends to conclude this process as quickly as possible and file the Annual Report as soon as practicable.

> The Company has voluntarily taken steps to prevent all insiders from trading in the securities of the Company and has also applied for and received from the Ontario Securities Commission a management cease trade order in accordance with OSC Policy 57-603. Under the terms of this order, specified directors, officers and other insiders are prohibited from trading in securities of the Company until the restatement of its financial statements and the related securities filings have been filed with the relevant securities regulatory authorities. Pending the filing of the restated financial statements, the Company intents to satisfy the alternative information guidelines set forth in OSC Policy 57-603 and Canadian Securities Administrators' Staff Notice 57-301 which contemplate that the Company provide bi-weekly updates on its affairs until

such time as the Company is current with its filing obligations under Canadian securities laws.

62C.   On March 20, 2008, SunOpta issued a press release entitled "SunOpta Provides its Bi-Weekly Update On Previously Announced Internal Review Related to 2007 Earnings Results".   The March 20, 2008 press release stated, among other things, that:

> The Company reported that it is continuing to make progress with its 2007 year end analysis and related investigative procedures throughout the Company's berry operations and that the investigation being conducted by the Company's Audit Committee, with the assistance from independent counsel and accountants, was progressing.   The Company further confirmed it continues to assess and implement a series of actions (to address the root causes of the issues that led to the write-downs) which is expected to result in improved business processes within the operating unit.

62D.   On April 3, 2008, SunOpta issued a press release titled "SunOpta Provides Update on Internal Review Related to 2007 Earnings Results".   The April 3, 2008 press release stated, among other things, that:

> The Company reported that both its 2007 year end analysis and related investigative procedures within the Company's berry operations, as well as the investigation being conducted by the Company's Audit Committee, with assistance from independent counsel and accountants, continued to progress. The Company further confirmed continued progress in the assessment and implementation of a series of actions within the berry operations required to address the root causes of issues identified to date that may have led to the write-down, and which are expected to result in improved business processes within the operating unit.

62E.   On April 4, 2008, SunOpta issued a press release titled "SunOpta Receives Notice from NASDAQ due to Late Filing of Form 10-K".   The April 4 press release stated, among other things, that:

> SunOpta Inc. [...] today announced that as expected it has received a written Staff Determination notice from The Nasdaq Stock Market ("Nasdaq") dated April 2, 2008, advising that the Company is not in compliance with the Nasdaq's Marketplace Rule 4310(c)(14) as a result of delays in the filing of its Annual Report on Form 10-K for the fiscal year ended December 31, 2007.
>
> As previously announced, due to certain errors in the costing of inventory and the reconciliation of third party inventories in the Company's berry operations, management has determined that previously issued interim financial statements included in the Company's 2007 quarterly reports should not be relied upon and

a restatement of these results is required. In hand with this determination, the Company's Audit Committee has commenced an investigation into the accounting issues within the Company's berry operations and has retained independent legal counsel and accountants to assist with this matter. As a result, the Company has delayed the filing of its 2007 Form 10-K until the Company has completed the restatement of previous quarters, the Audit Committee has completed its independent investigation, and the 2007 financial statement audit is completed. The Company is working to complete this process as quickly as possible and will file the 2007 10-K as soon as practicable.

As a result of this filing delay, the Company's securities become subject to delisting from The Nasdaq Global Market at the opening of business on April 11, 2008 unless the Company appeals the Staff Determination. The Company intends to appeal the notice and will request a hearing before the Nasdaq Listing Qualifications Panel to review the Staff Determination. Until a decision is made by the Panel, the Company's common stock will remain listed on The Nasdaq Global Market. However, there can be no assurance that the Panel will grant the Company's request for continued listing.

62F.    On April 17, 2008, SunOpta issued a press release titled "SunOpta Provides Ongoing Update on Activities Related to 2007 Earnings Results". The April 17, 2008 press release stated, among other things, that:

> The Company reported continued progress with both its 2007 year end analysis and related investigative procedures within the Company's berry operations, as well as the investigation being conduced by the Company's Audit Committee, with assistance from independent counsel and accountants, continued to progress (sic). The Company further confirmed continued progress in the assessment and implementation of a series of actions within the berry operations required to address the root causes of issues identified to date that may have led to the write-down, and which are expected to result in improved business processes within the operating unit.

62G.    On May 1, 2008, SunOpta issued a press release titled "SunOpta Provides Ongoing Update on Activities Related to 2007 Earnings Results". The May 1, 2008 press release stated, among other things, that:

> As previously detailed, a notice was received from the Nasdaq Stock Market on April 2, 2008 advising that the Company was not in compliance with the Nasdaq Marketplace Rules as a result of the delay in the filing of its Annual Report. The Company has appealed this notice and will meet with the Nasdaq Listing Qualification Panel on May 8, 2008 to discuss the steps the Company is taking to remedy the delay and have the panel render a decision regarding the continued listing of the shares.

