UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re SUNOPTA INC. SECURITIES LITIGATION | x<br>:<br>:<br>: | Master File No. 1:08-cv-00933-PAC<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | :<br>:<br>:<br>:<br>:<br>:<br>x | LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.    HISTORY AND BACKGROUND OF THE ACTION ...........................................4

III.    THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED ...................................................4

    A.    Numerosity, Commonality, and Typicality ........................................5

    B.    Adequacy of Representation ...............................................................6

    C.    Predominance of Common Issues and Superiority ..............................6

IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT .................................7

    A.    The Law Favors and Encourages Settlements ....................................7

    B.    The Settlement Is Procedurally Fair ...................................................9

    C.    The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements .................................................10

    D.    The Settlement Satisfies the Second Circuit Criteria for Approval ......................11

        1.    The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement ...........................................11

        2.    The Reaction of the Class to the Settlement ..............................13

        3.    The Stage of the Proceedings and Discovery Completed .........13

        4.    The Risk of Establishing Liability ...........................................15

            a.    Defenses to Standing to Sue Under the 1933 Act .........16

            b.    Defenses to Loss Causation .........................................16

            c.    Defenses to Scienter....................................................17

        5.    The Considerable Risk of Establishing Damages ......................17

        6.    The Risks of Maintaining the Class Action Through Trial ........20

- i -

**Page**

7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.........................................20

8.    The Ability of the Defendants to Withstand a Greater Judgment..............21

V.    THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT ...........................22

VI.    CONCLUSION.............................................................................................................24

514044_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Akerman v. Oryx Commc'ns,*
   810 F.2d 336 (2d Cir. 1987) ........................................................................................... 18

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997) ................................................................................................... 5, 7

*Beecher v. Able,*
   575 F.2d 1010 (2d Cir. 1978) ......................................................................................... 23

*Berger v. Compaq Computer Corp.,*
   257 F.3d 475 (5th Cir. 2001) ......................................................................................... 20

*Carpe v. Aquila, Inc.,*
   No. 02-0388-CV-W-FJG, slip op.
   (W.D. Mo. Mar. 23, 2005) ............................................................................................. 19

*Chatelain v. Prudential-Bache Sec.,*
   805 F. Supp. 209 (S.D.N.Y. 1992) ................................................................................. 20

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995) .............................................................................................. 5

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ......................................................................................... 9, 14

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ................................................................................... *passim*

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336 (2005) ....................................................................................................... 16

*Ernst & Ernst v. Hochfelder,*
   425 U.S. 185 (1976) ....................................................................................................... 15

*Heyer v. New York City Hous. Auth.,*
   No. 80 Civ. 1196 (RWS), 2006 U.S. Dist. LEXIS 25089
   (S.D.N.Y. Apr. 28, 2006) ............................................................................................... 14

*Hicks v. Morgan Stanley & Co.,*
   No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
   (S.D.N.Y. Oct. 24, 2005) ............................................................................................... 12

**Page**

*In re Adams Golf, Inc. Sec. Litig.*,
    381 F.3d 267 (3d Cir. 2004)..............................................................................18

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*,
    818 F.2d 145 (2d Cir. 1987)..............................................................................20

*In re Alloy, Inc., Sec. Litig.*,
    No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129
    (S.D.N.Y. Dec. 2, 2004)......................................................................................9

*In re Am. Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................15, 22

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. MDL 1500, 2006 U.S. Dist. LEXIS 17588
    (S.D.N.Y. Apr. 6, 2006)..................................................................................6, 16

*In re Ashanti Goldfields Sec. Litig.*,
    No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431
    (E.D.N.Y. Nov. 15, 2005)...................................................................................8

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)..........................................................14, 15

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)..............................................................................19

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................11, 14, 23

*In re Holocaust Victim Assets Litig.*,
    413 F.3d 183 (2d Cir. 2001)..............................................................................23

*In re Host Am. Corp. Sec. Litig.*,
    No. 05-CV-1250 (VLB), 2007 WL 3048865
    (D. Conn. Oct. 18, 2007).....................................................................................6

*In re Host Am. Corp. Sec. Litig.*,
    No. 3:05-cv-01250 (VLB), 2008 U.S. Dist. LEXIS 17405
    (D. Conn. Mar. 7, 2008).....................................................................................13

- iv -

**Page**

*In re Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
(S.D.N.Y. Sept. 29, 2003)...................................................................17, 20

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ....................................................................6

*In re Luxottica Group S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ...................................................8, 9, 10, 13

*In re Marsh ERISA Litig.*,
No. 04 Civ. 8157 (CM), 2010 U.S. Dist. LEXIS 8325
(S.D.N.Y. Jan. 29, 2010)..............................................................8, 11, 19, 23

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) ..................................................................7

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423
(S.D.N.Y. Dec. 20, 2007)...........................................................................11

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 46 (S.D.N.Y. 1993) ..................................................................15

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998)..........................................................................8

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.),
*aff'd*, 117 F.3d 721 (2d Cir. 1997) ......................................................... *passim*

*In re Priceline.com, Inc. Sec. Litig.*,
No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 52538
(D. Conn. July 20, 2007)......................................................................9, 22, 23