> The Company reported that it was maintaining steady progress with both its 2007 year end analysis and related investigative procedures, as well as the investigation being conducted by the Company's Audit Committee, with assistance from independent counsel and accountants. The Company further

> confirmed its ongoing and steady progress in the assessment and implementation
> of a series of actions within the berry operations required to address the root
> causes of issues identified to date that may have led to the write-down, and
> which are expected to result in improved business processes within the operating
> unit.

62H.   On May 15, 2008, SunOpta issued a press release titled "SunOpta Provides Update on

Activities Related to 2007 Earnings Results".   The May 15, 2008 press release stated,

among other things, that:

> As previously detailed, a notice was received from The Nasdaq Stock Market in
> April 2008 advising that the Company was not in compliance with Nasdaq
> Marketplace rules as a result of the delay in the filing of its Annual Report.  The
> Company Appealed this notice and met with the Nasdaq Listing Qualification
> Panel on May 8, 2008 to discuss the steps the Company was taking to remedy
> the delay.  At this hearing, the Panel requested that the Company provide a
> further update in thirty days.  At that time, the Panel will consider the
> Company's continued listing of the shares.

> The Company reported that it continues to make progress with its 2007 year end
> analysis and related investigative procedures, the implementation of a series of
> actions within the berry operations designed to address the root causes of issues
> identified, and the independent investigation being conducted by the Company's
> Audit Committee.  The Company also reported that it has a filed a Form 12b-25
> with the U.S. Securities and Exchange Commission related to the delay in the
> filing of its quarterly report on form 10-Q for the quarter ended March 31, 2008.
> The filing of its first quarter 2008 10-Q will follow the filing of the amended
> 2007 quarterly statements and the Annual Report 10-K for the year ended
> December 31, 2007.

62I.   On May 23, 2008, SunOpta issued a press release titled "SunOpta Receives Additional

Notice from Nasdaq".  The May 23, 2008 press release stated, among other things, that:

> SunOpta Inc. today announced that as expected it has received a written Staff
> Determination notice from The Nasdaq Stock Market ("Nasdaq") dated May 20,
> 2008 stating that the Company is not in compliance with Nasdaq's Marketplace
> Rule 431(c)(14) as a result of delaying the filing of its Quarterly Report on Form
> 10-Q for the fiscal quarter ended March 31, 2008.  As previously announced, the
> Company is delaying the filing of its form 10-Q until it has completed the
> restatement of 2007 quarterly financial statements, the Audit Committee has
> completed its investigation and the Company has filed its Annual Report on
> Form 10-K for the fiscal year ended December 31, 2007.

> The Company received a similar letter from Nasdaq in April 2008 relating to the
> filing of its form 10-K for the fiscal year ended December 31, 2007.  In response
> to the April 2008 letter, the Company requested and was granted a hearing
> before the Nasdaq Listing Qualification Panel (the "Panel") which took place on
> May 8, 2008.  At the hearing, the Panel requested that the Company provide a
> further update in thirty days.  Nasdaq has requested and the Company intends to
> present its views with respect to this additional notice to the Panel in writing no

- 36 -

later than May 27, 2008 detailing that the reasons for the delay in the filing of its form 10-Q are directly related to the delay in the filing of its Form 10-K. As previously disclosed, the listing of the Company's stock continues to remain at the discretion of the Panel.

62J.    On May 29, 2008, SunOpta issued a press release titled "SunOpta Provides Update on Activities Related to 2007 Earnings Results and Preliminary Estimates for 2008".    The May 29, 2008 press release stated, among other things, that:

> The Company reported that it continues to make progress with its 2007 year end analysis and related investigative procedures, the implementation of a series of actions within the Berry Operations designed to address the root causes of issues identified, and the independent investigation being conducted by the Company's Audit Committee. The Company is targeting to file its 2007 year end statements and its first quarter 2008 results by the end of June 2008 and mid-July 2008 respectively, however, no later than July 31, 2008 for both.

> The Company also reported that it now expects net earnings for 2007 to be in the range of $0.00 to $0.02 per outstanding common share after accounting for incremental professional fees for additional audit and verification procedures related to fiscal 2007, increased frozen fruit inventory allowances, impaired goodwill related to certain components of the SunOpta Fruit Group Berry Operations plus other adjustments based upon additional year end review and analysis.

62K.    On June 12, 2008, SunOpta issued a press release titled "SunOpta Provides Update on Activities Related to 2007 Earnings Results and Preliminary Estimates for 2008".    The June 12, 2008 press release stated, among other things, that:

> The Company reported that it continues to make steady progress with its 2007 year end analysis and related investigative procedures, the implementation of a series of actions within the Berry Operations designed to address the root causes of issues identified, and the independent investigation being conducted by the Company's Audit Committee. As previously disclosed, the Company continues to target the filing of its 2007 year end statements and its first quarter 2008 results by the end of June 2008 and mid-July 2008 respectively, however, both filings shall occur no later than July 31, 2008.