*In re Salomon Analyst Metromedia Litig.*,
236 F.R.D. 208 (S.D.N.Y. 2006), *vacated on other grounds*,
544 F.3d 474 (2d Cir. 2008)..........................................................................7

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093
(S.D.N.Y. May 1, 2008)........................................................................12, 14, 22

                                                                    **Page**

*In re Veeco Instruments, Inc., Sec. Litig.*,
     235 F.R.D. 220 (S.D.N.Y. 2006) .................................................................5

*In re Veeco Instruments, Inc., Sec. Litig.*,
     No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629
     (S.D.N.Y. Nov. 7, 2007) ................................................. *passim*

*In re Warfarin Sodium Antitrust Litig.*,
     391 F.3d 516 (3d Cir. 2004)........................................................14, 21

*In re Warner Commc'ns Sec. Litig.*,
     618 F. Supp. 735 (S.D.N.Y. 1985),
     *aff'd*, 798 F.2d 35 (2d Cir. 1986) .................................................19

*In re WorldCom, Inc. Sec. Litig.*,
     388 F. Supp. 2d 319 (S.D.N.Y. 2005)...........................................22

*Joel A. v. Giuliani*,
     218 F.3d 132 (2d Cir. 2000)...........................................................7

*Kaufman v. Motorola, Inc.*,
     No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627
     (N.D. Ill. Sept. 21, 2000) ..............................................................19

*Lewis v. Newman*,
     59 F.R.D. 525 (S.D.N.Y. 1973) ....................................................15

*Maley v. Del Global Techs. Corp.*,
     186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................21, 22, 24

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
     65 F.3d 1044 (2d Cir. 1995)...........................................................18

*Milstein v. Huck*,
     600 F. Supp. 254 (E.D.N.Y. 1984) ...............................................11

*Newman v. Stein*,
     464 F.2d 689 (2d Cir. 1972)...............................................8, 9, 20, 21

*Novak v. Kasaks*,
     216 F.3d 300 (2d Cir. 2000)...........................................................16

*Plummer v. Chem. Bank*,
     668 F.2d 654 (2d Cir. 1982)...........................................................14

- vi -

**Page**

*Prasker v. Asia Five Eight LLC,*
No. 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445
(S.D.N.Y. Jan. 6, 2010)........................................................................8, 9, 13, 14

*Strougo v. Bassini,*
258 F. Supp. 2d 254 (S.D.N.Y. 2003).........................................................11, 12

*Taft v. Ackermans,*
No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144
(S.D.N.Y. Jan. 31, 2007).................................................................................8

*Teachers' Ret. Sys. of La. v. A.C.L.N.,*
No. 01-CV-11814 (MP), 2004 WL 1087261
(S.D.N.Y. May 14, 2004).................................................................................14

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.,*
396 F.3d 96 (2d Cir. 2005)...................................................................7, 21, 22

*Weinberger v. Kendrick,*
698 F.2d 61 (2d Cir. 1982)...............................................................................8

*Whalen v. Hibernia Foods PLC,*
No. 04 Civ. 3182, 2005 U.S. Dist. LEXIS 15489
(S.D.N.Y. Aug. 1, 2005) ..................................................................................15

*Wright v. Stern,*
553 F. Supp. 2d 337 (S.D.N.Y. 2008)............................................................7, 8

*Zerkle v. Cleveland-Cliffs Iron Co.,*
52 F.R.D. 151 (S.D.N.Y. 1971) ......................................................................15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77k(e) ..............................................................................................................18
§78u-4(a)(3)(B)(i)..............................................................................................6

Federal Rules of Civil Procedure
Rule 23(a)........................................................................................................5, 7
Rule 23(a)(1)-(3)................................................................................................5
Rule 23(a)(4).....................................................................................................6
Rule 23(b)(3).........................................................................................1, 5, 6, 7
Rule 23(b)(3)(e) ................................................................................................1

**Page**

Rule 23(e)..................................................................................................................7
Rule 23(e)(2)...........................................................................................................10

**SECONDARY AUTHORITIES**

4 Alba Conte, Herbert B. Newberg,
*Newberg on Class Actions* (4th ed. 2002)
    §11.45.................................................................................................................13

Brian Saxton, Svetlana Starykh, *Recent Trends in Shareholder Class Actions:*
*Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements*
*Hit New High* (NERA 2007).....................................................................................21

Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements,*
*2008 Review and Analysis* (Cornerstone Research 2009)............................................21

- viii -

Pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure, lead plaintiffs Western Washington Laborers-Employers Pension Trust and Operating Engineers Construction Industry and Miscellaneous Pension Fund ("Lead Plaintiffs"), by and through their counsel ("Lead Counsel"), respectfully move this Court for an order approving the proposed settlement of the above-captioned class action (the "Action") and approving the proposed Plan of Allocation of settlement proceeds, each of which this Court preliminarily approved by its Order dated February 2, 2010 (the "Preliminary Approval Order").