62L.    On June 26, 2008, SunOpta issued a press release titled "SunOpta Provides Update on Activities Related to 2007 Earnings Results and Preliminary Estimates for 2008".    The June 26, 2008 press release stated, among other things, that:

> The Company reported that it is finalizing its 2007 year end analysis and related procedures and has implemented a series of actions within the Berry Operations

designed to address the root causes of the issues identified. In addition, the Audit Committee investigation is now substantially complete. As part of the Audit Committee's investigation, the Audit Committee has made certain recommendations to the Board of Directors of the Company including changes to a number of internal processes and procedures and certain management positions. In this regard, Steve Bromley, CEO and John Dietrich, CFO, will be transitioning from their current positions by no later than the end of the year, providing the Company with adequate time to provide continuing management and find suitable replacements. Steve Bromley will continue to serve on the Board of Directors until his Term Ends at the Annual Meeting in 2009, and he will not be re-nominated to the Board at that time.

Based on final steps to be completed in the year end procedures, the Company is now targeting to file its 2007 year end statements and its first quarter 2008 results, no later than July 31st, 2008 for both.

62M.   On June 26, 2008, the closing price for SunOpta's shares on the TSX was C$6.58. On the Nasdaq, it closed at USD$6.48. On June 27, 2008, after SunOpta announced the termination of Bromley and Dietrich, SunOpta's shares closed at C$5.22 on the TSX and USD$5.17 on the Nasdaq, a decline of more than 20%.

62N.   The June 26, 2008 press release was further corrective of the Misrepresentation, and resulted in additional damages for Subclass Members.

62O.   On July 21, 2008 SunOpta issued a press release titled "SunOpta Announces 2007 Year End Financial Results and Also Provides Restated 2007 Quarterly Results". In the July 21, 2008 press release, SunOpta announced that:

(a)   It had 2007 revenues of USD$804,494,000, compared to USD$598,026,000 in 2006;

(b)   SunOpta Food Group revenues were USD$727,290,000 compared to USD$530,453,000 in 2006;

(c)   Earnings for the year were USD$407,000, or USD$0.01 per common share, compared to USD$10,959,000 or $0.19 per diluted common share in 2006;

- 38 -

(d)     Segment operating income for 2007 was $5,562,000;

(e)     Segment operating income in the SunOpta Food Group decreased $10,659,000,
driven by a reduction of $24,083,000 in the SunOpta Fruit Group, that resulted
from higher inventory, commodity, storage and processing costs;

(f)     SunOpta had restated financial results for 2007 Q1, 2007 Q2, and 2007 Q3;

(g)     Earnings per share for 2007 Q1 were amended to USD$0.02 per diluted common
share, compared to the previously announced USD$0.06 per share;

(h)     Earnings per share for 2007 Q2 were amended to USD$0.05 per share, compared
to the previously announced  USD$0.11 per share; and

(i)     Earnings per share for 2007 Q3 were amended to USD$0.05 per diluted common
share versus the previously reported $0.08 per diluted common share.

62P.    After the close of trading on the TSX and NASDAQ on July 21, 2008, SunOpta released
its annual audited financial statements for 2007 and MD&A for 2007, compiled in its
Annual Report on Form 10-K.

62Q.    In the 2007 Annual Report, SunOpta stated, among other things, that:

> Under the supervision and with the participation of management, including our
> principal executive officer and principal financial officer, we conducted an
> evaluation of our disclosure controls and procedures, as such term is defined in
> Rule 13a-15(e) under the Securities Exchange Act of 1934, as amended (the
> Exchange Act).  Based on this evaluation, our principal executive officer and
> our principal financial officer concluded that, due to the existence of material
> weaknesses described in "Management's Report on Internal Control over
> Financial Reporting," or disclosure controls and procedures were not effective as
> of December 31, 2007.

> *Management's Report on Internal Control over Financial Reporting*

Management is responsible for establishing and maintaining adequate internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act.  Internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with generally accepted account (sic) principles ("GAAP").  Internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that in reasonable detail accurately and fairly reflect our transactions and dispositions of our assets; (2) provide reasonable assurance that our transactions are recorded as necessary to permit preparation of our financial statements in accordance with GAAP, and that receipts and expenditures are being made only in accordance with authorizations of our management and directors; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of our assets that could have a material effect on the financial statements.

[...]

A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis.

Based on our evaluation, management has identified the following weaknesses:

*Control Environment* – As of December 31, 2007 we did not maintain an effective control environment.  A control environment sets the tone of an organization, influences the control consciousness of its people, and is the foundation of all other components of internal control over financial reporting. Specifically, (a) we did not maintain a sufficient complement of qualified accounting personnel within the SunOpta Fruit Group to ensure that the selection, application and implementation of GAAP commensurate with our financial reporting requirements (sic); (b) our financial reporting organizational structure was inadequate to support the size, complexity and activities of our divisions and to perform adequate review of each division's operating results, and (c) our internal audit department was not effective because it did not identify and ensure the remediation of control deficiencies on a timely basis and (d) our whistle blower program did not operate effectively.

These control environment weaknesses contributed to the material weaknesses discussed below.