## I.    PRELIMINARY STATEMENT

Under the terms of the proposed settlement (the "Settlement"), as set forth in the Stipulation and Settlement Agreement dated as of September 23, 2009 (the "Stipulation"), the Defendants have caused to be paid Eleven Million Two Hundred and Fifty Thousand Dollars ($11,250,000) in cash (the "Settlement Amount") into an interest-bearing escrow account on behalf of Class Members, and defendant SunOpta Inc. ("SunOpta" or the "Company") agreed to adopt corporate governance enhancements in the form of amendments to its Audit Committee Charter and the adoption of an Information Technology Conversion Policy, in exchange for the dismissal of all claims brought against the Defendants in this Action and the Canadian Action and a full release of claims.[1]  The "Settlement Fund" (the Settlement Amount plus all interest earned thereon) will be used for the payment of taxes, notice and administrative costs, and for attorneys' fees and expenses.  The remainder after these expenditures, the "Net Settlement Fund," will be distributed to Class Members who are not otherwise excluded and who timely submit valid Proof of Claim and Release forms to the Claims Administrator ("Authorized Claimants").  Each Authorized Claimant shall be allocated a

---

[1]      All capitalized terms not defined herein have the same meanings set forth in the Stipulation.

percentage of the Net Settlement Fund based upon the relationship that each Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, as explained in the Notice of Pendency and Certification of Class Actions, Proposed Settlement and Settlement Approval/Fairness Hearings (the "Notice").

Lead Counsel respectfully submit that this Settlement is an excellent recovery for the Class Members, given the serious obstacles to recovery at trial.  This Settlement was reached by Lead Counsel and counsel in the Canadian Action, with the support of the Lead Plaintiffs, as a result of their creative and aggressive litigation efforts.  When viewed in light of the risks that Defendants could prevail on a motion to dismiss or at summary judgment or at trial, based on their defenses to, among other things, loss causation, scienter, and damages, the Settlement is a substantial result for Class Members.  The Settlement also saves the Class the considerable expense and delay posed by continued litigation, especially here, where much of the documentary evidence is located in two countries and consists of complex technical and accounting documents.  As fully discussed below and in the accompanying Declaration of Samuel H. Rudman in Support of Unopposed Motion for (A) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (B) an Award of Attorneys' Fees and Expenses ("Rudman Decl."), the significant risks involved in taking this Action further in litigation, and possibly on to trial, when measured against the benefit of the Settlement, support approval of this Settlement.

On February 2, 2010, the Court entered its Preliminary Approval Order, which directed that a hearing be held to determine the fairness, reasonableness, and adequacy of the Settlement (the "Settlement Hearing").  Pursuant to the Preliminary Approval Order, the Notice was mailed to over

22,650 potential Class Members commencing on February 16, 2010.[2]  The Summary Notice was also published in the national edition of *Investor's Business Daily* and over the *BusinessWire* on February 11, 2010.  *See* Sylvester Decl., ¶12.  Gilardi & Co. LLC, the Court-appointed Claims Administrator, also established a toll-free number to accommodate potential Class Members inquiries (Sylvester Decl., ¶10), and posted copies of the English and French language versions of the Notice and English and French language versions of the Proof of Claim, the Stipulation, and the orders of this Court and the Ontario Superior Court of Justice concerning preliminary approval on its website on and after February 16, 2010.  *Id.*, ¶11.

The Notice contains a detailed description of the nature and procedural history of the U.S. Action and the Canadian Action, as well as the material terms of the Settlement, including: (i) the Lead Plaintiffs' estimate of the average per share recovery; (ii) the manner in which the Net Settlement Fund (as defined above) will be allocated among participating Class Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right and mechanism for Class Members to opt-out or exclude themselves from the Class; and (v) the right and mechanism for Class Members to object to the Settlement.

The reaction of the U.S. Class to the Settlement confirms Lead Plaintiffs' decision to resolve the Action against the Defendants in exchange for the payment of the Settlement Amount.  As of the date preceding the filing of this Memorandum, which is before the deadline for the submission of objections or requests for exclusion, no objections have been filed to the Settlement or the Plan of

---

[2]    *See* ¶¶3-9 to the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Pendency and Certification of Class Actions, Proposed Settlement and Settlement Approval/Fairness Hearings and the Proof of Claim and Release Form, and B) Publication of the Summary Notice of Pendency and Certification of Class Actions, Proposed Settlement and Settlement Approval/Fairness Hearings ("Sylvester Decl."), which is submitted herewith.

- 3 -

Allocation.  As of the date of this Memorandum, only four U.S. Class members have submitted requests for exclusion from the proposed Settlement.  Therefore, the reaction of the U.S. Class strongly supports the inference that the U.S. Class agrees that the Settlement and Plan of Allocation are fair, reasonable, and adequate.[3]

In light of Lead Counsel's informed assessment of the strengths and weaknesses of the claims and defenses asserted, the absence of opposition to the Settlement, and the considerable risks and delays associated with continued litigation and trial, Lead Plaintiffs and Lead Counsel believe that the Settlement is eminently fair, reasonable, and adequate and provides a substantial result for the U.S. Class.  Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of this Settlement.  Additionally, the Plan of Allocation, which was developed with the assistance of Lead Plaintiffs' damages consultant, is a fair and reasonable method for distributing the Net Settlement Fund to Class Members, and should also be approved by the Court.

## II.    HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to the accompanying Rudman Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the U.S. Action and the Canadian Action, the extensive litigation efforts of counsel, the significant risks of continued litigation, and a discussion of the negotiations leading to this Settlement.