*Ineffective controls over information technology* – We did not maintain controls over the conversion from legacy systems to new financial systems nor the change in management processes of existing systems.  Specifically, we lacked appropriate management oversight and user training to achieve a successful conversion in the SunOpta Fruit Group.  Further, user processing and reporting needs were not properly assessed, configured or implemented, which resulted in manual adjustments to the information in the new financial system.  These control deficiencies contributed to the inventory costing and valuation material weakness within the SunOpta Fruit Group discussed below.

*Ineffective controls over information* technology – We did not maintain controls over the accuracy of the inventory costing and subsequent valuation of inventory in the SunOpta Fruit Group. Specifically, we did not maintain effective controls over the application of standard costing including assessing standards as well as analyzing overhead, purchase price and production variances. Further, we did

not have effective supervisory and review controls over inventory valuation These control deficiencies in the California Berry Operations of the SunOpta Fruit Group resulted in the restatement of our consolidated financial statements for each of the quarters ended March 31, June 30 and September 30, 2007 and audit adjustments to our 2007 annual consolidated financial statements affecting inventory and cost of goods sold.

*Ineffective controls over inventory held by third parties* – We did not maintain effective controls over the existence, completeness and accuracy with respect to inventory of certain divisions held at third party locations. Specifically, we did not perform accurate reconciliations or investigate differences in reconciliations of inventory between our records and those of the third parties and did not maintain independent controls to verify the existence of inventory held on our behalf at third party locations. The control deficiency in the California Berry Operations of the Fruit Group resulted in the restatement of our consolidated financial statements for each of the quarters ended March 31, June 30 and September 30, 2007 and audit adjustments to our 2007 annual consolidated financial statements affecting inventory and costs of goods sold.

*Ineffective controls over period-end reporting* – We did not maintain effective controls over the period-end process including review of business unit results, appropriate review of documentation supporting manual journal entries, estimates of percentage completion of certain contracts and the tax provision process at the corporate office, including note disclosures. Specifically, the degree of precision over business process reviews of financial results at the head office level and divisional level was not sufficient. In addition our procedures surrounding the verification and analysis of account balances and note disclosures were ineffective. These control deficiencies contributed to the restatement of our consolidated financial statements for each of the quarters ended March 31, June 30, and September 30, 2007 and audit adjustments to our 2007 annual consolidated financial statements affecting primarily inventory and cost of goods sold, revenue, and receivables, accounts payable and accrued liabilities, other assets and certain income tax related balances.

*Ineffective controls over the application of GAAP* – We did not maintain effective controls to ensure that certain financial statement transactions were appropriately accounted for in accordance with GAAP. The financial impact of these control deficiencies has been reflected in the restatement of our consolidated financial statements for the quarter ended September 30, 2007 and audit adjustments to our 2007 annual consolidated financial statements. Adjustments were required relating to revenue recognition, treatment of interest rate swaps at one of our subsidiaries and the application of purchase accounting on the acquisition of Congeladora del Rio, S.A. de C.V. and Global Trading Inc.

[...]

As a result of the material weaknesses described above, we have concluded that, as of December 31, 2007, the Company's internal control over financial reporting was not effective.

62R.    SunOpta's auditors concurred with the view of management expressed in the preceding

paragraph concerning the effectiveness of SunOpta's internal controls as of December 31,

2007, stating:

In our opinion, the Company did not maintain, in all material respects, effective internal control over financial reporting as of December 31, 2007 based on criteria established in *Internal Control – Integrated Framework* issued by the COSO.

62S.   Also on July 21, 2008, SunOpta released its restated Financial Statements and MD&A for 2007 Q1, 2007 Q2 and 2007 Q3.   These restatements constitute admissions that misrepresentations were made in the Financial Statements Q1, Financial Statements Q2, Financial Statements Q3, MD&A Q1, MD&AQ2, and MD&A Q3.

62T.   Among other things, the restated Financial Statements Q1 disclosed that:

(a)   Net earnings in 2007 Q1 were USD$1.055 million, or USD$0.02 per share, as opposed to the USD$3.85 million, or the USD$0.063 per share that SunOpta had originally announced;

(b)   Cost of goods sold for the quarter was USD$152,780,000 as opposed to the USD$148,599,000 that SunOpta had originally announced; and

(c)   Inventories as at March 31, 2007 were valued at USD$128,773,000 as opposed to the USD$132,779,000 that SunOpta had originally announced.

62U.   The explanation provided for the 2007 Q1 restatement was as follows:

On January 24, 2008, the Company announced the discovery of errors related to inventories within the SunOpta Fruit Group's Berry Operations, and that as a result of these errors, the previously issued condensed consolidated financial statements for the three quarters of 2007 would need to be restated.

SunOpta Fruit Group – Berry Operations

To quantify the misstatement included in the Form 10-Q for the period ended March 31, 2008 (the "Original 10-Q"), the Company performed detailed procedures, analysis, and reconciliations to correct for errors in the costing of inventory and the quantities of inventories held as at and for the three month period ended March 31, 2007.   These procedures were conducted by management with the assistance of independent accounting advisors.   Based on this detailed examination, the Company determined that inventories were overstated and that revenue, cost of sales, accounts receivable and accounts

payable previously reported were understated and accordingly, the consolidated financial statements as at and for the period ended March 31, 2007 required adjustment.  The adjustments were required to correct for errors in cut-off of revenues and purchasing, costing of inventories, and reconciliation of inventory quantities held at third party warehouses, and the related income tax effects.