## III.   THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED

The parties have stipulated to certification of the U.S. Class for settlement purposes, and the Lead Plaintiffs' motion for preliminary approval of the Settlement contained an extensive discussion

---

[3]    If any timely objections are received, they will be addressed in a reply memorandum, which will be filed and served by May 10, 2010.

514044_1

on the appropriateness of certifying the proposed U.S. Class.[4]  That portion of the preliminary approval brief is respectfully incorporated herein.  The ultimate decision regarding certification rests with the Court.  In its February 2, 2010 Preliminary Approval Order, the Court conditionally certified the U.S. Class for purposes of settlement.  Because all the requirements for class certification have been met, *see* Federal Rule of Civil Procedure 23(a) and (b)(3), and in light of the substantial benefits the Settlement confers on the U.S. Class, the Lead Plaintiffs respectfully request that the Court now grant this Action final class certification for the purposes of the Settlement.

### A.    Numerosity, Commonality, and Typicality

The U.S. Class meets the numerosity, commonality, and typicality standards of Rule 23(a)(1)-(3).  Over 22,650 copies of the Notice were sent to potential U.S. Class members who purchased or otherwise acquired SunOpta securities between February 23, 2007 and January 27, 2008, inclusive.  *See* Gilardi Decl., ¶¶3-9.  Additionally, SunOpta had approximately 64 million common shares outstanding during the Class Period.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").  Moreover, there are substantial questions of law and fact common to all U.S. Class members (*e.g.*, whether Defendants violated the federal securities laws and whether members of the U.S. Class sustained damages as a result of the misrepresentations and/or omissions, and the extent of those damages).

In *Amchem*, 521 U.S. at 625, the Supreme Court noted that the common issues test is readily met in securities cases.  *See also In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) ("The commonality requirement has been applied permissively in the context of

---

[4]    The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of a class action.  The Supreme Court has expressly approved the use of this device.  *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).

514044_1

securities fraud litigation."). Further, the Lead Plaintiffs' claims are "typical" of other U.S. Class members' claims because they purchased or acquired SunOpta securities during the period of asserted price inflation and thus have alleged damages similar to other U.S. Class members. *See In re Host Am. Corp. Sec. Litig.*, No. 05-CV-1250 (VLB), 2007 WL 3048865, at *5 (D. Conn. Oct. 18, 2007) (finding typicality where plaintiffs alleged defendants committed same acts, in same manner against all class members).

### B.    Adequacy of Representation

The adequacy requirement of Rule 23(a)(4) requires plaintiffs to demonstrate that (1) there is no conflict of interest between the Lead Plaintiffs and the other U.S. Class members; and (2) Lead Counsel are qualified, experienced, and capable of conducting the Action. *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 U.S. Dist. LEXIS 17588, at *21-*22 (S.D.N.Y. Apr. 6, 2006). Here, this Court has already designated the proposed class representatives as Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which provides that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Furthermore, the Lead Plaintiffs have retained highly competent counsel with extensive experience litigating complex securities class actions. Thus, the Lead Plaintiffs and their counsel have diligently advanced the interests of the U.S. Class.

### C.    Predominance of Common Issues and Superiority

Certification of a class under Rule 23(b)(3) requires that common issues predominate over individual issues and that the class action mechanism be superior to other methods of adjudicating the controversy. *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 92 (S.D.N.Y. 2009). In this Action, both of these requirements are satisfied. First, in order to satisfy this requirement, it must be

shown that the issues subject to generalized proof predominate over the issues subject to only individualized proof. As the Supreme Court recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." 521 U.S. at 625. Here, the issues of liability and causation are common to all members of the U.S. Class and clearly predominate over any individual issues. Second, resolution of this Action through a class action is far superior to litigating thousands of individual claims where the expense for a single investor in pursuing a separate action would likely exceed the individual's loss in SunOpta securities. *In re Salomon Analyst Metromedia Litig.*, 236 F.R.D. 208, 218 (S.D.N.Y. 2006) ("[i]t is beyond dispute . . . that in determining whether defendants made false representations or omitted material facts, with scienter, and in connection with the purchase or sale of securities . . . common issues will predominate over individual ones"), *vacated on other grounds*, 544 F.3d 474 (2d Cir. 2008).

In light of the foregoing, all of the requirements of Rule 23(a) and (b)(3) are satisfied, and thus, the Court should certify this U.S. Class for settlement purposes.

## IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A. The Law Favors and Encourages Settlements

Rule 23(e) requires that the settlement of a class action be approved by the court. A court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. 2007). While the decision to

- 7 -

grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); *In re Marsh ERISA Litig.*, No. 04 Civ. 8157 (CM), 2010 U.S. Dist. LEXIS 8325, at *14 (S.D.N.Y. Jan. 29, 2010); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811 (MGC), 2010 U.S. Dist. LEXIS 1445, at *9 (S.D.N.Y. Jan. 6, 2010); *Wright*, 553 F. Supp. 2d at 344; *In re Veeco Instruments, Inc., Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *16 (S.D.N.Y. Nov. 7, 2007); *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *3-*4 (E.D.N.Y. Nov. 15, 2005); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *13-*14 (S.D.N.Y. Jan. 31, 2007). *See also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (The settlement of complex class action litigations are clearly favored by the courts.). Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *17. As stated by the court in *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972),

> the role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . . [W]e recognized that since "'the very purpose

514044_1

of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial'."