Other Adjustments

The restated condensed consolidated financial statements for the three months ended March 31, 2007 also include other adjustments that, when the condensed consolidated financial statements were originally filed, were considered either immaterial, or were identified during the December 31, 2007 year-end closing process and were determined to relate to the previously filed March 31, 2007 condensed consolidated financial statements.  Other adjustments include a reclassification from intangible assets to goodwill related to a business acquisition that occurred in 2006 as well as an adjustment to additional paid in capital to record a tax benefit related to the exercise of certain stock based awards.

Compared to the previously filed first quarter 2007 financial statements, the impact of all adjustments was a decrease in earnings for the period of [USD]$2,795 [thousand] and a decrease of [USD]$0.04 per basic and diluted share for the three months ended March 31, 2007.

62V.   The restated MD&A Q1 disclosed, among other things, that:

(a)    SunOpta's operating income for 2007 Q1 was USD$3,822,000, as opposed to the USD$7,976,000 that Sunopta had originally announced; and

(b)    Segment operating income for the SunOpta Food Group was USD$3,781,000, as opposed to the USD$7,935,000 that SunOpta had originally announced.

62W.   The restated MD&A Q1 also stated that:

Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we conducted an evaluation of our disclosure controls and procedures, as such term is defined under Rule 13a-15(e) promulgated under the Securities Exchange Act of 1934, as amended (the Exchange Act).   Based on this evaluation, our principal executive officer and our principal financial officer concluded that as a result of the need to restate the condensed consolidated financial statements as at and for the three month period ended March 31, 2007, our disclosure controls and procedures were not effective as of March 31, 2007.  Refer to "Management's Report on Internal Control over Financial Reporting" as contained in Item 9A. Controls and Procedures in the Company's most recently filed Form 10-K for a description of the material weaknesses that have been identified.

62X.   The restated Financial Statements Q2 disclosed, among other things, that:

- 43 -

   (a)   Net earnings in 2007 Q2 were USD$3,405,000 million, or USD$0.05 per share, as opposed to the USD$6,750,000, or the USD$0.11 per share that SunOpta had originally announced;

   (b)   Cost of goods sold for the quarter was USD$170,828,00 as opposed to the USD$167,589,000 that SunOpta had originally announced; and

   (c)   Inventories as at June 30, 2007 were valued at USD$168,661,000 as opposed to the USD$171,626,000 that SunOpta had originally announced.

62Y.   The explanation provided for the restatement was as follows:

On January 24, 2008, the Company announced the discovery of errors related to inventories within the SunOpta Fruit Group's Berry Operations, and that as a result of these errors, the previously issued condensed consolidated financial statements for the three quarters of 2007 would need to be restated.

SunOpta Fruit Group – Berry Operations

To quantify the misstatement included in the Form 10-Q for the period ended June 30, 2007 (the "Original 10-Q"), the Company performed detailed procedures, analysis, and reconciliations to correct for errors in the costing of inventory and the quantities of inventories held as at and for the three and six month periods ended June 30, 2007. These procedures were conducted by management with the assistance of independent accounting advisors. Based on this detailed examination, the Company determined that revenues, accounts receivable and inventories previously reported were overstated and that cost of sales, and accounts payable previously reported were understated and accordingly, the consolidated financial statements as at and for the period ended June 30, 2007 required adjustment. Adjustments were required to correct for errors in cut-off of revenues and purchasing, costing of inventories, and reconciliation of inventory quantities held at third party warehouses, and the valuation of inventories at the lower of cost or market and the related income tax effects.

Other Adjustments

The restated condensed consolidated financial statements for the three and six months ended June 30, 2007 also include other adjustments that, when the condensed consolidated financial statements were originally filed, were considered either immaterial, or were identified during the December 31, 2007 year-end closing process and were determined to relate to the previously filed quarterly financial statements. Other adjustments include a reclassification from intangible assets to goodwill related to a business acquisition that occurred in 2006, a correction of gross margin recognized on an in-progress project, corrections to the allocation of the purchase price to assets and liabilities of

- 44 -

Congeladora del Rio S.A. de C.V. and Global Trading Inc., adjustments to eliminate intercompany revenue and associated cost of goods sold with no impact on gross profit, an adjustment to additional paid in capital to record a tax benefit related to the exercise of certain stock based awards, and an adjustment to the fair value assigned to the warrants issued in conjunction with the preferred share issuance.

Compared to the previously filed second quarter consolidated financial statements, the impact of all adjustments was a decrease in earnings for the period of [USD]$3,345 [thousand] and a decrease in basic and diluted earnings per share of [USD]$0.06 for the three months ended June 30, 2007. For the six months ended June 30, 2007 the impact of all adjustments was a decrease in earnings for the period of [USD]$6,141 [thousand] and a decrease in basic and diluted earnings per share of [USD]$0.10.