*Id.* at 691-92 (citation omitted). "'Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *9 (citation omitted).

### B.     The Settlement Is Procedurally Fair

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations after meaningful discovery, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Luxottica Group*, 233 F.R.D. at 315; *see also In re Alloy, Inc., Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *5 (S.D.N.Y. Dec. 2, 2004). A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after vigorous arm's-length negotiations with the assistance of the Honorable Daniel L. Weinstein (Ret.), a former California Superior Court judge and experienced mediator of complex litigation. Rudman Decl., ¶¶24-25. "Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process." *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *10. *See also In re*

*Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884(AVC), 2007 U.S. Dist. LEXIS 52538, at *8 (D. Conn. July 20, 2007).  In addition, no question exists that Lead Counsel – equipped with knowledge from an extensive investigation and evaluation of Lead Plaintiffs' claims – were fully informed of the merits and weaknesses of the case by the time the Settlement was consummated.  As set out in the Rudman Declaration, Lead Counsel reviewed all publicly available information about the Company, interviewed former SunOpta employees, prepared a detailed amended complaint, consolidated litigation efforts with counsel in the Canadian Action, prepared an extensive mediation brief for Judge Weinstein, and the independent damage expert retained by the parties for the mediation, and reviewed non-public documents collected from SunOpta employees and produced to the Securities and Exchange Commission in connection with its investigation of the Company.  In addition, the Company's Chief Financial Officer made a presentation to counsel and responded to questions concerning SunOpta's then-current financial condition and prospects.  All of these considerations confirmed the reasonableness of the Settlement.  Thus, little doubt exists that this Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit law.

### C.    The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements

As stated above, courts within the Second Circuit observe the universal standard for determining whether a proposed class action settlement is substantively fair: whether the proposed settlement is "'fair, reasonable, and adequate.'"  *Luxottica Group*, 233 F.R.D. at 310 (citation omitted); Fed. R. Civ. P. 23(e)(2).  The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of

514044_1

> reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted). All nine factors need not be satisfied. Instead, the court should look at the totality of these factors in light of the specific circumstances involved. *Marsh*, 2010 U.S. Dist. LEXIS 8325, at *15; *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423, at *25-*26 (S.D.N.Y. Dec. 20, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

As demonstrated below, the Settlement satisfies each of the relevant criteria set forth above. Indeed, this Settlement represents an excellent recovery for the U.S. Class, and, in the judgment of Lead Counsel, there is serious doubt that a more favorable result was possible. As such, the Settlement clearly warrants this Court's final approval.

### D.    The Settlement Satisfies the Second Circuit Criteria for Approval

#### 1.    The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[I]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.'") (citation omitted). Here, the securities claims advanced by Lead Plaintiffs involve numerous complex legal and factual issues relating to allegations concerning the following: (i) problems surrounding the replacement of the Company's old inventory system with a new inventory system; (ii) problems with inventory-related controls at one of the Company's operating business segments, the SunOpta Fruit Group; (iii) accounts receivable problems at Cleugh's Frozen Foods; and (iv) materially false and misleading financial

statements during the Class Period as a result of overstated revenues. The legal issues in this Action are equally as complex – proving falsity, materiality, scienter, causation, and damages – and would also require expert testimony from both sides. Given the early stage of the litigation, motions to dismiss and class certification would have to be litigated, discovery in two countries would have to be completed, and expert discovery, summary judgment, and trial preparation lay ahead. There was no guarantee that incurring additional time and expenses would have resulted in a better result.

There can be no doubt that because this Action is settling against the Defendants at this time, the litigants have been spared the delay and expense of continued litigation. Many hours of the Court's time and resources have also been spared. Even if the U.S. Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the U.S. Class any recovery for years, further reducing its value. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008) ("*Sony*"); *Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

The Settlement for $11.25 million in cash plus the adoption of corporate governance enhancements at this juncture results in an immediate and substantial tangible recovery without the

- 12 -

considerable risk, expense, and delay of discovery, summary judgment, and trial.  Lead Counsel submit that the Court should find that this factor weighs heavily in favor of the proposed Settlement.

### 2.     The Reaction of the Class to the Settlement

The reaction of the U.S. Class to the Settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'"  *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Luxottica Group*, 233 F.R.D. at 311-12.  "'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness."  *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *12 (citation omitted). The reaction of the class to a settlement is perhaps the most significant factor to be weighed in considering its adequacy.  *See In re Host Am. Corp. Sec. Litig.*, No. 3:05-cv-01250 (VLB), 2008 U.S. Dist. LEXIS 17405, at *7 (D. Conn. Mar. 7, 2008) ("The Court therefore concludes that the second *Grinnell* factor is of greatest importance in approving the class action settlement."); *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *21.  Here, in response to a wide-ranging Court-approved notice program, not a single U.S. Class member has objected, and only four requested exclusion from the U.S. Class.  Thus, the positive reaction of the U.S. Class, those affected by the Settlement, underscores the propriety of the Settlement and provides adequate support for approving the Settlement.