**62Z.**  The restated MD&A Q2 disclosed, among other things, that:

(a)  SunOpta's operating income for 2007 Q2 was USD$6,809,000, as opposed to the USD$11,402,000 that SunOpta had originally announced; and

(b)  Segment operating income for the SunOpta Food Group was USD$7,319,000, as opposed to the USD$11,411,000 that SunOpta had originally announced.

62AA.  The restated MD&A Q2 also stated that:

Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we conducted an evaluation of our disclosure controls and procedures, as such term is defined under Rule 13a-15(e) promulgated under the Securities Exchange Act of 1934, as amended (the Exchange Act). Based on this evaluation, our principal executive officer and our principal financial officer concluded that as a result of the need to restate the condensed consolidated financial statements as at and for the three and six month periods ended June 30, 2007, our disclosure controls and procedures were not effective as of June 30, 2007. Refer to "Management's Report on Internal Control over Financial Reporting" as contained in Item 9A. Controls and Procedures in the Company's most recently filed Form 10-K for a description of the material weaknesses that have been identified.

62BB.  The restated Financial Statements Q3 disclosed, among other things, that:

(c)  Net earnings in 2007 Q3 were USD$3,042,000, or USD$0.05 per share, as opposed to the USD$5,096,000, or the USD$0.08 per share that SunOpta had originally announced;

- 45 -

(d)     Cost of goods sold for the quarter was USD$169,867,000 as opposed to the USD$167,805,000 that SunOpta had originally announced; and

(e)     Inventories as at June 30, 2007 were valued at USD$180,749,000 as opposed to the USD$188,585,000 that SunOpta had originally announced.

62CC.  The explanation provided for the restatement was as follows:

On January 24, 2008, the Company announced the discovery of errors related to inventories within the SunOpta Fruit Group's Berry Operations, and that as a result of these errors, the previously issued condensed consolidated financial statements for the three quarters of 2007 would need to be restated.

SunOpta Fruit Group – Berry Operations

To quantify the misstatement included in the Form 10-Q for the period ended June 30, 2007 (the "Original 10-Q"), the Company performed detailed procedures, analysis, and reconciliations to correct for errors in the costing of inventory and the quantities of inventories held as at and for the three and six month periods ended June 30, 2007.  These procedures were conducted by management with the assistance of independent accounting advisors.  Based on this detailed examination, the Company determined that revenues, accounts receivable and inventories previously reported were overstated and that cost of sales, and accounts payable previously reported were understated and accordingly, the consolidated financial statements as at and for the period ended June 30, 2007 required adjustment.  Adjustments were required to correct for errors in cut-off of revenues and purchasing, costing of inventories, and reconciliation of inventory quantities held at third party warehouses, and the valuation of inventories at the lower of cost  or market and the related income tax effects.

Other Adjustments

The restated condensed consolidated financial statements for the three and six months ended June 30, 2007 also include other adjustments that, when the condensed consolidated financial statements were originally filed, were considered either immaterial, or were identified during the December 31, 2007 year-end closing process and were determined to relate to the previously filed quarterly financial statements.  Other adjustments include a reclassification from intangible assets to goodwill related to a business acquisition that occurred in 2006, a correction of gross margin recognized on an in-progress project, corrections to the allocation of the purchase price to assets and liabilities of Congeladora del Rio S.A. de C.V. and Global Trading Inc., adjustments to eliminate intercompany revenue and associated cost of goods sold with no impact on gross profit, an adjustment to additional paid in capital to record a tax benefit related to the exercise of certain stock based awards, and an adjustment to the fair value assigned to the warrants issued in conjunction with the preferred share issuance.

Compared to the previously filed second quarter consolidated financial statements, the impact of all adjustments was a decrease in earnings for the period of [USD]$3,345 [thousand] and a decrease in basic and diluted earnings per share of [USD]$0.06 for the three months ended June 30, 2007. For the six months ended June 30, 2007 the impact of all adjustments was a decrease in earnings for the period of [USD]$6,141 [thousand] and a decrease in basic and diluted earnings per share of [USD]$0.10.

62DD. The restated MD&A Q3 disclosed, among other things, that:

(f)     SunOpta's operating income for 2007 Q3 was USD$5,762,000, as opposed to the

        USD$9,025,000 that Sunopta had originally announced; and

(g)     Segment operating income for the SunOpta Food Group was USD$5,105,000, as

        opposed to the USD$8,480,000 that SunOpta had originally announced.

62EE.  The restated MD&A Q3 also stated that:

Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we conducted an evaluation of our disclosure controls and procedures, as such term is defined under Rule 13a-15(e) promulgated under the Securities Exchange Act of 1934, as amended (the Exchange Act). Based on this evaluation, our principal executive officer and our principal financial officer concluded that as a result of the need to restate the condensed consolidated financial statements as at and for the three and nine month periods ended September 30, 2007, our disclosure controls and procedures were not effective as of September 30, 2007. Refer to "Management's Report on Internal Control over Financial Reporting" as contained in Item 9A. Controls and Procedures in the Company's most recently filed Form 10-K for a description of the material weaknesses that have been identified.