### 3.     The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . .  At minimum, the court must possess sufficient information to raise its decision above mere conjecture."  4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45, at

- 13 -

127, 128 (4th ed. 2002). "Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Global Crossing*, 225 F.R.D. at 458. *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (not necessary for court to find parties engaged in extensive discovery; must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Veeco*, 2007 U.S. Dist. LEXIS 85629, at *22-*23 ("the parties need not have engaged in full discovery for a settlement to be approved as fair"); *Sony*, 2008 U.S. Dist. LEXIS 36093, at *20-*21 (same). "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *12 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)).

Here, Lead Counsel negotiated a substantial settlement only after conducting an extensive investigation, notwithstanding the PSLRA-mandated discovery stay. *See generally* Rudman Declaration. Lead Counsel certainly had a clear picture of the strengths and weaknesses of this case and of the legal and factual defenses that Defendants would likely raise at trial. *Teachers' Ret. Sys. of La. v. A.C.L.N.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (finding action had advanced to a stage where parties "'have a clear view of the strengths and weaknesses of their cases'") (citation omitted); *see also Heyer v. New York City Hous. Auth.*, No. 80 Civ. 1196 (RWS), 2006 U.S. Dist. LEXIS 25089, at *9 (S.D.N.Y. Apr. 28, 2006) (although limited discovery was completed before settlement negotiations began, familiarity of counsel for all parties with case justifies settlement). There can, therefore, be no question that Lead Counsel had more than sufficient information to intelligently negotiate the terms of the Settlement that is before the Court

for approval. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). Thus, this Court should find that this factor also supports the Settlement.

### 4.    The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the U.S. Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *25; *Austrian & German Bank*, 80 F. Supp. 2d at 177. While Lead Counsel believe that Lead Plaintiffs could survive Defendants' anticipated motion to dismiss, it is also clear that ultimate success is not assured, and this very substantial Settlement, when viewed in light of the risks of proving liability, is undoubtedly fair, adequate, and reasonable. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable.").

Lead Plaintiffs faced numerous hurdles to establishing liability. This Action involves claims for relief under the Securities Act of 1933 (the "1933 Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). To prevail on their Exchange Act claims, Lead Plaintiffs must demonstrate that Defendants made misstatements or omissions of material fact with scienter in connection with the sale or purchase of securities – that Defendants intentionally engaged in this conduct for the purpose of misleading investors. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).[5]

---

[5]    Proof of scienter can be established: "'(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Whalen v. Hibernia Foods PLC*, No. 04 Civ.

Lead Plaintiffs' 1933 Act claims required that they demonstrate that the Registration Statement for SunOpta's secondary offering was materially misleading, and that Lead Plaintiffs had standing to sue under those statutes. Based on the defenses that Defendants have raised, Lead Counsel recognize that establishing liability at trial was not guaranteed. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 ("[t]he difficulty of establishing liability is a common risk of securities litigation").

### a.    Defenses to Standing to Sue Under the 1933 Act

Defendants claimed that the Lead Plaintiffs could not bring claims under §11 because they cannot trace their shares to the Company's secondary offering. Defendants also argued that the Lead Plaintiffs do not meet the standards to pursue a §12(a)(2) claim, *i.e.*, that the shares were purchased directly from the offeror or that the offeror solicited the purchase.

While Lead Plaintiffs dispute Defendants' arguments, and believe that they can establish their standing, if Defendants' arguments found favor with the Court, the U.S. Class's damage estimate would have been significantly reduced.

### b.    Defenses to Loss Causation

Lead Plaintiffs also faced an uphill battle to prove loss causation, *i.e.*, that Defendants' fraud caused Lead Plaintiffs and the U.S. Class to suffer economic loss. Under the Supreme Court's holding in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 338 (2005), a "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." Defendants viewed as one of their strongest defenses that Lead Plaintiffs had not, and could not, properly account for the

---

3182, 2005 U.S. Dist. LEXIS 15489, at *6 (S.D.N.Y. Aug. 1, 2005) (citation omitted). Although recklessness has been held to satisfy the scienter requirement, *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000), this too is a difficult standard.

damages attributable to Defendants' alleged misrepresentations.  Specifically, Defendants argued that Lead Plaintiffs could not prove that the disclosure of the alleged fraud, and not other factors, or market forces, caused the price of SunOpta securities to decline.  The crux of Defendants' arguments was that Lead Plaintiffs would have trouble allocating damages to the stock drop because of the number of reasons the stock dropped: (a) toward the end of the Class Period there was a 10% to 20% decline in the stock market in general; (b) shortly before the corrective disclosure five million shares of SunOpta stock was sold by the Company's largest stockholders, thereby entering the market and putting downward pressure on the stock price; (c) disclosure of the restatement due to inventory issues at the Company's Fruit Group; and (d) lower than expected earnings per share.  Although Lead Plaintiffs countered those contentions with arguments of their own, significant risk of proving damages for the entirety of the Class Period existed.

### c.    Defenses to Scienter

Defendants also argued that Lead Plaintiffs would be unable to prove the Defendants knew that the statements at issue were false when made or that there were any other indicia of scienter. Rudman Decl., ¶¶52-53.  Defendants claimed that Lead Plaintiffs did not allege any legally cognizable motive or insider trading allegations.  Defendants also argued that the restatement of SunOpta's financial statements does not support any inference of scienter.  Lead Plaintiffs vigorously disagree with these arguments, but if the Court or fact finder agrees with Defendants, the case would end with the U.S. Class receiving nothing.