**NEGLIGENCE**

63.    SunOpta and, by virtue of their position of authority and responsibility within SunOpta,

       each of the Individual Defendants, owed a duty to the Plaintiff and to persons and entities

       similarly situated, at law and under provisions of the *OSA*, to disseminate promptly, or to

       ensure that prompt dissemination of, truthful, complete and accurate statements regarding

       SunOpta's business and affairs, and promptly to correct previously-issued, materially in-

accurate information, so that the price of SunOpta's publicly-traded securities was based on complete, accurate and truthful information.

64.    At all times material to the matters complained of herein, each of the Defendants ought to have known that SunOpta's press releases and quarterly reports and financial statements described herein were materially misleading in the manner aforesaid.   The Defendants were reckless or, at a minimum, grossly negligent in failing to realize that fact and in failing to prevent the Misrepresentation alleged above.   Accordingly, the Defendants have violated their duties to the Plaintiff and to persons or entities similarly situated.

65.    The reasonable standard of care expected in the circumstances required the Defendants to act fairly, reasonably, honestly, candidly and in the best interests of the Plaintiff and the other Class Members.

66.    The Defendants failed to meet the standard of care required for the following reasons, among others:

   (a)    they failed to exercise the degree of care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances as required by law;

   (b)    they authorized statements, announcements, press releases, filings and other public documents containing the Misrepresentation; and

   (c)    they failed to maintain appropriate quality control procedures to ensure that SunOpta's disclosure documents adequately and fairly presented the business and affairs of SunOpta.

## NEGLIGENT AND RECKLESS MISREPRESENTATION

67.    The SunOpta disclosure documents referenced above were prepared, at least in part, for the purpose of attracting investment and with the intention that members of the investing

- 48 -

public would rely upon the documents in making the decision to purchase SunOpta securities.

68.     The SunOpta disclosure documents referenced above contained the Misrepresentation, whether explicitly or implicitly.   The Misrepresentation was materially false and/or materially misleading when made.

69.     The Defendants knew that by making the Misrepresentation, the price of SunOpta's publicly-traded securities would rise and remain at artificially high levels and that investors would rely upon the Misrepresentation in making their decisions to purchase SunOpta shares.

70.     SunOpta made the Misrepresentation by issuing the disclosure documents referenced above.   Bromley and Dietrich made the Misrepresentation by authorizing, permitting and/or acquiescing in the drafting and issuance of those disclosure documents, and/or by signing them.

71.     The Defendants made the Misrepresentation negligently or, alternatively, recklessly, caring not whether it was true or false, intending that the Plaintiff and the other Class Members would rely upon it, which they did to their detriment by purchasing SunOpta securities during the Class Period and holding the securities beyond the Class Period.

72.     The Plaintiff relied upon the Misrepresentation by reading and acting upon disclosure documents containing the Misrepresentation, or alternatively, by reading and acting upon documents that contained information derived from the Misrepresentation.

73.     Further, given the relationship as pleaded between SunOpta's disclosures regarding its financial statements and the price of its publicly-traded securities, the Plaintiff and each

other Class Member relied upon the Misrepresentation by the act of purchasing or acquiring SunOpta securities in the open market.

74.     The Plaintiff and each other Class Member suffered damages and loss, as particularized below, as a result of their reliance on the Misrepresentation in purchasing SunOpta shares.

## **CONSPIRACY**

74A.    During the Class Period, at Brampton, Ontario, Bromley and Dietrich unlawfully, maliciously and lacking *bona fides,* agreed together, the one with the other and with persons unknown, to, among other things, misrepresent to investors the true financial results of SunOpta.

74B.    Bromley's and Dietrich's predominant purposes, concerns and motivation were to:

  (a)    inflate the price of SunOpta's securities;

  (b)    inflate the value of their own holdings in SunOpta shares and stock options; and

  (c)    inflate that portion of their compensation from SunOpta that was dependent in whole or in part upon SunOpta's reported financial results.

74C.    In furtherance of the conspiracy, the following are some, but not all, of the acts carried out or caused to be carried out by Bromley and Dietrich:

  (a)    the value of Sunopta's inventories were overstated;

  (b)    SunOpta's revenue, cost of sales, accounts receivable and accounts payable were understated;

reproduced for inspection by the Class Members, the public, the financial analysts and the financial press through the internet and financial publications.

77.    SunOpta routinely transmitted the documents referred to above to the financial press, financial analysts and certain prospective and actual holders of SunOpta securities.

78.    SunOpta regularly communicated with the public investors and financial analysts via established market communication mechanisms, including through regular disseminations of press releases on newswire services in Canada. The price of SunOpta's publicly-traded securities were directly affected each time SunOpta communicated new material information about SunOpta 's financial results to the public.