### 5.    The Considerable Risk of Establishing Damages

Even if they successfully established liability, Lead Plaintiffs also faced substantial risk in proving the existence and the amount of damages.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11-*12 (S.D.N.Y. Sept. 29, 2003)

- 17 -

(noting difficulty of proving damages in securities cases). In order to prevail on their Exchange Act claims, Lead Plaintiffs would be required to prove that the Defendants' false and misleading statements inflated the price of SunOpta securities during the Class Period, and would also be required to prove the amount of the artificial inflation. Lead Counsel, with the assistance of their economic consultant, calculated the artificial inflation in the market price of SunOpta securities that in their opinion was attributable to the alleged wrongdoing. This figure assumes that every element of the U.S. Class's damages theory is accepted by a jury as being correct and recoverable. It also assumes that the Class Period would remain as alleged. As such, its viability as an actual calculation for damages could be affected by many factors that arise in this type of litigation, such as Defendants' rebuttals and defenses to Lead Plaintiffs' damage calculations and expert testimony.

Risks also existed as to establishing damages under the 1933 Act. Plaintiffs are not entitled to recover damages under §11 when the defendants can show that something other than the alleged misstatement or omission caused the stock price decline. Once plaintiffs establish a *prima facie* case under the 1933 Act, loss causation is presumed. *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995). Section 11(e) provides a means of rebutting that presumption. 15 U.S.C. §77k(e). If a defendant can show that "any portion or all of such damages represents other than the depreciation in value of [the] security resulting from [the material misstatement] of the registration statement," *id.*, the presumption is rebutted for so much of the loss as is not attributable to the misstatement. This defense is called "negative causation." *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004). The burden on defendants to establish this defense is high, but it is not insurmountable. *See Akerman v. Oryx Commc'ns*, 810 F.2d 336, 341 (2d Cir. 1987). Defendants would certainly assert this defense.

- 18 -

The presentation of damages is a complex matter which would require the presentation of expert testimony. *See Marsh*, 2010 U.S. Dist. LEXIS 8325, at *22. As a result, Lead Counsel already know that the U.S. Class will ultimately face a "battle of experts" – a battle in which no party is ever assured to prevail. While Lead Counsel believe that reliable and convincing expert testimony can be provided on the damages question, and that a judgment could ultimately be obtained for the full amount of damages available under the law, meaningful obstacles remain. First, the Court must determine that Lead Plaintiffs' damages model is admissible – and only then may a jury determine whether Lead Plaintiffs' or Defendants' model is more accurate. The U.S. Class is by no means assured of a ruling in their favor. *See, e.g.*, *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, slip op. (W.D. Mo. Mar. 23, 2005) (granting defendants' motion to exclude plaintiffs' expert testimony);[6] *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627, at *7 (N.D. Ill. Sept. 21, 2000) (precluding in part plaintiffs' expert testimony). It is then possible that, in the unavoidable "battle of experts," a jury might disagree with the U.S. Class's expert, or merely find Defendants' expert more persuasive.[7] As a result of the aforementioned considerations, the likelihood of proving damages, even assuming the U.S. Class prevailed on the liability issue, is

---

[6]    All unreported authorities referred to herein are attached hereto.

[7]    *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

somewhat difficult. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *29. As a result, this factor also weighs in favor of the Settlement.

### 6.     The Risks of Maintaining the Class Action Through Trial

Had the Settlement not been reached, there is no assurance of obtaining and maintaining class status on any or all of Lead Plaintiffs' claims, since a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation). Absent settlement, Lead Counsel expect that Defendants would oppose class certification and they would likely thereafter seek to have the class decertified if their defenses were initially unsuccessful. The Settlement avoids any uncertainty with respect to these issues.

### 7.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *33. The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted); *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement."). *See also Indep.*

*Energy*, 2003 U.S. Dist. LEXIS 17090, at \*13 (noting few cases tried before jury result in full amount of damages claimed). The Second Circuit has described the "'range of reasonableness'" as "'a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693). Nevertheless, this Settlement, which represents a substantial percentage of the estimated *maximum* provable damages, far exceeds the average recovery in shareholder litigation. *See* Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements, 2008 Review and Analysis*, at 6 (Cornerstone Research 2009) (settlements as a percentage of "estimated damages" averaged 3.2% in 2008); Stephanie Plancich, Ph.D., Brian Saxton, Svetlana Starykh, *Recent Trends in Shareholder Class Actions: Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements Hit New High*, at 14 (NERA 2007) (median ratio of settlements to investor losses in 2007 was 2.4%).[8]

In light of the complex legal and factual issues typically present in securities class actions, the unpredictability of a lengthy and complex trial and the appellate process that would most likely follow, the fairness of a substantial settlement is clearly apparent. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).