79.    SunOpta was the subject of analysts reports that incorporated the quarterly financial information as contained in the disclosure documents referred to above, with the effect that any recommendation in such reports during the Class Period were based, in whole or in part, upon unreliable financial results.

80.    SunOpta 's securities were and are traded on the TSX and the NASDAQ, which are highly efficient and automated markets. The price at which SunOpta 's securities traded on the TSX and NASDAQ incorporated material information about SunOpta 's financial results, including the Misrepresentation, which was disseminated to the public through the documents referred to above and distributed by SunOpta, as well as by other means.

**DAMAGES**

81.    As a result of the conduct of the defendants as pleaded, the Plaintiff and each Class Member suffered loss and damage.

82.    The Plaintiff and other Class Members are also entitled to recover, as damages or costs in accordance with the *CPA*, the costs of administering the plan to distribute the recovery in this action.

## VICARIOUS LIABILITY OF SUNOPTA

83.    SunOpta is vicariously liable for the acts and omissions of the Individual Defendants and of the other SunOpta employees and directors whose conduct is particularized in this statement of claim.

84.    The acts or omissions particularized in and alleged in this statement of claim to have been done by SunOpta were authorized, ordered and done by the defendants and SunOpta's other agents, employees and representatives while engaged in the management, direction, control and transaction of its business affairs and are, therefore, acts and omissions for which SunOpta is vicariously liable.

## PART XXIII.1 OF THE SECURITIES ACT

85.    The Plaintiff intends promptly to deliver a notice of motion seeking, among other things, an order to assert the statutory causes of action particularized in Part XXIII.1 of the *OSA*, and if granted,  leave under s. 138.8(1) of the *OSA* to plead the causes of action set out in s. 138.3 of the *OSA*.

## PUNITIVE DAMAGES

86.    The Plaintiff pleads that the conduct of the defendants was high-handed, outrageous, reckless, wanton, entirely without care, deliberate, callous, disgraceful, wilful and motivated by economic considerations.  Such conduct renders the defendants liable to pay punitive damages.

- 53 -

## REAL AND SUBSTANTIAL CONNECTION WITH ONTARIO

87.     The Plaintiff pleads that this action has a real and substantial connection with Ontario because, among other things:

    (a)     SunOpta carries on business in Ontario;

    (b)     SunOpta's principal executive offices are located in Ontario;

    (c)     SunOpta manufactures products that are distributed and sold in Ontario;

    (d)     SunOpta derives substantial income in Ontario from sales of its products in Ontario;

    (e)     SunOpta is a reporting issuer in Ontario;

    (f)     the shares of SunOpta trade on the TSX, which is located in Toronto, Ontario;

    (g)     the Misrepresentation and the other Misrepresentations alleged herein were disseminated in and from Ontario;

    (h)     the Individual Defendants are resident in Ontario; and

    (i)     a significant proportion of the Class Members reside in Ontario.

## SERVICE OUTSIDE OF ONTARIO

88.     This originating process may be served without court order outside Ontario in that the claim is:

    (a)     in respect of a tort committed in Ontario (rule 17.02(g));

- 54 -

    <u>(b)</u>    in respect of damages sustained in Ontario arising from a tort wherever committed (rule 17.02(h));

    <u>(c)</u>    against a person outside Ontario who is a necessary or proper party to a proceeding properly brought against another person served in Ontario (rule 17.02(o)); and

    <u>(d)</u>    Against a person carrying on business in Ontario (rule 17.02(p)).

## RELEVANT LEGISLATION

89.    The plaintiff pleads and relies on the *CJA, CPA* and the *OSA*, all as amended.

## PLACE OF TRIAL

90.    The plaintiff proposes that this action be tried in the City of London, in the Province of Ontario.

August 28, 2008

**SISKINDS LLP**
Barristers & Solicitors
680 Waterloo St.
P.O. Box 2542
London, ON  N6A 3V8

A. Dimitri Lascaris (LSUC #: 50074A)
Tel:  519.660.7844
Fax: 519.660.7845

Michael G. Robb (LSUC #: 45787G)
Tel:  519.660.7872
Fax: 519.660.7873

Scott Selig (LSUC #: 53598B)
Tel.: 519.660.7824
Fax: 519.660.7825

Lawyers for the Plaintiff

DOCSTOR: 1765430\1

Court File No: 57453CP

ONeil                    v.                    SunOpta, Inc., et al.

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at London

Proceeding under the *Class Proceedings Act, 1992*

---

<u>**AMENDED AMENDED**</u>
**STATEMENT OF CLAIM**

---

**SISKINDS LLP**
Barristers & Solicitors
680 Waterloo Street
P.O. Box 2520
London, ON  N6A 3V8

A. Dimitri Lascaris (LSUC #: 50074A)
Tel: 519.660.7844
Fax: 519.660.7845
Michael G. Robb (LSUC #: 45787G)
Tel: 519.660.7872
Fax: 519.660.7873
Scott Selig (LSUC #: 53598B)
Tel: 519.660.7824
Fax: 519.660.7825

Lawyers for the Plaintiff

DOCSTOR: 1765430\1