### 8.    The Ability of the Defendants to Withstand a Greater Judgment

The court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement. *Grinnell*, 495 F.2d at 463. The fact that SunOpta *could* have paid more money does not render the Settlement unreasonable. *See Warfarin*, 391 F.3d at 538 ("[T]he fact that

---

[8]    Not surprisingly, Defendants calculated damages, if any, at significantly less than the independent expert and Lead Plaintiffs.

DuPont could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *Sony*, 2008 U.S. Dist. LEXIS 36093, at \*23 ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate") (citation omitted).  "Where, as here, the other Grinnell factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair." *Id.* at \*23-\*24.  Here, however, at the time of the mediation, SunOpta had very limited cash or cash equivalents to contribute towards a settlement, *see* paragraphs 28 and 29 to the Rudman Declaration, and the truth of the matter was that insurance policy proceeds were the only source of recovery.  Here, Lead Counsel obtained virtually the entire remaining policy proceeds for the benefit of the Class Member.  This factor clearly favors approval of the Settlement.

Accordingly, Lead Counsel submit that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement should be approved.

## V.    THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'"  *Maley*, 186 F. Supp. 2d at 367 (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005).  "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case."  *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003) (citation omitted), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005).  *See also Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at \*11-\*12.  A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel."  *Am. Bank Note*, 127 F. Supp. 2d at 429-30 (citation omitted); *see also WorldCom*, 388 F. Supp. 2d at 344 (same).  Further,

- 22 -

courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *Marsh*, 2010 U.S. Dist. LEXIS 8325, at *39-*40.

The Plan of Allocation, which was fully described in the Notice, has a rational basis and was formulated by Lead Counsel, in consultation with damage experts, ensuring its fairness and reliability. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39. Under the proposed Plan of Allocation, each Authorized Claimant (as defined above) will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, the settlement consideration less taxes, approved costs, fees, and expenses), with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.

The Plan of Allocation takes into account when Class Members purchased and when and whether Class Members sold their SunOpta securities during the Class Period. Accordingly, some shareholders may benefit more from the Settlement than others depending upon when they made their transactions. This is fair and reasonable, as there is no rule that a settlement benefit all class members equally. *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39; *Global Crossing*, 225 F.R.D. at 462. Indeed, it is appropriate for interclass distributions to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001). Otherwise, certain class members may receive an inequitable windfall, to the detriment of others. *PaineWebber*, 171 F.R.D. at 133.

Lead Counsel believe that the Plan of Allocation is fair and reasonable, and respectfully submit that it should be approved by the Court. It should be noted that not a single objection to the Plan of Allocation has been filed, which also supports its approval by the Court. *See Priceline.com*,

- 23 -

2007 U.S. Dist. LEXIS 52538, at *12; *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *40; *Maley*, 186 F.

Supp. 2d at 367.

## VI.    CONCLUSION

The Settlement reached in this Action is an excellent result under the challenging circumstances facing the U.S. Class.  For the foregoing reasons, the Settlement and Plan of Allocation of the settlement proceeds are fair, reasonable, and adequate and should be granted the Court's final approval.

DATED:  April 5, 2010                    Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD
                                         MARIO ALBA JR.
                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         ELLEN GUSIKOFF STEWART


                                                 *s/ Ellen Gusikoff Stewart*
                                         _____
                                         ELLEN GUSIKOFF STEWART

                                         655 West Broadway, Suite 1900
                                         San Diego, CA  92101-3301
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)

                                         Lead Counsel for Plaintiffs

514044_1

CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2010, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the e-mail addresses

denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the

foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on April 5, 2010.


*s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:elleng@rgrdlaw.com

# Mailing Information for a Case 1:08-cv-00933-PAC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,drosenfeld@rgrdlaw.com

- **Torello H. Calvani**
  tcalvani@omm.com

- **Jeffrey Philip Campisi**
  jcampisi@kaplanfox.com

- **Melissa Ryan Clark**
  melissa.clark@kgscounsel.com

- **Frederic Scott Fox , Sr**
  ffox@kaplanfox.com

- **William J. Hine**
  wjhine@jonesday.com,jmsim@jonesday.com,dpjacobson@jonesday.com

- **Lewis Stephen Kahn**
  lewis.kahn@ksfcounsel.com,ecf.notices@ksfcounsel.com

- **Gregory Bradley Linkh**
  glinkh@murrayfrank.com

- **Kim Elaine Miller**
  kim.miller@ksfcounsel.com,kimmiller225@yahoo.com,ecf.notices@ksfcounsel.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

- **David R. Scott**
  drscott@scott-scott.com,efile@scott-scott.com

- **Arthur L. Shingler , III**
  ashingler@scott-scott.com

- **Evan J. Smith**
  esmith@brodsky-smith.com

- **Ellen Anne Gusikoff Stewart**
  elleng@csgrr.com

- **William Joseph Sushon**
  wsushon@omm.com,#nymanagingattorney@omm.com

- **Jayant W. Tambe**
  dpjacobson@jonesday.com,kpollak@jonesday.com,jtambe@jonesday.com

- **Curtis Victor Trinko**
  ctrinko@trinko.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Michael J. McConnell
Jones Day(GA)
1420 Peachtree Street, Suite 800
Atlanta, GA 30309

Eric J. O'Bell
Law Offices of Eric J. O'Bell, LLC
3500 Noth Hullen Street
Metairie, LA 70002
```